1
2
3
4
5
6
7
8
9
10
11

Kevin A. Michael, WSBA No. 36976
Mistee Verhulp, WSBA No. 29351
COZEN O'CONNOR
999 Third Avenue, Suite 1900
Seattle, Washington 98104
Telephone: 206.340.1000
Toll Free Phone: 800.423.1950
Email:    kmichael@cozen.com
          mverhulp@cozen.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY, a North Dakota corporation, | No. 3:25cv-05647 |
| Plaintiff, | |
| v. | **ASPEN'S COMPLAINT FOR DECLARATORY RELIEF** |
| JENNIFER C. QUIMBY, M.D., an individual; and JENNIFER C. QUIMBY, M.D., INC., P.S., a Washington professional services corporation, | |
| Defendants. | |

Plaintiff Aspen Specialty Insurance Company ("Aspen"), by and through its undersigned attorneys, for its Complaint for Declaratory Relief against Defendants Jennifer C. Quimby, M.D. and "Jennifer C. Quimby, M.D., Inc., P.S." (Defendants are collectively referred to herein as "Dr. Quimby"), alleges as follows:

ASPEN'S COMPLAINT FOR DECLARATORY RELIEF - 1
Case No. 3:25cv-05647

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

1

## I.   INTRODUCTION AND NATURE OF THE ACTION

2

1.      This is an insurance coverage action seeking a declaration that Aspen has no

3

duty to defend or indemnify Dr. Quimby with respect to a lawsuit brought against Dr. Quimby

4

in King County Superior Court styled *Angelica Deaton et al. v. Jennifer Quimby, M.D., et al.*,

5

Case No. 25-2-03297-3 SEA (the "*Deaton* Lawsuit").  A copy of the Complaint in the *Deaton*

6

Lawsuit is attached as **Exhibit A** and incorporated by reference herein.

7

2.      Aspen issued "Professional Liability Insurance for Physicians and Surgeons"

8

Policy No. MM008LW22 to Jennifer C. Quimby, M.D. for the 2022-23 policy period (the

9

"2022-23 Aspen Policy").  A copy of the 2022-23 Aspen Policy is attached as **Exhibit B** and

10

incorporated by reference herein.

11

3.      Aspen issued "Professional Liability Insurance for Physicians and Surgeons"

12

Policy No. MM008LW23 to Jennifer C. Quimby, M.D. for the 2023-24 policy period (the

13

"2023-24 Aspen Policy").  A copy of the 2023-24 Aspen Policy is attached as **Exhibit C** and

14

incorporated by reference herein.

15

4.      The allegations in the *Deaton* Lawsuit arise from a medical incident occurring

16

in October 2022 whereby it is alleged that Dr. Quimby's medical negligence resulted in the

17

unnecessary termination/abortion of Angelica Deaton's allegedly-viable fetus.

18

5.      Dr. Quimby failed to notify Aspen of the Deaton medical incident during the

19

2022-23 Aspen policy period, thereby invalidating potential coverage under the 2022-23

20

Aspen Policy.

21

6.      Dr. Quimby failed to identify the Deaton medical incident when submitting a

22

Renewal Application for the 2023-24 Aspen Policy, thereby invalidating potential coverage.

23

7.      Dr. Quimby also failed to advise Aspen in the 2023-24 Renewal Application

24

that Ms. Deaton had requested her medical records after the Deaton medical incident, thereby

25

invalidating potential coverage.

26

ASPEN'S COMPLAINT FOR DECLARATORY RELIEF - 2
Case No. 3:25cv-05647

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

8. Based on the foregoing, the Coverage Agreements in both Aspen Policies have not been satisfied, thus coverage is not afforded.

9. Even if the Coverage Agreement in the 2023-24 Aspen Policy has been satisfied, one or more exclusions preclude coverage.

10. Notwithstanding the foregoing, Dr. Quimby seeks coverage from Aspen for the *Deaton* Lawsuit.

11. Herein, Aspen seeks a declaration that it has no duty to defend or indemnify Dr. Quimby in the *Deaton* Lawsuit.

## II.    **THE PARTIES**

12. Aspen Specialty Insurance Company is a domestic insurer incorporated in North Dakota and having its principal place of business in New Jersey. At all times relevant hereto, Aspen was and is authorized to do business in the State of Washington.

13. Defendant Jennifer C. Quimby, M.D. is a licensed physician living in, and operating her practice in, Kitsap County, Washington. Dr. Quimby is the sole owner and operator of Defendant Jennifer C. Quimby, M.D., Inc., P.S.

14. Defendant Jennifer C. Quimby, M.D., Inc., P.S. is an incorporated professional service corporation incorporated in the State of Washington and maintaining a principal place of business in Silverdale, Washington.

## III.    **JURISDICTION**

15. This Court has jurisdiction by virtue of 28 U.S.C. § 1332, as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as Defendants are residents of this judicial district and a substantial part of the events giving rise to this action occurred in this district.

ASPEN'S COMPLAINT FOR DECLARATORY RELIEF - 3
Case No. 3:25cv-05647

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

17.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201(a), this Court has the power to declare all rights, duties, and obligations under an insurance policy, whether or not further relief is or could be sought.

18.     An actual and justiciable controversy exists between Aspen and Dr. Quimby within the meaning of 28 U.S.C. § 2201 regarding whether the Aspen has a duty to defend or indemnify Dr. Quimby in the *Deaton* Lawsuit.

## IV.    FACTS

### A.    Dr. Quimby's Alleged Treatment of Ms. Deaton.

19.     Dr. Jennifer C. Quimby is a licensed Obstetrician-Gynecologist practicing in Washington state at a medical practice known as "Kitsap OBGYN."

20.     Paragraphs 4.4 and 4.5 of the *Deaton* Lawsuit allege that Ms. Deaton, who was pregnant, was seen by Dr. Quimby on October 6, 2022.

21.     Paragraph 4.7 of the *Deaton* Lawsuit alleges that on October 6, 2022, Ms. Deaton went to RAYUS Radiology for an ultrasound, which was conducted by Dr. Jeremy Paige.

22.     Paragraphs 4.8 and 4.9 of the *Deaton* Lawsuit allege that Dr. Paige purportedly found, among other things, an ectopic pregnancy, which findings he conveyed by telephone to Dr. Quimby on the afternoon of October 6, 2022.  Dr. Quimby did not review the ultrasound findings herself before providing her diagnosis to Ms. Deaton.

23.     Paragraph 4.12 of the *Deaton* Lawsuit alleges that Ms. Deaton met with Dr. Quimby at which point Dr. Quimby "told Ms. Deaton that an ectopic pregnancy must be terminated" and that Ms. Deaton "must immediately make the choice to abort the pregnancy…."

24.     Paragraph 4.14 of the *Deaton* Lawsuit alleges that upon Dr. Quimby's advice, Ms. Deaton chose to terminate her pregnancy using an injectable medication called Methotrexate.

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

25. Paragraphs 4.21 and 4.22 of the *Deaton* Lawsuit allege that Dr. Quimby ordered a second dose of Methotrexate, which was administered on October 13, 2022.

26. Paragraph 4.24 of the *Deaton* Lawsuit alleges that on October 19, 2022, Ms. Deaton had another ultrasound.

27. Paragraph 4.28 of the *Deaton* Lawsuit alleges that following the second ultrasound, "Ms. Deaton called Kitsap OBGYN twice expressing her concerns that she was 'worried she just terminated a viable pregnancy,'" that she was "very tearful as she [felt] misinformed about treatment for ectopic," and she "was afraid 'that I just killed my baby.'"

28. Paragraph 4.30 of the *Deaton* Lawsuit alleges that on October 19, 2022, Dr. Quimby spoke with Ms. Deaton. Dr. Quimby's notes indicate that she "expressed my apologies for not being aware of a possible heterotopic pregnancy" and that when Dr. Quimby first recommended terminating the pregnancy she "didn't have either her u/s [ultrasound] report or HCG levels."

29. Paragraph 4.33 of the *Deaton* Lawsuit alleges that on October 23, 2022, Dr. Quimby called Ms. Deaton and apologized, advising that "Ms. Deaton did not have an ectopic pregnancy, but just a normal intrauterine pregnancy."

30. Paragraph 4.34 of the *Deaton* Lawsuit alleges that "Dr. Quimby told Ms. Deaton that Dr. Paige had given her a bad diagnosis, and she would have never prescribed methotrexate if he had told her differently."

**B.    Ms. Deaton's Request for Medical Records.**

31. On or about December 15, 2022, Ms. Deaton requested her medical records/file from Kitsap OBGYN/Dr. Quimby, which documents were produced to her.

**C.    The Renewal Application for the 2023-24 Aspen Policy.**

32. Aspen previously issued the 2022-23 Aspen Policy, which was effective from July 1, 2022 to July 1, 2023.

ASPEN'S COMPLAINT FOR DECLARATORY RELIEF - 5
Case No. 3:25cv-05647

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

33.    On April 24, 2023, Dr. Quimby signed a Renewal Application for purposes of obtaining the 2023-24 Aspen Policy.

34.    Question 25 of the Renewal Application asked:

> 25. Have you become aware of any complication, incident, or adverse outcome resulting in injury or death that might reasonably result in a claim or suit against you?

35.    Despite the adverse outcome with Ms. Deaton, Dr. Quimby checked "No".

36.    Question 26 of the Renewal Application also asked:

> 26. Have you or anyone in your practice received a request from a current or former patient, patient's family or a patient's legal representative for medical records which might reasonably result in a claim or suit against you?

37.    Despite Ms. Deaton having requested her medical records shortly after the medical incident, Dr. Quimby checked "No".

38.    The Renewal Application states:

> You agree that any coverage issued will be contingent upon the truth of the information provided in this renewal application, as well any previous application(s) made to the Company. If a renewal policy is issued, this application, as well as previous applications, will become part of the policy, as if physically attached thereto.

39.    The Renewal Application also contains the following "Declaration and Certification":

> **BY SIGNING THIS APPLICATION, THE APPLICANT WARRANTS TO THE COMPANY THAT ALL STATEMENTS MADE IN THIS APPLICATION ABOUT THE APPLICANT AND ITS OPERATIONS ARE TRUE AND COMPLETE, AND THAT NO MATERIAL FACTS HAVE BEEN MISSTATED IN THIS APPLICATION OR CONCEALED....**
>
> **THE APPLICANT AGREES THAT IF AFTER THE DATE OF THIS APPLICATION, ANY INCIDENT, EVENT OR OTHER CIRCUMSTANCE SHOULD RENDER ANY OF THE INFORMATION CONTAINED IN THIS APPLICATION OR ANY OTHER DOCUMENT SUBMITTED IN CONNECTION WITH THE UNDERWRITING OF THIS APPLICATION INACCURATE**

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

**OR INCOMPLETE, THEN THE APPLICANT SHALL NOTIFY THE COMPANY OF SUCH INCIDENT, EVENT OR CIRCUMSTNACE AND SHALL PROVIDE THE COMPANY WITH INFORMATION THAT WOULD COMPLETE, UPDATE OR CORRECT SUCH INFORMATION....**

40.    Based upon these, and other, representations, Aspen issued the 2023-24 Aspen Policy to Dr. Quimby.

41.    The Renewal Application was attached to, and incorporated in, the 2023-24 Aspen Policy and included in **Exhibit C**.

**D.    The Aspen Policy Language.**

42.    Both Aspen Policies contain the following "Coverage Agreement":

**Section II. Coverage Agreement**

In consideration of the payment of the premium and Deductible, and in reliance upon the statements in the application, which is made a part hereof and deemed attached hereto, and subject to the Declarations and all terms of this policy, we agree as follows:

Within the Limits of Liability shown on the Declarations and in excess of the deductible we will pay on **your** behalf all sums **you** become legally obligated to pay as **damages** as a result of a **claim** or **suit** first made against **you**...and reported to **us** during the **policy period** because of an **injury** caused by an **incident** provided that:

a. Any **incident** must occur on or after the **retroactive date** and before the end of the **policy period**;

b. Prior to the inception of this policy, no **insured** had a reasonable basis to believe: (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**;

43.    The 2023-24 Aspen Policy contains the following "Exclusions":

**Section VI. Exclusions**

Despite any other provision of this policy, this policy does not apply to any **claim** arising out of, based upon or attributable to, in whole or in part, or in any way involving, any of the following:

***

E. Any **claim** that in any way involves:

ASPEN'S COMPLAINT FOR DECLARATORY RELIEF - 7
Case No. 3:25cv-05647

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

**1.** Any fact, circumstance or situation which has been the subject of any notice given under any policy of which this policy is a direct or indirect renewal or replacement;

**2.** Any **incident** which occurred while **you** were insured under an occurrence policy;

**3.** Any **incident** which, prior to the inception of this policy, any **insured** had a reasonable basis to believe (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**;

F. Any **claim** or **suit** brought by a patient where, prior to the inception of this policy, a patient or a legal representative of a patient requested the patient's medical records from you or your medical practice.

44.    The Aspen Policies contain the following "Representations":

### Section XI. Representations

**You** represent and acknowledge that the statements and information contained in the **application** for this policy are true and accurate; are the basis of this policy; are to be considered as incorporated into and constituting a part of this policy; and shall be deemed material to the acceptance of this risk or the hazard assumed by **us** under this policy. This policy is issued in reliance upon the truth and accuracy of such representations.

In the event the **application** contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or the hazard assumed by **us** under this policy, then this policy shall be void ab initio.

45.    The 2022-23 Aspen Policy contains the following "Condition":

Notice of **incident**. If during the **policy period you** become aware of an **incident** which reasonably has the potential to result in a demand for money or services for which coverage may otherwise be afforded under this policy, **you** must give **us** written notice as soon as possible upon **your** first awareness of such **incident**, but within no more than thirty (30) days of that awareness or the end of the **policy period**, whichever is sooner. The notice **you** provide **us** shall describe the act, error or omission, and state the name of the patient or any other person involved, including any other persons for whom **you** may be responsible, together with the date(s) of the **incident**. Any **claim** that may be subsequently made against **you** arising from or based upon the **incident** described in the notice will be deemed to have first been reported during the **policy period** or the extended reporting period, if applicable.

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

**E.** **Dr. Quimby Previously Faced Similar Allegations, and a Related Insurance Coverage Request.**

46.     Dr. Quimby was sued for malpractice in a similar matter by Garrett and Laura Brown in Kitsap County Superior Court under Case No. 20-2-01113-18.

47.     The *Brown* lawsuit alleged that Dr. Quimby advised Ms. Brown that she had a probable ectopic pregnancy and, thereafter, administered two doses of Methotrexate to terminate the pregnancy.

48.     It was later determined that Ms. Brown had a viable pregnancy.

49.     The Brown's baby was born with physical and cognitive defects.

50.     As reported in news outlets, Dr. Quimby settled that matter for $2 million.

51.     The settlement of the *Brown* lawsuit happened less than one year from the incident involving the Ms. Deaton.

52.     Dr. Quimby was therefore aware, or should have been aware, of the high likelihood that Ms. Deaton would seek compensation for the termination of her pregnancy.

53.     Paragraph 4.35 of the *Deaton* Lawsuit specifically identifies the Brown lawsuit.

**F.** **Aspen Is Currently Providing a Defense to Dr. Quimby.**

54.     Notwithstanding the fact that the Aspen Policies do not provide coverage for the *Deaton* Lawsuit, Aspen has nonetheless, in an abundance of good faith, accepted the defense of Dr. Quimby and is funding her ongoing defense.

55.     Aspen's defense is subject to a full reservation of rights (the "ROR Letter"). The ROR Letter is attached hereto as **Exhibit D** and incorporated by reference herein.

56.     The ROR Letter specifically reserves Aspen's right to initiate a declaratory judgment action to determine whether Aspen has a duty to defend and/or indemnify Dr. Quimby for the *Deaton* Lawsuit.

57.     The ROR Letter specifically reserves Aspen's right to raise the exclusions identified in Paragraph 43 above.

ASPEN'S COMPLAINT FOR DECLARATORY RELIEF - 9
Case No. 3:25cv-05647

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

## V.    CAUSE OF ACTION

### Declaration of No Duty to Defend or Indemnify Under the Aspen Policies

58.    Aspen hereby incorporates and re-alleges the allegations in Paragraphs 1-57 as if fully set forth herein.

59.    An actual and justiciable controversy exists between Aspen and Dr. Quimby regarding the scope of coverage under the Aspen Policies' terms and applicable law.

60.    Because the Coverage Agreement of the 2022-23 Aspen Policy requires that claims be made and reported during the July 1, 2022 to July 1, 2023 policy period and no claim was made or reported during that period of time, there is no coverage under the 2022-23 Aspen Policy.

61.    Because the Coverage Agreement in the 2023-24 Aspen Policy requires that "prior to the inception of this policy, no insured had a reasonable basis to believe: (1) that a professional duty had been breached; or (2) that an incident might reasonably be expected to be the basis of a claim or suit against any insured," coverage is precluded and Aspen has no duty to defend or indemnify Dr. Quimby.

62.    If the Coverage Agreement in the 2023-24 Aspen Policy were to be satisfied, coverage is nonetheless precluded under Exclusion E and/or Exclusion F for the *Deaton* Lawsuit and, accordingly, Aspen has no duty to defend or indemnify Dr. Quimby.

63.    Dr. Quimby materially breached the "Representations" provision of the 2023-24 Aspen Policy, thereby voiding coverage for the *Deaton* Lawsuit.

64.    There are other policy provisions that may apply.  Aspen reserves the right to assert additional bases for declaratory judgment under the attached Aspen Policies.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Aspen Specialty Insurance Company respectfully requests:

1.    A declaration that Aspen has no duty to defend, indemnify, or otherwise pay Dr. Quimby in connection with the *Deaton* Lawsuit;

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

2.      A declaration that Aspen may withdraw from providing Dr. Quimby with a defense in the *Deaton* Lawsuit;

3.      A declaration otherwise establishing Aspen's duties and responsibilities under the Aspen Policies;

4.      For all costs, attorneys' fees, and disbursements;

5.      For all other costs and fees as permitted by law; and

6.      For such other and further relief that this Court may deem just and proper.

DATED this 23rd day of July, 2025.

COZEN O'CONNOR

By    *s/ Kevin A. Michael*
      Kevin A. Michael, WSBA No. 36976

By    *s/ Mistee Verhulp*
      Mistee Verhulp, WSBA No. 29351

COZEN O'CONNOR
999 Third Avenue, Suite 1900
Seattle, Washington  98104
Telephone: 206.340.1000
Fax:  206.621.8783
Email  kmichael@cozen.com
        mverhulp@cozen.com

*Attorneys for Plaintiff Aspen Specialty Insurance*

ASPEN'S COMPLAINT FOR DECLARATORY RELIEF - 11
Case No. 3:25cv-05647

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

# EXHIBIT A

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| ANGELICA DEATON and PAUL THORPE, individually, and on behalf of their marital community,<br><br>               Plaintiffs,<br><br>vs.<br><br>JENNIFER QUIMBY, M.D. a/k/a JENNIFER TIPPER; AMITY MARRIOTT M.D.; JEREMY PAIGE, M.D.; KITSAP OBGYN, PLLC d/b/a KITSAP OBGYN and/or KITSAP OBSTETRICS & GYNECOLOGY, a Washington Professional Limited Liability Company; JENNIFER C. QUIMBY, M.D., INC., P.S., a Washington Professional Service Corporation; AMITY MARRIOTT, MD, P.S., a Washington Professional Service Corporation; CDI INHEALTH, LLC d/b/a RAYUS RADIOLOGY, a Foreign Limited Liability Company; MEDICAL SCANNING CONSULTANTS, P.A. d/b/a MEDICAL SCANNING CONSULTANTS, P.C., a Foreign Professional Association; RADIOLOGY CONSULTANTS OF WASHINGTON, INC., P.S., a Washington Professional Service Corporation; JOHN DOE ONE; JOHN DOE TWO; and JOHN DOE THREE,<br><br>               Defendants. | No.<br><br>COMPLAINT FOR DAMAGES (MEDICAL NEGLIGENCE) |

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

COME NOW THE PLAINTIFFS, by and through their attorneys of record, Kelly A. Ricke and Christopher L. Otorowski of Otorowski & Golden, PLLC, and for their causes of action against the Defendants allege as follows:

## I. IDENTIFICATION OF PLAINTIFFS

1.1     ANGELICA DEATON and PAUL THORPE.  Plaintiffs Angelica Deaton ("Ms. Deaton") and Paul Thorpe ("Mr. Thorpe") are an adult married couple currently residing in, and at all material times hereto residing in, Bremerton, Kitsap County, Washington.  At all times material hereto, Angelica Deaton received healthcare services from Defendants and Defendants' partners, employees, agents and/or ostensible agents in Kitsap County, Washington. Ms. Deaton and Mr. Thorpe bring their claims individually and on behalf of their marital community.

## II. IDENTIFICATION OF DEFENDANTS

2.1     JENNIFER QUIMBY, M.D a/k/a JENNIFER TIPPER.  At all times material hereto, Defendant Jennifer Quimby, M.D. ("Dr. Quimby") was a physician licensed to practice medicine in, and practicing medicine in, the state of Washington.  At all times material hereto, Dr. Quimby provided medical care and treatment to, or for the benefit of, Ms. Deaton and there existed a fiduciary healthcare provider-patient relationship between Dr. Quimby and Ms. Deaton.  Upon information and belief, at all times relevant and material hereto, Dr. Quimby was an employee, agent, apparent agent, or ostensible agent of one or more of the following: Kitsap OBGYN, PLLC; Jennifer C. Quimby, M.D., Inc., P.S.; and/or John Doe One and provided medical care and treatment to Ms. Deaton in Kitsap County, Washington. Upon information and belief, Dr. Quimby is a resident of Kitsap County, Washington and at all times relevant and material hereto was a resident of Kitsap County, Washington.

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 2 of 30

2.2     AMITY MARRIOTT, M.D.    At all times material hereto, Defendant Amity Marriott, M.D. ("Dr. Marriott") was a physician licensed to practice medicine in, and practicing medicine in, the state of Washington.  At all times material hereto, Dr. Marriott provided medical care and treatment to, or for the benefit of, Ms. Deaton and there existed a fiduciary healthcare provider-patient relationship between Dr. Marriott and Ms. Deaton.  Upon information and belief, at all times relevant and material hereto, Dr. Marriott was an employee, agent, apparent agent, or ostensible agent of one or more of the following: Kitsap OBGYN, PLLC; Amity Marriott, MD, P.S.; and/or John Doe Two and provided medical care and treatment to Ms. Deaton in Kitsap County, Washington.  Upon information and belief, Dr. Marriott is a resident of Kitsap County, Washington and at all times relevant and material hereto was a resident of Kitsap County, Washington.

2.3     JEREMY PAIGE, M.D.    At all times material hereto, Defendant Jeremy Paige, M.D. ("Dr. Paige") was a physician licensed to practice medicine in, and practicing medicine in, the state of Washington.  At all times material hereto, Dr. Paige provided medical care and treatment or other medical services to, including radiology services, or for the benefit of, Plaintiff Angelica Deaton, and there existed a fiduciary healthcare provider-patient relationship between Dr. Paige and Ms. Deaton.  Upon information and belief, at all times relevant and material hereto, Dr. Paige was an employee, agent, apparent agent, or ostensible agent of one or more of the following: CDI InHealth, LLC, Medical Scanning Consultants, P.A. d/b/a Medical Scanning Consultants, P.C., Radiology Consultants of Washington, Inc., P.S., and/or John Doe Three. At all times material hereto, Dr. Paige provided medical care and treatment or other medical services to, including radiology services, or for the benefit of, Ms. Deaton at RAYUS Radiology in Kitsap

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 3 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1    County, Washington. Upon information and belief, Dr. Paige is a resident of King County,

2    Washington and at all times relevant and material hereto was a resident of King County,

3    Washington.

4        2.4    KITSAP OBGYN, PLLC. At all times material hereto, Kitsap OBGYN, PLLC

5    d/b/a Kitsap OBGYN and/or d/b/a Kitsap Obstetrics and Gynecology ("Kitsap OBGYN") was an

6    active limited liability company registered to do business in the state of Washington and was

7    authorized to provide medical care and treatment in the state of Washington, including in Kitsap

8    County, Washington and in King County, Washington. At all times material hereto, Defendant

9    Kitsap OBGYN provided medical care and treatment to Ms. Deaton in Kitsap County, Washington

10   through its partners, employees, agents, apparent agents, and/or ostensible agents, including but

11   not limited to Jennifer Quimby, M.D., Catherine Mass, RN, Dominique Hoffman, RN, Lori A.

12   Nelson, ARNP, Brenda Hewitt, LPN, Erin Sanchez, LPN, and Amity Marriott, M.D., and there

13   existed a fiduciary physician patient relationship between Kitsap OBGYN and Ms. Deaton. Kitsap

14   OBGYN's principal place of business is located at 9750 Levin RD NW, Silverdale, WA, 98383-

15   8399. Kitsap OBGYN's Registered Agent is Kathy Wenzlick, 9750 Levin RD NW, Silverdale,

16   WA, 98383-8399.

17       2.5    JENNIFER C. QUIMBY MD, INC., PS. At all times material hereto, Defendant

18   Jennifer C. Quimby, MD, Inc., PS ("Quimby Inc.") was an active professional service corporation

19   registered to do business in the state of Washington and was authorized to provide medical care

20   and treatment in the state of Washington, including in Kitsap County, Washington and in King

21   County, Washington. At all times material hereto, Quimby, Inc. provided medical care and

22   treatment to Ms. Deaton in Kitsap County, Washington through its partners, employees, agents,

23   COMPLAINT FOR DAMAGES
     (MEDICAL NEGLIGENCE)
     Page 4 of 30

24

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1  apparent agents, and/or ostensible agents, including but not limited to: Jennifer Quimby, M.D.,

2  Catherine Mass, RN, Dominique Hoffman, RN, Lori A. Nelson, ARNP, Brenda Hewitt, LPN, Erin

3  Sanchez, LPN, and Amity Marriott, M.D., and there existed a fiduciary physician patient

4  relationship between Quimby, Inc. and Ms. Deaton.  Quimby, Inc.'s principal place of business is

5  located at 9750 Levin RD NW, Silverdale, WA, 98383-8399.  Quimby Inc.'s Registered Agent is

6  Lincoln Miller PLLC, 4566 Flying Goat Ave NE Unit C120, Bainbridge Island, WA, 98110-5419.

7          2.6    AMITY MARRIOTT, MD, P.S.  At all times material hereto, Defendant Amity

8  Marriott, MD, P.S. ("Marriott PS.") was an active professional service corporation registered to

9  do business in the state of Washington and was authorized to provide medical care and treatment

10  in the state of Washington, including in Kitsap County, Washington and in King County,

11  Washington.  At all times material hereto, Marriott P.S. provided medical care and treatment to

12  Ms. Deaton in Kitsap County, Washington through its partners, employees, agents, apparent

13  agents, and/or ostensible agents, including but not limited to: Jennifer Quimby, M.D., Catherine

14  Mass, RN, Dominique Hoffman, RN, Lori A. Nelson, ARNP, Brenda Hewitt, LPN, Erin Sanchez,

15  LPN, and Amity Marriott, M.D., and there existed a fiduciary physician patient relationship

16  between Marriott PS. and Ms. Deaton.  Marriott P.S..'s principal place of business is located at

17  9750 Levin RD NW, Silverdale, WA, 98383-8399.  Marriott P.S.'s Registered Agent is Tracy

18  Digiovanni, 600 Kitsap ST, Suite 202, Port Orchard, WA, 98366-5397.

19          2.7    CDI INHEALTH, LLC.  At all times material hereto, Defendant CDI InHealth,

20  LLC d/b/a RAYUS Radiology ("CDI InHealth") was an active foreign limited liability company

21  that was registered in the state of Washington and was authorized to provide medical care and

22  treatment and/or other medical services, including radiology services, in the state of Washington,

23
24

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 5 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1  including Kitsap County, Washington and King County, Washington. At all times material hereto,

2  CDI InHealth provided medical care and treatment and/or other medical services, including

3  radiology services, to Ms. Deaton through its partners, employees, agents, apparent agents, and/or

4  ostensible agents, including but not limited to Jeremy Paige, M.D. and one or more ultrasound

5  technicians or diagnostic medical sonographers, and there existed a fiduciary physician patient

6  relationship between CDI InHealth and Ms. Deaton.  CDI InHealth's principal place of business

7  is located at 5775 Wayzata Blvd, Suite 400, St Louis Park, MN, 55416-1222. CDI InHealth's

8  Registered Agent is Corporation Service Company, 300 Deschutes Way SW STE 208 MC-CSC1,

9  Tumwater, WA, 98501.

10       2.8    MEDICAL SCANNING CONSULTANTS, P.A. D/B/A MEDICAL SCANNING

11  CONSULTANTS, P.C.  At all times material hereto, Defendant Medical Scanning Consultants,

12  P.A. d/b/a Medical Scanning Consultants, P.C. ("Medical Scanning Consultants") was an active

13  foreign limited liability company that was registered to do business in the state of Washington,

14  was authorized to provide medical care and treatment and/or other medical services, including

15  radiology services, in the state of Washington, including in Kitsap County, Washington and King

16  County, Washington, and provided medical care and treatment and/or other medical services,

17  including radiology services, to patients in Kitsap County, Washington and in King County,

18  Washington.  At all times material hereto, Medical Scanning Consultants provided medical care

19  and treatment and/or other medical services, including radiology services, to Ms. Deaton through

20  its partners, employees, agents, apparent agents, and/or ostensible agents, including but not limited

21  to Jeremy Paige, M.D. and one or more ultrasound technicians or diagnostic medical sonographers,

22  and there existed a fiduciary physician patient relationship between Medical Scanning Consultants

23

24

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 6 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1    and Ms. Deaton.  Medical Scanning Consultants' principal place of business is located at 5775

2    Wayzata Blvd, Suite 400, St Louis Park, MN, 55416-1222. Medical Scanning Consultants'

3    Registered Agent is Corporation Service Company, 300 Deschutes Way SW STE 208 MC-CSC1,

4    Tumwater, WA, 98501.

5        2.9    RADIOLOGY CONSULTANTS OF WASHINGTON, INC., P.S. d/b/a RAYUS

6    RADIOLOGY. At all times material hereto, Defendant Radiology Consultants of Washington,

7    Inc., P.S. d/b/a RAYUS Radiology ("Radiology Consultants of WA") was an active corporation

8    that was registered to do business in the state of Washington and was authorized to provide medical

9    care and treatment and/or other medical services, including radiology services, in the state of

10   Washington, including in Kitsap County, Washington and in King County, Washington.  At all

11   times material hereto, Defendant Radiology Consultants of WA, provided medical care and

12   treatment and/or other medical services, including radiology services, to Ms. Deaton through its

13   partners, employees, agents, apparent agents, and/or ostensible agents, including but not limited to

14   Jeremy Paige, M.D. and one or more ultrasound technicians or diagnostic medical sonographers,

15   and there existed a fiduciary physician patient relationship between the Radiology Consultants of

16   WA and Ms. Deaton.  Radiology Consultants of WA's principal place of business is located at

17   12112 115th Ave NE, Kirkland, WA, 98034-6929.  Radiology Consultants of WA's Registered

18   Agent is Northwest Registered Agent, LLC, 522 W Riverside Ave Ste. N, Spokane, WA, 99201-

19   0580.

20       2.10   JOHN DOE ONE.  At all times material hereto, Defendant John Doe One was a

21   corporation or business entity that employed Defendant Jennifer Quimby, M.D. and was

22   authorized to provide medical care and services in Washington State. At all times material hereto,

23   
24   

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 7 of 30

1    John Doe One provided medical care and treatment to, or for the benefit of, Ms. Deaton through
2    its partners, employees, agents, apparent agents, and/or ostensible agents, and there existed a
3    fiduciary healthcare provider-patient relationship between John Doe One and Ms. Deaton.
4    Plaintiffs have exercised due diligence in ascertaining John Doe One's identity, but John Doe
5    One's identity cannot be known based upon readily available information.

6        2.11    JOHN DOE TWO.  At all times material hereto, Defendant John Doe Two was a
7    corporation or business entity that employed Defendant Amity Marriott, M.D. and was authorized
8    to provide medical care and services in Washington State.  At all times material hereto, John Doe
9    Two provided medical care and treatment to, or for the benefit of, Ms. Deaton through its partners,
10   employees, agents, apparent agents, and/or ostensible agents, and there existed a fiduciary
11   healthcare provider-patient relationship between John Doe Two and Ms. Deaton.  Plaintiffs have
12   exercised due diligence in ascertaining John Doe Two's identity, but John Doe Two's identity
13   cannot be known based upon readily available information.

14       2.12    JOHN DOE THREE.  At all times material hereto, Defendant John Doe Three was
15   a corporation or business entity that employed Defendant Jeremy Paige, M.D. and was authorized
16   to provide medical care and services in Washington State.  At all times material hereto, John Doe
17   Three provided medical care and treatment to, or for the benefit of, Ms. Deaton through its partners,
18   employees, agents, apparent agents, and/or ostensible agents, and there existed a fiduciary
19   healthcare provider-patient relationship between John Doe Three and Ms. Deaton.  Plaintiffs have
20   exercised due diligence in ascertaining John Doe Three's identity, but John Doe Three's identity
21   cannot be known based upon readily available information.

22
23
COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 8 of 30
24

### III.  JURISDICTION & VENUE

3.1    Plaintiffs incorporate paragraphs 1.1 through 2.12, as if fully set forth herein.

3.2    This Court has original subject matter jurisdiction over this matter pursuant to RCW 2.08.010 and other applicable law.

3.3    This Court has personal jurisdiction over the parties herein.  Each Defendant is a resident of the state of Washington and/or is registered to do business in the state of Washington; each Defendant purposefully availed themselves of the privilege of conducting activities in the state of Washington; Ms. Deaton and Mr. Thorpe's claims arose out of each Defendants' activities in the state of Washington; and the exercise of personal jurisdiction is reasonable under the circumstances.

3.4    Venue is proper in King County, Washington pursuant to RCW 4.12.020(3), RCW4.12.025, and other applicable law, because, upon information and belief, Defendant Jeremy Paige, M.D.  is a resident of King County, Washington.

3.5    Venue is proper in King County, Washington pursuant to RCW 4.12.020(3), RCW4.12.025, and other applicable law, because, upon information and belief Defendants CDI InHealth, Medical Scanning Consultants, and Radiology Consultants of Washington transact business in King County, Washington and/or transacted business in King County Washington at the time the cause of action arose.

### IV.  STATEMENT OF FACTS

4.1    Plaintiffs incorporate paragraphs 1.1 through 3.5, as if fully set forth herein.

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 9 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

4.2     On August 24, 2022 Ms. Deaton, age 36, was seen by Lori A. Nelson, ARNP at Kitsap OBGYN for a new patient well woman exam.  She had her Mirena® IUD removed with the plan of trying to conceive in the next year to two years.

4.3     On September 27, 2022, Ms. Deaton took a home pregnancy test, which was positive.

4.4     On October 5, 2022, Ms. Deaton called Kitsap OBGYN to report she was having discomfort that was not concentrated to either side.  Kitsap OBGYN scheduled Ms. Deaton to be seen on October 20, 2022.

4.5     On the morning of October 6, 2022, Ms. Deaton contacted Kitsap OBGYN again and asked for an ultrasound because she was worried she might be having an ectopic pregnancy. She reported she had occasional twinges on her <u>left</u> side, no bleeding or spotting, and a pain level of 3/10.

4.6     Later in the morning of October 6, 2022, Ms. Deaton received a phone call from the triage nurse at Kitsap OBGYN, who said that RAYUS Radiology could get her in for an ultrasound that afternoon at its Poulsbo location.

4.7     The afternoon of October 6, 2022, Ms. Deaton went to RAYUS Radiology and an obstetrics ultrasound with transvaginal and transabdominal views was performed and interpreted by Dr. Paige.  Dr. Paige told Ms. Deaton she had an empty gestational sac in her uterus, a corpus luteum cyst on her right ovary, and an ectopic pregnancy in her right ovary.

4.8     Dr. Paige's report from the October 6, 2022 ultrasound stated the following findings, in relevant part:

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 10 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

FINDINGS:
Uterus: Single intrauterine gestational sac without a yolk sac or embryo.
Right ovary: There is what appears to be a gestational sac and the right ovary. The estimated gestational age based on mean sac diameter would be 6 weeks 0 days (plus or minus 1 week), compared to gestational age by [last menstrual period] of 5 weeks 5 days. Within the suspected gestational sac is a presumed embryo with crown lump (sic) length 2.3 mm corresponding to approximately 5 weeks 5 days. Cardiac activity: <u>difficult to assess</u> on real time examination.

There is also a large adjacent cyst in the right ovary, measuring 2.5 cm, which may be a corpus luteal cyst.

IMPRESSION:
Suspect right ovarian ectopic pregnancy with estimated gestational age of 6 weeks 0 days or 5 weeks 5 days based on mean sac diameter or crown-rump length, respectively, which correlates with gestational age based on LMP of 5 weeks 5 days. (Emphasis added).

4.9     Dr. Paige's report stated he communicated the findings of the October 6, 2022 imaging to Dr. Quimby over the phone at 2:00 p.m.

4.10     Following the ultrasound on the afternoon of October 6, 2022, Ms. Deaton went to LabCorp to get blood work done to check her beta hCG level for the first time. While Ms. Deaton waited in the LabCorp lobby, she received a call from a Kitsap OBGYN nurse who asked Ms. Deaton to drive to Kitsap OBGYN in Silverdale to meet with Dr. Quimby.

4.11     At around 2:40 p.m. on October 6, 2022, Ms. Deaton arrived at Kitsap OBGYN to meet with Dr. Quimby. While Ms. Deaton was waiting in the examination room for Dr. Quimby to come in, she overheard Dr. Quimby ask if they had received the radiology report from RAYUS and request that the report be faxed to the office.

4.12     When Dr. Quimby entered the examination room, approximately one hour after Ms. Deaton's arrival to the clinic, she told Ms. Deaton that she had an ectopic pregnancy. Dr. Quimby told Ms. Deaton that an ectopic pregnancy must be terminated, and Ms. Deaton's options were to

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 11 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1   terminate the pregnancy with medication, using the chemotherapy drug methotrexate, or to have

2   it surgically terminated. Dr. Quimby advised Ms. Deaton that she must immediately make the

3   choice to abort the pregnancy or face a potential rupture with dire consequences, including the

4   potential of bleeding out or struggling to have children again.

5       4.13    Dr. Quimby's examination note from October 6, 2022 stated, in part, that Ms.

6   Deaton was "clinically stable" with right manageable lower quadrant pain, with no vaginal

7   bleeding, and stated that her hCG results were pending.

8       4.14    Fearful of the representations being made to her, Ms. Deaton consulted with her

9   husband, Mr. Thorpe, and they decided to terminate the pregnancy using methotrexate because

10  they believed it to be the least invasive option.

11      4.15    Prior to leaving the Kitsap OBGYN clinic on October 6, 2022, Ms. Deaton received

12  a 100 mg injection of methotrexate, which was administered to her by Kitsap OBGYN nurse

13  Dominique Hoffman, R.N.

14      4.16.   The following morning, on October 7, 2022 at 8:11 a.m., the hCG level from the

15  prior afternoon's testing was reported to be 22,710, which was consistent with a 6-week pregnancy.

16      4.17    Ms. Deaton underwent additional laboratory testing at LabCorp, in conjunction

17  with the methotrexate, and her hCG levels continued to rise.

18      4.18    On October 7, 2022, Ms. Deaton's hCG level was reported by LabCorp to be

19  32,142.

20      4.19    On October 10, 2022, Ms. Deaton's hCG level was reported by LabCorp to be

21  47,484.

22

23

24

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 12 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

4.20    On October 12, 2022, Ms. Deaton's hCG level was reported by LabCorp to be 49,083.

4.21    On October 13, 2022, Ms. Deaton received a phone call from Kitsap OBGYN stating her hCG level had not dropped 15%, as had been expected. Kitsap OBGYN physician, Dr Marriott, who was covering for Dr. Quimby, wanted to order another ultrasound and have Ms. Deaton come in that day for a second injection of methotrexate.

4.22    A second methotrexate injection, 100 mg, was administered to Ms. Deaton on October 13, 2022 by either Kitsap OBGYN employee Catherine Mass, RN, or Kitsap OBGYN employee Erin Sanchez, LPN.

4.23    On October 14, 2022, Ms. Deaton had a follow-up appointment with Dr. Quimby. Dr. Quimby's assessment was "unspecified ectopic pregnancy without intrauterine pregnancy as unchanged." Dr. Quimby told Ms. Deaton that if the second dose of methotrexate did not work, or that if there was evidence of pregnancy progression on ultrasound, she would recommend surgical intervention due to methotrexate failure.

4.24    On October 19, 2022, after receiving two doses of methotrexate, Ms. Deaton went to RAYUS Radiology in Poulsbo for her second scheduled pelvic ultrasound. The ultrasound technician and Dr. Paige discussed what they were seeing on the screen. Dr. Paige told Ms. Deaton she had two pregnancies, one in her uterus and one in her right ovary. Dr. Paige said the gestational sac in the ovary had decreased, but not significantly. Dr. Paige also said the gestational sac in the uterus had a fetal pole, but no heart rate was detected.

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 13 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1    4.25    When the ultrasound was performed, Ms. Deaton noticed the screen said there was

2    a fetal heart rate of 157 bpm, but she was told by the ultrasound technician and Dr. Paige that it

3    was due to fluid pulsating in the uterus.

4    4.26    The Findings and Impression, reported by Jeremy Paige, M.D., on October 19,

5    2022, included the following, in relevant part:

6    FINDINGS:
    Uterus: Increased size of previously described intrauterine gestational sac, now
7    with yolk sac and embryo without definite fetal heart rate.

8    Right ovary: Slightly decreased size of ovarian ectopic gestational sac measuring
    11 mm, previously 13 mm. Subtle yolk sac measuring 4 mm. No embryo.
9
    IMPRESSION:
10    Slight decrease in size of right ovarian ectopic pregnancy with gestational sac and
    yolk sac but without an embryo.
11
    Previously described intrauterine gestational sac has increased in size, now with a
12    yolk sac and possible fetal pole without definite cardiac activity.

13    4.27    Later that day, Ms. Deaton returned to LabCorp to have more blood drawn, and her

14    hCG level was determined to be 34,908.

15    4.28    Following the ultrasound on October 19, 2022, Ms. Deaton called Kitsap OBGYN

16    twice expressing her concerns that she was "worried she just terminated a viable pregnancy as the

17    gestational sac moved/was possibly twins." Ms. Deaton was reportedly "very tearful as she [felt]

18    misinformed about treatment for ectopic." She was afraid "that I just killed my baby."

19    4.29    The October 19, 2022, Kitsap OBGYN phone notes state:

20    Call from Patient
    Summary of Call: pt has questions in regards to treating what was thought to be
21    ectopic pregnancy. She is worried she just terminated a viable pregnancy as the
    gestational sac moved/was possibly twins and she just has some questions she
22    would like answered. Please call back@ [number redacted].

23

24

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 14 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1 ........................................................ Sarah Pike October 19, 2022 9:08 AM

2 Pt concerned about repeat usn today. 10/6 usn showed empty gestational sac in
uterus but today there is a HR at 157. Pt very tearful as she feels misinformed about
3 treatment for ectopic. Pt is afraid "that I just killed my baby." Pt would like to have
Dr. Quimby review images from 10/6 and today. She would like a call to discuss
4 the situation but also to determine if she needs a D & C

5 ........................................................ Brenda Hewitt LPN October 19, 2022 1 :09 PM

6 Returned call to pt and let her know that Dr. Quimby will call this afternoon to
discuss. Still gathering imaging results and finishing clinic. Pt verbalized
understanding and appreciated the call.
7 ........................................................ Brenda Hewitt LPN October 19, 2022 3:58 PM

8

9 4.30    Later that day, Dr. Quimby called Ms. Deaton.  Dr. Quimby's phone note states:

10 called and talked to patient today
- discussed that **I talked the radiologist today and he is 100% sure that she has
both a right ovarian ectopic and intrauterine gestational sac**. This call initiated
11 by myself after getting the above phone call from the patient. both appear to have
a yolk sac but NO fetal heart tones today.
12 -expressed my apologies for not being aware of a possible heterotopic pregnancy
when I first saw her **as this would require a different treatment approach. when
13 radiology called to relay u/s findings on 10/6 I was only notified of the ectopic
at that time. when she was seen and given first mtx I didn't have either her u/s
14 report or HCG levels**.
-due to now being aware of likely heterotopic pregnancy both of which are non-
15 viable I would recommend surgical intervention for ectopic and non-viable IUP
with laparoscopy and suction D&C. she agrees
16 -will scheduled ASAP
-call for any questions
17 -[redacted].
........................................................ Jennifer C Quimby MD October 19, 2022 7:05 PM
18 (Emphasis added).

19 4.31    On Friday, October 21, 2022, Ms. Deaton underwent what was supposed to be a

20 diagnostic laparoscopy with D&C with suction, performed by Dr. Quimby.

21

22

23

COMPLAINT FOR DAMAGES                                    OTOROWSKI & GOLDEN, PLLC
(MEDICAL NEGLIGENCE)                                        ATTORNEYS AT LAW
24 Page 15 of 30                                          298 WINSLOW WAY WEST
                                                       BAINBRIDGE ISLAND, WA 98110
                                                   (206) 842-1000; (206) 842-0797 FAX

4.32    Dr. Quimby's October 21, 2022 operative note stated, in relevant part:

The abdomen and pelvis were explored with the following findings. Normal liver, appendix, left tube and ovary. Enlarged gravid uterus noted. Right adnexa tucked behind uterus and somewhat adherent to the right pelvis sidewall. In attempting to elevate the ovary out of the pelvis a right ovarian cyst was inadvertently ruptured with clear fluid; this cyst appeared to extend from the distal end of the right ovary. **There was no ovarian or ectopic pregnancy seen on the right after extensive evaluation of the pelvis.** The fallopian tube was adherent to the posterior pelvic peritoneum; this was freed up using the ligasure maryland. The right ovarian cyst was resected using the ligasure and the cyst wall sent to pathology. There was endometriosis also seen- purple implant on right tube, multiple serous implants in the posterior [cul-de-sac]. Please see pictures which document this extensively. (Emphasis added).

Dr. Quimby's post-operative diagnosis was:

Right ovarian cyst
Intrauterine pregnancy only
Endometriosis

4.33    Two days later, on the afternoon of Sunday, October 23, 2022, Dr. Quimby. called Angelica Deaton. Dr. Quimby apologized and said that Ms. Deaton did not have an ectopic pregnancy, but just a normal intrauterine pregnancy.

4.34    Dr. Quimby told Ms. Deaton that Dr. Paige had given her a bad diagnosis, and she would never have prescribed methotrexate if he had told her differently.

4.35    In 2020, a little over two years prior to the events in this lawsuit, another malpractice lawsuit was brought against Kitsap OBGYN, Dr. Quimby, and John and Jane Does 1-50 in Kitsap County Superior Court, to-wit: Garrett Brown and Laura Brown, individually, and as natural guardians of [name redacted], a minor, v. Kitsap OBGYN, PLLC Jennifer Quimby; and John Does 1-50, Cause No. 20-2-01113-18, alleging, in part: Following an ultrasound, Dr. Quimby told her patient that she had a probable ectopic cornual pregnancy. Dr. Quimby ordered a blood

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 16 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1    test to check the patient's hCG levels. Based on the ultrasound and one hCG level, Dr. Quimby

2    recommended methotrexate to resolve the pregnancy. After a repeat hCG level had not dropped

3    as expected, Dr. Quimby ordered another methotrexate injection. A repeat ultrasound showed the

4    patient had a viable pregnancy with an 8-week fetus, rather than an ectopic pregnancy. The baby

5    was born with physical defects and developmental delays.

## V. LIABILITY AND NEGLIGENCE

7        5.1    Plaintiffs incorporate paragraphs 1.1 through 4.35, as if fully set forth herein.

8        5.2    This is an action for professional negligence and malpractice against the Defendants

9    and their subsidiaries, sub-corporations, partners, employers, employees, agents, apparent agents,

10   ostensible agents, and assigns, jointly and severally, brought pursuant to the laws of the state of

11   Washington, including but not limited to RCW 7.70 *et seq.* and other tortious and/or actionable

12   conduct. Ms. Deaton and Mr. Thorpe hereby notify Defendants they are pleading all theories of

13   recovery and bases for liability available to them under the law as it is not constituted, or as it may

14   be amended hereafter, as now known or as later learned during discovery, including but not limited

15   to: negligence; corporate negligence; medical malpractice; loss of consortium; direct liability;

16   vicarious liability, respondeat superior, agency, negligent misrepresentation; negligent infliction

17   of emotional distress, intentional infliction of emotional distress, lack of informed consent;

18   negligent failure to diagnose, interpret, monitor, manage, consult, refer, follow-up, report,

19   communicate, respond, notify, inform, supervise, and/or treat; negligent hiring, training, and/or

20   supervision; and the negligent failure to otherwise render the necessary care and treatment their

21   patient, Ms. Deaton, required.

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 17 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

5.3     As a direct and proximate result of the fiduciary healthcare provider/patient relationship that existed between the Defendants and Ms. Deaton, the Defendants, and each of them, jointly and severally, owed duties to provide reasonably prudent medical care to Ms. Deaton, including but not limited to: (a) the duty to diagnose, monitor, manage, consult, refer, follow-up, report, communicate, respond, notify, inform, and/or treat Ms. Deaton's medical condition; (b) the duty to provide proper informed consent; and (c) the duty to otherwise render the necessary care and treatment their patient, Ms. Deaton, required.

5.4     During the course of their relationship with Ms. Deaton, the Defendants, individually and jointly, breached their duties owed to Ms. Deaton, including but not limited to: (a) the duty to diagnose, monitor, manage, consult, refer, follow-up, report, communicate, respond notify, inform, supervise, train, and treat Ms. Deaton's medical condition; (b) the duty to provide proper informed consent; and (c) the duty to otherwise render the necessary care and treatment their patient, Ms. Deaton, required.

5.5     As a direct and proximate result of the Defendants, and each of their negligent failures to provide reasonably prudent medical care to Ms. Deaton and other tortious conduct, Ms. Deaton and Mr. Thorpe have suffered significant past, present, and future injuries and damages.

5.6     As a duly licensed physician authorized to provide medical care and treatment in the state of Washington, Dr. Quimby is subject to liability for her acts while providing medical care, medical services, and/or medical treatment to, or for the benefit of, Ms. Deaton.

5.7     The medical care, medical treatment, and/or medical services provided to Ms. Deaton by Dr. Quimby in the physical examination, assessment, diagnosis, giving of informed consent, communication with other health care providers, performance of medical care, and other

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 18 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

care and treatment of Ms. Deaton fell below the standard of medical care expected of a reasonably prudent physician practicing medicine in the state of Washington and proximately caused permanent injury to Ms. Deaton and Mr. Thorpe.

5.8    Amongst other negligent actions, Dr. Quimby breached the standard of care owed to Mr. Deaton by: (a) ordering the administration of methotrexate to abort a viable intrauterine pregnancy; (b) failing to properly assess and diagnose Ms. Deaton's medical condition before ordering the administration of methotrexate; (c) failing to properly communicate with Dr. Paige about the results of the October 6, 2022 ultrasound; (d) failing to review Dr. Paige's report relating to the October 6, 2022 ultrasound before ordering methotrexate to abort Ms. Deaton's pregnancy; (e) failing to obtain, review, and properly interpret Ms. Deaton's hCG levels before ordering methotrexate to abort Ms. Deaton's pregnancy; (d) failing to inform Ms. Deaton that the ultrasound report showed an intrauterine pregnancy; (e) failing to confirm that Ms. Deaton did not have a viable intrauterine pregnancy before ordering the administration of methotrexate; (f) failing to provide proper informed consent to Ms. Deaton about the risks and alternatives to the administration of methotrexate for her medical condition; (g) failing to inform Ms. Deaton immediately after the October 21, 2022 surgery that there was no ectopic pregnancy; (h) failing to order a repeat ultrasound; and (i) in such other and further ways as will be determined during the course of discovery in this matter.

5.9    As a duly licensed physician authorized to provide medical care and treatment in the state of Washington, Dr. Marriott is subject to liability for her acts while providing medical care, medical services, and/or medical treatment to, or for the benefit of, Ms. Deaton.

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 19 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1    5.10    The medical care, medical treatment, and/or medical services provided to Ms.

2  Deaton by Dr. Marriott in the physical examination, assessment, diagnosis, giving of informed

3  consent, communication with other health care providers, performance of medical care, and other

4  care and treatment of Ms. Deaton fell below the standard of medical care expected of a reasonably

5  prudent physician practicing medicine in the state of Washington and proximately caused

6  permanent injury to Ms. Deaton and Mr. Thorpe.

7    5.11    Amongst other negligent actions, Dr. Marriott breached the standard of care owed

8  to Mr. Deaton by: (a) ordering, or approving, the administration of a second dose of methotrexate

9  to abort a viable intrauterine pregnancy; (b) failing to properly assess and diagnose Ms. Deaton's

10 medical condition before ordering the administration of the second dose of methotrexate; (c)

11 failing to properly communicate with Dr. Paige about the results of the October 6, 2022 ultrasound;

12 (d) failing to review Dr. Paige's report relating to the October 6, 2022 ultrasound before ordering,

13 or approving, methotrexate to abort Ms. Deaton's pregnancy; (e) failing to properly interpret Ms.

14 Deaton's hCG levels before ordering a second dose of methotrexate to abort Ms. Deaton's

15 pregnancy; (f) failing to inform Ms. Deaton that the ultrasound report showed an intrauterine

16 pregnancy; (g) failing to confirm that Ms. Deaton did not have a viable intrauterine pregnancy

17 before ordering the administration of the second dose of methotrexate; (h) failing to provide proper

18 informed consent to Ms. Deaton about the risks and alternatives to the administration of the second

19 dose of methotrexate for her medical condition; and (i) in such other and further ways as will be

20 determined during the course of discovery in this matter.

21

22

23

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
24  Page 20 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

5.12    As a duly licensed physician authorized to provide medical care and treatment in the state of Washington, Dr. Paige is subject to liability for his acts while providing medical care, medical services, and/or medical treatment to, or for the benefit of, Ms. Deaton.

5.13    The medical care, medical treatment, and/or medical services provided to Ms. Deaton by Dr. Paige in the physical examination, assessment, diagnosis, performance of medical care, communication with other health care providers, and other care and treatment of Ms. Deaton fell below the standard of medical care expected of a reasonably prudent physician practicing medicine in the state of Washington and proximately caused permanent injury to Ms. Deaton and Mr. Thorpe.

5.14    Amongst other negligent actions, Dr. Paige breached the standard of care owed to Ms. Deaton by: (a) failing to inform Ms. Deaton that she had a intrauterine pregnancy; (b) failing to inform Dr. Quimby that Ms. Deaton had an intrauterine pregnancy; (c) failing to properly communicate the results of the October 6, 2022 ultrasound to Dr. Quimby; (d) failing to recommend a repeat ultrasound(s); and (e) in such other and further ways as will be determined during the course of discovery in this matter.

5.15    As a corporation conducting business in the state of Washington, Defendant Kitsap OBGYN, PLLC is subject to liability for the acts of its directors, officers, shareholders, employees, agents, apparent agents, ostensible agents, and assigns, including but not limited to Dr. Quimby, Catherine Mass, RN, Dominique Hoffman, RN, Lori A. Nelson, ARNP, Brenda Hewitt, LPN, Erin Sanchez, LPN, and Amity Marriott, M.D., while acting within the scope and course of employment or agency.  The claims being made against Kitsap OBGYN, PLLC are based upon all theories, including but not limited to vicarious liability and respondeat superior for the actions of its

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 21 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1   employees, agents, apparent agents, and/or ostensible agents, as well as upon its direct corporate

2   liability for, amongst other things to be determined during the further course of discovery in this

3   matter, failure to implement safe and proper policies, procedures, protocols, or guidelines

4   regarding the ordering and administration of methotrexate.  Kitsap OBGYN, PLLC and its

5   providers fell below the standard of medical care expected of reasonably prudent health care

6   providers practicing medicine in the state of Washington and proximately caused permanent injury

7   to Ms. Deaton and Mr. Thorpe.

8       5.16    As a corporation conducting business in the state of Washington, Defendant

9   Jennifer C. Quimby, M.D., Inc., P.S. is subject to liability for the acts of its directors, officers,

10  shareholders, employees, agents, apparent agents, ostensible agents, and assigns, including but not

11  limited to Dr. Quimby, Catherine Mass, RN, Dominique Hoffman, RN, Lori A. Nelson, ARNP,

12  Brenda Hewitt, LPN, Erin Sanchez, LPN, and Amity Marriott, M.D., while acting within the scope

13  and course of employment or agency.  The claims being made against Defendant Jennifer C.

14  Quimby, M.D., Inc., P.S. are based upon all theories, including but not limited to vicarious liability

15  and respondeat superior for the actions of its employees, agents, apparent agents, and/or ostensible

16  agents, as well as upon its direct as well as upon its direct corporate liability for, amongst other

17  things to be determined during the further course of discovery in this matter, failure to implement

18  safe and proper policies, procedures, protocols, or guidelines regarding the ordering and

19  administration of methotrexate. Jennifer C. Quimby, M.D., Inc., P.S. and its providers fell below

20  the standard of medical care expected of reasonably prudent health care providers practicing

21  medicine in the state of Washington and proximately caused permanent injury to Ms. Deaton and

22  Mr. Thorpe.

23
24

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 22 of 30

5.17    As a corporation conducting business in the state of Washington, Defendant Amity Marriott, MD, P.S. is subject to liability for the acts of its directors, officers, shareholders, employees, agents, apparent agents, ostensible agents, and assigns, including but not limited to Dr. Quimby, Catherine Mass, RN, Dominique Hoffman, RN, Lori A. Nelson, ARNP, Brenda Hewitt, LPN, Erin Sanchez, LPN, and Amity Marriott, M.D., while acting within the scope and course of employment or agency. The claims being made against Defendant Amity Marriott, MD, P.S. are based upon all theories, including but not limited to vicarious liability and respondeat superior for the actions of its employees, agents, apparent agents, and/or ostensible agents, as well as upon its direct as well as upon its direct corporate liability for, amongst other things to be determined during the further course of discovery in this matter, failure to implement safe and proper policies, procedures, protocols, or guidelines regarding the ordering and administration of methotrexate. Amity Marriott, MD, P.S. and its providers fell below the standard of medical care expected of reasonably prudent health care providers practicing medicine in the state of Washington and proximately caused permanent injury to Ms. Deaton and Mr. Thorpe.

5.18    As a corporation conducting business in the state of Washington, Defendant CDI InHealth, LLC is subject to liability for the acts of its directors, officers, shareholders, employees, agents, apparent agents, ostensible agents, and assigns, including but not limited to Dr. Paige and the ultrasound technicians or diagnostic medical sonographers involved in Ms. Deaton's ultrasounds on October 6, 2022 and October 19, 2022, while acting within the scope and course of employment or agency. The claims being made against Defendant CDI InHealth, LLC are based upon all theories, including but not limited to vicarious liability and respondeat superior for the actions of its employees, agents, apparent agents, and/or ostensible agents, as well as upon its

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 23 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000: (206) 842-0797 FAX

1    direct corporate liability for, amongst other things to be determined during the course of discovery,

2    failure to implement proper policies, procedures, protocols, and guidelines regarding

3    communication of findings with patients and ordering health care providers.  CDI InHealth, LLC

4    and its providers fell below the standard of medical care expected of reasonably prudent health

5    care providers practicing medicine in the state of Washington and proximately caused permanent

6    injury to Ms. Deaton and Mr. Thorpe.

7        5.19    As a corporation conducting business in the state of Washington, Defendant

8    Medical Scanning Consultant, P.A. d/b/a Medical Scanning Consultants, P.C. is subject to liability

9    for the acts of its directors, officers, shareholders, employees, agents, apparent agents, ostensible

10    agents, and assigns, including but not limited to Dr. Paige and the ultrasound technicians or

11    diagnostic medical sonographers involved in Ms. Deaton's ultrasounds on October 6, 2022 and

12    October 19, 2022, while acting within the scope and course of employment or agency.  The claims

13    being made against Defendant Medical Scanning Consultant, P.A. d/b/a Medical Scanning

14    Consultants, P.C. are based upon all theories, including but not limited to vicarious liability and

15    respondeat superior for the actions of its employees, agents, apparent agents, and/or ostensible

16    agents, as well as upon its direct corporate liability for, amongst other things to be determined

17    during the course of discovery, failure to implement proper policies, procedures, protocols, and

18    guidelines regarding communication of findings with patients and ordering health care providers.

19    Medical Scanning Consultant, P.A. d/b/a Medical Scanning Consultants, P.C. and its providers fell

20    below the standard of medical care expected of reasonably prudent health care providers practicing

21    medicine in the state of Washington and proximately caused permanent injury to Ms. Deaton and

22    Mr. Thorpe.

23

24

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 24 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

5.20    As a corporation conducting business in the state of Washington, Defendant Radiology Consultants of Washington, Inc., P.S. is subject to liability for the acts of its directors, officers, shareholders, employees, agents, apparent agents, ostensible agents, and assigns, including but not limited to Dr. Paige and the ultrasound technicians or diagnostic medical sonographers involved in Ms. Deaton's ultrasounds on October 6, 2022 and October 19, 2022, while acting within the scope and course of employment or agency. The claims being made against Defendant Radiologist Consultants of Washington, Inc., P.C. are based upon all theories, including but not limited to vicarious liability and respondeat superior for the actions of its employees, agents, apparent agents, and/or ostensible agents, as well as upon its direct corporate liability for, amongst other things to be determined during the course of discovery, failure to implement proper policies, procedures, protocols, and guidelines regarding communication of findings with patients and ordering health care providers.  Radiology Consultants of Washington, Inc., P.C. and its providers fell below the standard of medical care expected of reasonably prudent health care providers practicing medicine in the state of Washington and proximately caused permanent injury to Ms. Deaton and Mr. Thorpe.

5.21    As a corporation conducting business in the state of Washington, Defendant John Doe One is subject to liability for the acts of its directors, officers, shareholders, employees, agents, apparent agents, ostensible agents, and assigns, including but not limited to Dr. Quimby, while acting within the scope and course of employment or agency.  The claims being made against Defendant John Doe One are based upon all theories, including but not limited to vicarious liability and respondeat superior for the actions of its employees, agents, apparent agents, and/or ostensible agents, as well as upon its direct corporate liability for, amongst other things to be determined

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 25 of 30

during the further course of discovery in this matter, failure to implement proper policies, procedures, protocols, or guidelines regarding the ordering and administration of methotrexate regarding communication of findings with patients and ordering health care providers. John Doe One and its providers fell below the standard of medical care expected of reasonably prudent health care providers practicing medicine in the state of Washington and proximately caused permanent injury to Ms. Deaton and Mr. Thorpe.

5.22    As a corporation conducting business in the state of Washington, Defendant John Doe Two is subject to liability for the acts of its directors, officers, shareholders, employees, agents, apparent agents, ostensible agents, and assigns, including but not limited to Dr. Marriott, while acting within the scope and course of employment or agency. The claims being made against Defendant John Doe Two are based upon all theories, including but not limited to vicarious liability and respondeat superior for the actions of its employees, agents, apparent agents, and/or ostensible agents, as well as upon its direct corporate liability for, amongst other things to be determined during the further course of discovery in this matter, failure to implement proper policies, procedures, protocols, or guidelines regarding the ordering and administration of methotrexate and regarding communication of findings with patients and ordering health care providers. John Doe Two and its providers fell below the standard of medical care expected of reasonably prudent health care providers practicing medicine in the state of Washington and proximately caused permanent injury to Ms. Deaton and Mr. Thorpe.

5.23    As a corporation conducting business in the state of Washington, Defendant John Doe Three is subject to liability for the acts of its directors, officers, shareholders, employees, agents, apparent agents, ostensible agents, and assigns, including but not limited to Dr. Paige,

COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 26 of 30

1  while acting within the scope and course of employment or agency. The claims being made against

2  Defendant John Doe Three are based upon all theories, including but not limited to vicarious

3  liability and respondeat superior for the actions of its employees, agents, apparent agents, and/or

4  ostensible agents, as well as upon its direct corporate liability for, amongst other things to be

5  determined during the course of discovery, failure to implement proper policies, procedures,

6  protocols, and guidelines regarding communication of findings with patients and ordering health

7  care providers. John Doe Three and its providers fell below the standard of medical care expected

8  of reasonably prudent health care providers practicing medicine in the state of Washington and

9  proximately caused permanent injury to Ms. Deaton and Mr. Thorpe.

10      5.24  At the time of the events alleged in the Complaint, Ms. Deaton and Mr. Thorpe

11  were in a valid marriage, and as a direct and proximate result of the Defendants' negligent and

12  tortious actions, both jointly and individually, Mr. Thorpe suffered a loss of consortium.

13      5.25  Ms. Deaton and Mr. Thorpe are without culpable fault for the injuries that are the

14  subject of this lawsuit.

15                                  **VI. DAMAGES**

16      6.1  Plaintiffs incorporate paragraphs 1.1 through 5.25, as if fully set forth herein.

17      6.2  As a direct and proximate result of Defendants' negligence and breach of duties,

18  both individually and jointly, Ms. Deaton has suffered severe injuries resulting in both economic

19  and non-economic damages including but not limited to medical expenses, lost wages, out-of-

20  pocket expenses, loss of enjoyment of life, deformity, disfigurement, disability, mental anguish,

21  emotional distress, humiliation, stress and anxiety, pain and suffering, loss of marital consortium,

22

23

24

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1   and all other damages recoverable under Washington law, which will be proven at the time of trial

2   as reasonable and proper as determined by the trier of fact.

3       6.3     As a direct and proximate result of Defendants' negligence and breach of duties,

4   Paul Thorpe has suffered permanent injuries and damages, including mental anguish, emotional

5   distress, pain and suffering, stress and anxiety, loss of marital consortium, loss of intimacy, loss

6   of support, loss of care, income, and services, and all other damages recoverable under Washington

7   law, which will be proven at the time of trial as reasonable and proper as determined by the trier

8   of fact.

9                    **VII. LIMITED WAIVER OF PHYSICIAN/PATIENT PRIVILEGE**

10      7.1     Plaintiffs incorporate paragraphs 1.1 through 6.3, as if fully set forth herein.

11      7.2     Pursuant to RCW 5.60.060(4)(b), plaintiffs Angelica Deaton and Paul Thorpe

12  hereby waive the physician/patient privilege only insofar as necessary to place any and all alleged

13  damages at issue at the time of trial, as might be required by statute or amended statute or case law

14  interpreting the rules and laws of the State of Washington. It should be understood that Plaintiffs'

15  actions do not constitute a waiver of any of their or decedent's constitutional rights and that the

16  Defendants are not to contact any treating physicians without first notifying counsel for the

17  Plaintiffs so that they might bring the matter to the attention of the Court and seek appropriate

18  relief, including imposing limitations and restrictions upon any desire or intent by the Defendants

19  to contact past or subsequent treating physicians ex parte pursuant to the rule announced in *Loudon*

20  *v. Mhyre*, 110 Wn.2d 675 (1988), *Smith v. Orthopedics International, Ltd., P.S.*, 170 Wn.2d 659

21  (2010), and other applicable law as it now exists or as it is hereafter amended.

22

23  COMPLAINT FOR DAMAGES
    (MEDICAL NEGLIGENCE)
24  Page 28 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

1

## VIII. Election Re: Arbitration

2      8.1      Plaintiffs incorporate paragraphs 1.1 through 7.2, as if fully set forth herein.

3      8.2      Pursuant to RCW 7.70A.020(1)(a), plaintiffs Angelica Deaton and Paul Thorpe

4    hereby elect to opt out of voluntary arbitration under RCW Chapter 7.70A.  Plaintiffs have filed

5    their declarations with the court with regard to voluntary arbitration of this matter.

6

## IX. **PRAYER FOR RELIEF**

7          WHEREFORE, Plaintiffs Angelica Deaton and Paul Thorpe pray for judgment against the

8    Defendants, and each of them, jointly and severally, as follows:

9      9.1      For general damages in such amounts as might be proven at the time of trial and

10    decided and determined by the trier of fact as reasonable and just under the evidence;

11      9.2      For special damages in such amounts as might be proven at the time of trial and

12    decided and determined by the trier of fact as reasonable and just under the evidence, including all

13    prejudgment interest allowed by law as it now exists or as it is hereafter developed;

14      9.3      For attorney fees, sanctions, costs, disbursements, and actual and statutory costs as

15    appropriate, pursuant to Court order and to applicable Washington law, including equitable

16    principles; and

17    ///

18    ///

19    ///

20    ///

21

22

23    COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
24    Page 29 of 30

Otorowski & Golden, PLLC
Attorneys At Law
298 Winslow Way West
Bainbridge Island, WA 98110
(206) 842-1000; (206) 842-0797 Fax

9.4    For such other and further relief as is appropriate under the pleadings and the proof or as the Court may deem just and equitable.

Dated this 4th day of February 2025, at Bainbridge Island, WA.


OTOROWSKI & GOLDEN, PLLC


By: *Kelly Ricke*
Kelly Ricke, WSBA # 47206
Chris Otorowski, WSBA # 8248
298 Winslow Way W.
Bainbridge Island, WA 98110
(206) 842-1000
Email: kar@medilaw.com
          clo@medilaw.com
Attorney for Plaintiffs


COMPLAINT FOR DAMAGES
(MEDICAL NEGLIGENCE)
Page 30 of 30

OTOROWSKI & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WA 98110
(206) 842-1000; (206) 842-0797 FAX

# EXHIBIT B

# WASHINGTON SURPLUS LINES NOTICE

This contract is registered and delivered as a surplus lines coverage under the insurance code of the state of Washington, Title 48 RCW.  It is not protected by any Washington state guaranty association law.

# PROFESSIONAL LIABILITY INSURANCE POLICY
PHYSICIANS AND SURGEONS DECLARATIONS

 Aspen

**POLICY NUMBER: MM008LW22**
**Renewal of:** MM008LW21

## This is a Claims-Made and Reported Policy

| COMPANY | PRODUCER |
|---|---|
| Aspen Specialty Insurance Company<br>Newport Office Center III<br>499 Washington Boulevard, 8th Floor<br>Jersey City, NJ 07310<br>(877) 245-3510 | Amwins Insurance Brokerage, LLC<br>601 Union Street<br>Suite 1630<br>Seattle, WA 98101 |

### INSURED INFORMATION

| Named Insured | Jennifer C Quimby, MD | | |
|---|---|---|---|
| Mailing Address | 9750 Levin Road NW<br>Silverdale, WA 98383 | | |
| Medical Specialty | Obstetrics/Gynecology - Major Surgery | **Code:** | 80153 |

### POLICY PERIOD

| Effective Date: | 07/01/2022 | Expiration Date: | 07/01/2023 |
|---|---|---|---|

*EFFECTIVE AT 12:01 A.M. TIME AT THE ADDRESS OF THE **NAMED INSURED** SHOWN ABOVE*

| Retroactive Date: | 07/01/2018 |
|---|---|

*THIS POLICY WILL NOT PROVIDE COVERAGE FOR ANY **CLAIM** ARISING OUT OF ANY **PROFESSIONAL SERVICES** PROVIDED BEFORE THE **RETROACTIVE DATE**.*

### LIMITS OF LIABILITY

*The Limits of Liability are shared by all **insureds**.*

| Per Claim | $1,000,000 |
|---|---|
| Annual Aggregate | $3,000,000 |
| | |
| **Deductible**<br>*Applies to each and every **claim*** | $15,000 |

### EXTENDED REPORTING PERIOD

| 12 Months | 150% of full annual premium |
|---|---|
| 36 Months | 200% of full annual premium |
| 60 Months | 250% of full annual premium |
| DDR | Prem waiver in cases of death, disability and retirement (age 55 with 5 years vested) |

### PREMIUM

| Policy Premium | |
|---|---|

25% minimum earned premium; no flat cancellation.

### SCHEDULE OF NAMED INSUREDS

| Named Insured | Medical Specialty | Code | Eff Date | Retro Date |
|---|---|---|---|---|
| Jennifer C Quimby, MD | Obstetrics/Gynecology - Major Surgery | 80153 | 07/01/2022 | 07/01/2018 |

| FORMS & ENDORSEMENTS |
|---|
| FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY:  See Schedule of Forms and Endorsements |

This Declarations page, together with the Application for this policy, the attached policy form and all Endorsements thereto, shall constitute the contract between **us** and the **insured**.  The policy is valid only if signed below by **our** duly authorized representative.

In witness whereof, **we** caused this policy to be signed below by **our** duly authorized representative.

ISSUE DATE:  08/03/2022

By: _____
                              (Authorized Representative)

# SCHEDULE OF FORMS AND ENDORSEMENTS

**FORM NUMBER**                     **FORM NAME**

SNWA 0112                  Washington Surplus Lines Notice
ASPML001 1016              Declarations Page
ASPML005 0118              Professional Liability Insurance Policy for Physician and Surgeons
ASPCO098 0213              Signature Page
ASPCO002 0821              General Service Of Suit Notice
ASPCO021 0616              OFAC ENDORSEMENT
ASPML052 1116             Washington Amendatory Endorsement
ASPML006 1016              Notice of Incident
ASPML008 1016              Supplementary Payments
ASPML012 1016              Limited Consent to Settle Endorsement
ASPML014 1016              Extended Reporting Period Optional Provisions Endorsement
ASPML016 1016              Administrative Proceeding Reimbursement Endorsement
ASPML032 1016              Limited Additional Insured Endorsement (Scheduled Entity Vicarious Liability)

**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS



### ASPEN SPECIALTY INSURANCE COMPANY
### NEWPORT OFFICE CENTER III
### 499 WASHINGTON BOULEVARD, 8th FLOOR
### JERSEY CITY, NJ 07310
(A stock insurance company)

IMPORTANT NOTICE: This is a Claims Made and Reported as well as a non-assessable policy.  Please read it carefully. The coverage provided by this policy is limited to liability for **claims** first made against **you** during the **policy period** for **professional services** rendered entirely on or after the **retroactive date** stated on the Declarations; provided that such **claims** are first reported in writing by **you** to **us** during the **policy period**, unless an Extended Reporting Period Endorsement is purchased, which provides an additional period in which to report covered **claims**.

## IN THE EVENT OF A CLAIM:

Please report **claims** immediately to **your** agent or broker or directly to **our** claims adjustors:

Email: aspenmedes@bbprograms.com

Fax:  888-239-2663

**You** must give notice of any **claim** first made against **you** during the **policy period** immediately, but in no event any later than thirty (30) days after **you** first become aware of such **claim** or the end of the **policy period**, whichever is sooner. Failure to report **claims** promptly may result in a denial of coverage.

## THIS POLICY IS NOT EFFECTIVE UNLESS A DECLARATIONS IS ATTACHED

### Section I. Definitions

Throughout this policy **you** and **your** mean any **insured** under this policy.  **We**, **our** and **us** means Aspen Specialty Insurance Company.

Other words and phrases with special meanings are defined below.  They are bold faced when used in this policy (which includes any **endorsements**).

**A.** **Abuse** means assault, battery, molestation of any kind, whether physical, mental, or emotional.

**B.** **Application** means all materials and information, including all signed **applications** and any materials attached thereto or incorporated therein, submitted by or on behalf of the **insureds** in connection with the underwriting of this policy or any policy of which this policy is a direct or indirect renewal or replacement.  All such **applications**, attachments and materials are deemed attached to and incorporated into this policy.

**C.** **Attempted concealment** means an act or instance of making an effort to accomplish **Concealment**, with or without success.

**D.** **Claim** means a written demand for money or services received by **you** alleging an **injury** caused by an **incident** to which this insurance applies. **Claim** does not include a demand for non-monetary or injunctive relief or any criminal proceeding. **Claims** can only arise from **professional services** within **your** profession as described on the Declarations.

**E.** **Claim expenses** means all expenses, costs and attorneys' fees incurred by **us** in the investigation, discovery, adjustment defense, arbitration, settlement or appeal of any **claim** covered by this policy.  **Claim expenses** include:

## PROFESSIONAL LIABILITY INSURANCE POLICY
FOR PHYSICIANS AND SURGEONS



1.  All court costs taxed against **you** in any **claim** or **suit** defended by **us**;

2.  Any interest incurred on that portion of a judgment covered under this policy and within the applicable Limits of Liability; and

3.  Premiums on appeal bonds and premiums on bonds to release attachments in any **suit** subject to defense under this policy.  The bonds must be for an amount not more than the limit of **our** liability.  However, **we** have no obligation to furnish or obtain these bonds.

**F. Concealment** means withholding from **us** or the patient, material facts or information that, in good faith, ought to be disclosed or will increase **our** risk.

**G. Damage(s)** means the monetary portion of any judgment, award or settlement, which **you** are legally obligated to pay, but does not include:

1.  Any damages that are a multiple of compensatory damages, fines, penalties or sanctions;

2.  Judgments or awards considered uninsurable by law;

3.  Any form of equitable or non-monetary relief or fees, costs, expenses paid to or incurred or charged by an **insured**;

4.  Payment for **professional services**;

5.  **Your** salaries and expenses or those of **your** employees or **ostensible employees**; or

6.  Bail bonds.

**H. Endorsement(s)** means documents attached to this policy which contain information not included in this policy or information which changes this policy.  **Endorsements** become a part of the policy upon issuance.  **Endorsements** may contain state specific requirements regarding coverage under this policy.

**I. Fiduciary duty** means the duty that arises when the business transacted, money or property handled, is not **your** own or for **your** benefit, but for the benefit of another person, to whom **you** stand in a relationship implying and necessitating confidence, trust and good faith, whether or not that duty arises by matter of law, contract or otherwise. This includes duties which may arise as a fiduciary under the Employee Retirement Income Security Act of 1974 or any of its amendments.

**J. Incident** means any act, error, or omission, or misstatement or misleading statement by **you** in the rendering of or failure to render **professional services**.  All such acts, errors, or omissions causally related to the rendering of or failure to render **professional services** shall be considered one **incident**.  An **incident** shall be deemed to have occurred at the time of the earliest act, error, or omission comprising that **incident**. An **incident** shall not be deemed a **claim** unless **you** receive a written demand for money or services or a Notice of Incident Endorsement is attached to this policy.

**K. Injury** means bodily injury, sickness, disease or death sustained by any one person.

**L. Insured** means a person or entity qualified under Section IV**.** The Insured

**M. Locum tenens** means a health care provider temporarily serving in the place of an **insured**, provided that such **locum tenens** does not provide **professional services** at the same time as the **insured** being replaced.  **Locum tenens** providers must be trained and practicing in the same specialty as the **insureds** for whom they are substituting.

**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS



**N.** **Named insured** means a physician or entity so designated in the Declarations Page of this policy.

**O.** **Ostensible employee** means a person other than a physician who provides healthcare services on behalf of the **insured's** medical practice, including but not limited to independent contractors, students and volunteers.

**P.** **Policy period** means the period of time shown on the Declarations or its earlier termination date, if any.

**Q.** **Professional services** means healthcare services that **you** provide in the context of a doctor-patient relationship including diagnoses, medical opinions, consultation and medical care.

**R.** **Retroactive date** means the date on which **your** coverage begins; **you** are covered only for **professional services** that **you** provide entirely on or after this date.

**S.** **Sexual misconduct** means sexual impropriety, sexual intimacy, sexual assault, sexual **abuse**, sexual molestation, sexual harassment, or sexual acts including licentious, immoral or amoral behavior, whether committed with the belief, erroneous or otherwise, that the other party had consented and had the legal and mental capacity to consent to such sexual acts.

**T.** **Suit** means a civil proceeding that seeks **damages** which, if awarded, would be covered by this policy. **Suit** includes: an arbitration proceeding, any alternative dispute resolution proceeding, or a pre-suit, screening panel, or similar proceeding mandated by law.

## Section II. Coverage Agreement

In consideration of the payment of the premium and Deductible, and in reliance upon the statements in the application, which is made a part hereof and deemed attached hereto, and subject to the Declarations and all terms of this policy, we agree as follows:

Within the Limits of Liability shown on the Declarations and in excess of the deductible w**e** will pay on **your** behalf all sums **you** become legally obligated to pay as **damages** as a result of a **claim** or **suit** first made against **you** or against any physician or person for whom **you** are legally responsible and reported to **us** during the **policy period** because of an **injury** caused by an **incident**; provided that:

**a.** Any **incident** must occur on or after the **retroactive date** and before the end of the **policy period**;

**b.** Prior to the inception of this policy, no **insured** had a reasonable basis to believe: (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**;

**c.** **You** report the **claim** immediately but in no event later than thirty (30) after **you** first become aware of such **claim** or the end of the **policy period** whichever is sooner; and

**d.** An **insured** receives a written demand for money or services.

## Section III. Defense and Settlement Clause

**We** have the right and duty to defend any **claim** or **suit** brought seeking **damages** against the **insured** for an **injury** caused by an **incident** covered by this policy. **We** have the right to appoint counsel and **we** may investigate any **claim** made or **suit** brought: **We** have the right to settle any **claim or suit** at **our** discretion. When required by law **we** will report **claim** settlements and judgements to the National Practitioners Data Bank or to other professional or governmental agencies.

**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS



**We** shall have no further defense under this policy after the applicable Limits of Liability, as stated on the Declarations, have been exhausted by the payment of judgments, settlements or **claim expenses**. **Claim expenses** are part of and not in addition to the Limits of Liability.

## Section IV. The Insured

The **insureds** under this policy are:

**A.** The **named insured**;

**B.** In the event of the **named insured's** death, total and permanent disability or bankruptcy the **named insured's** heirs, executors, administrators, assigns or legal representatives;

**C.** A person or entity identified in the Schedule of Insureds shown on the Declarations;

**D.** A person or entity added by applicable **endorsement**;

**E.** A single physician **insured's** wholly owned professional association (PA) or professional corporation (PC);

**F.** Any associate, officer, director or proprietary member of an entity designated as an **insured** on the Declarations or an **endorsement** attached to this Policy but only with respect to liability for **professional services** performed by others in the practice of medicine. However, only one Limit of Liability for the insured entity, as set forth in the Declarations and in Section VII. Limits of Liability of this policy, shall be applicable, and there shall not be separate Limits of Liability regardless of the number of such **insureds** under this policy;

**G.** Any other of **your** employees or **ostensible employees** not specifically included on the Declarations, but only while such other employee or **ostensible employee** is acting within the scope of his or her employment duties, under the direction and supervision of **you**, provided that coverage afforded for such other employees shall not apply to physicians, unless specifically listed on the Declarations for this policy, or by **endorsement** to this policy; and

**H.** **Locum tenens** temporarily serving in the place of an **insured**, but only:

**1.** After **we** have received and approved all requested information about the **locum tenens** physician and affirmed coverage in writing; and

**2.** If such **locum tenens** is licensed to perform **professional services** in the jurisdiction in which **professional services** are being performed,

provided that **locum tenens** coverage under this policy for any one **insured** shall not exceed thirty (30) days per **policy period**.

## Section V. Territory

The coverage territory is worldwide however, regardless of **your** location **we** will neither defend nor pay **damages** for **suits** filed outside of The United States of America, its territories and possessions, Puerto Rico or Canada.

## Section VI. Exclusions

Despite any other provision of this policy, this policy does not apply to any **claim** arising out of, based upon or attributable to, in whole or in part, or in any way involving, any of the following:

**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS



**A.** An act or omission violating any federal or state statute, or any county or municipal ordinance governing the commission of a crime and any dishonest, fraudulent, malicious, knowing, wrongful, or intentional acts, errors or omissions committed by **you** or at **your** direction;

**B.** The providing of **professional services** when or where

   **1.** **You** are not properly licensed to practice;

   **2.** **Your** applicable license has been suspended, revoked or surrendered; or

   **3.** **You** are practicing in a manner which constitutes a violation of any restriction imposed upon **your** license;

**C.** Prescribing or dispensing controlled substances while **your** license or registration to prescribe or dispense these substances is not in effect;

**D.** The providing of any services which are outside the scope of **your** specialty classification as identified on the Declarations, or as stated in any **application** for this insurance, and as further defined by any applicable statute or regulation;

**E.** Any **claim** that in any way involves:

   **1.** Any fact, circumstance or situation which has been the subject of any notice given under any policy of which this policy is a direct or indirect renewal or replacement;

   **2.** Any **incident** which occurred while **you** were insured under an occurrence policy;

   **3.** Any **incident** which, prior to the inception of this policy, any **insured** had a reasonable basis to believe: (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**;

**F.** Any **claim** or **suit** brought by a patient where, prior to the inception of this policy, a patient or a legal representative of a patient requested the patient's medical records from **you** or **your** medical practice;

**G.** Any vicarious liability arising from the provision of or failure to provide **professional services** by any health care provider or other person or entity which is not under **your** direct supervision, or is not an employee or **ostensible employee** of **yours**;

**H.** Libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry or eviction, violation of rights of occupancy, false arrest, false imprisonment, malicious prosecution, malicious use of or abuse of process, assault, battery, or any resulting loss of consortium, disability, shock, humiliation, embarrassment, mental injury or anguish, emotional distress or **injury** to personal or business reputation or character;

**I.** Any **abuse** or **sexual misconduct**, regardless of whether or not such **abuse** or **sexual misconduct** was committed in conjunction with or under the guise of **professional services**;

**J.** The provision of **professional services** while **you**, or any other **insured** for whose acts or omissions **you** are legally responsible, is under the influence of alcohol, drugs, or other intoxicants;

**K.** Any liability arising out of any employment dispute; Personal injury, sickness, disease or death of any employee or **ostensible employee** of **yours** if the personal injury, sickness, disease or death arises from the course of the employee or **ostensible employee's** employment by **you**;

**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS



**L.** Any obligation for which **you** or **your** insurer, self-insured fund or plan, may be liable under any worker's compensation, occupational disease, unemployment compensation, disability benefits, or other similar plan;

**M.** Any liability for the acts of another assumed by **you** under any contract or agreement. However, this exclusion does not apply to **your** alleged negligence arising out of providing or failing to provide **professional services** under contract with any:

    **1.** Health Maintenance Organization (HMO);

    **2.** Preferred Provider Organization (PPO);

    **3.** Independent Practice Association (IPA);

    **4.** Accountable Care Organization (ACO); or

    **5.** Other similar organization.

**N.** Any liability in the event **you**, or someone **you** instruct or supervise, fraudulently alters, defaces or falsifies any record whether intentionally or unintentionally. This includes **concealment** or **attempted concealment** of any act or omission of **yours** relating to a **claim** for **damages** under this policy;

**O.** Any liability resulting from medical **injury** to **you**, **your** employees or the spouse, child, parent, brother or sister of **you** or **your** employees; provided that this exclusion shall not apply to **professional services** provided to **your** patient who is also an employee, or employee's spouse, child, parent, brother or sister;

**P.** Any **claim** under an Unfair Trade Practices Act, workers compensation statute or any other similar statutes or any **claim** made under Title 18 of the United States Code, sections 1962 to 1964, otherwise called the RICO laws;

**Q.** Any liability for fines, penalties imposed by law, or for matters or amounts uninsurable under the law pursuant to which this policy is construed, unless the law of the state in which **you** are licensed to practice prohibits such an exclusion;

**R.** Any liability arising out of the discharge, dispersal, seepage, migration, release or escape of vapors, soot, acids, alkalis, toxic chemicals, liquids or gases, waste or hazardous materials or other irritants, contaminants, or pollutants;

**S.** Any liability arising out of the hazardous properties of nuclear material or in connection with any nuclear facility however caused;

**T.**   **1.** **Your** breach of **fiduciary duty**;

    **2.** **Your** actual gaining of personal profit, or advantage to which **you** are not legally entitled;

    **3.** Remuneration paid to **you** if such payment is held by the courts to be in violation of the law;

    **4.** **Your** alleged or actual involvement in any:

        **a.** Anti-trust law violation; or

        **b.** Agreement or conspiracy to restrain trade;

    **5.** The failure to collect contributions owed to any employee benefit plan or the failure to return any contributions if such amounts are, or could be, chargeable to the employee benefit plan; or

    **6.** Benefits payable or paid to a participant or beneficiary of an employee benefit plan;

**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS

**⧉ Aspen**

U.  Whether directly or indirectly, improperly authored, published, promulgated or released medical research data, studies or results or other text or other media provided by or on **your** behalf;

V.  Any liability arising from the design, manufacture, use, distribution, promotion, or sale of any non-FDA approved medication, device or equipment, or protocols or any liability resulting from experimental or investigative procedures or practice modalities;

W.  Any duties as a medical director for any facility or medical institution or practice, other than **your** own practice, unless specifically agreed to by **us**;

X.  Any duties or medical practice at a government owned facility, including correctional facilities, unless specifically agreed to by **us**;

Y.  Any **claim** arising from a guarantee of cure or results of **professional services** provided by **you**.

### Section VII. Limits of Liability

A.  **Our** Limits of Liability for **damages** and **claim expenses** for each **claim** first made against **you** during the **policy period** for which this coverage applies shall not exceed the amount stated as the Per Claim Limits of Liability in the Declarations for each **named insured**, regardless of the number of: (a) claimants or persons who sustain **damages**; (b) demands made (including **suits** brought); (c) policies issued by **us**; or (d) number of policy years during which treatment was rendered.

B.  **Our** total liability for all **damages** for all **claims** first made against **you** during a **policy period** for which this coverage applies shall not exceed the amount stated as the applicable Aggregate Limits of Liability in the Declarations, regardless of the number of: (a) **claims**; (b) **insureds**; (c) claimants or persons who sustain **damages**; (d) policies issued by **us**; or (e) number of policy years during which treatment was rendered.

C.  If both mother and child (including multiple births) make **claims** against **you** alleging two or more causes of action or related **professional services,** both mother and child shall be considered one patient for the purposes of determining the Per Claim Limits of Liability applicable when such **claims** are made against **you.**

D.  If **you** are afforded coverage for a **claim** under another policy **we** have issued, then in no event will **we** pay **damages** or **claim expenses** in an amount greater than the highest Limits of Liability available under any one policy **we** issued and under which **you** are entitled to coverage.

The Per Claim Limits of Liability shown on the Declarations is the most **we** will pay for any one **claim** for all **damages** and **claim expenses**, including those sustained by other persons. **Claim expenses** reduce the Limits of Liability unless a Supplementary Payments Endorsement is attached to the policy. **Damages** sustained by other persons include, but are not limited to, **damages** for loss of services, loss of consortium, wrongful death and emotional distress. The Limits of Liability applicable to any **claim** is the limit in effect on either the date that a **claim** is made.

Unless otherwise provided for in this policy, if there are multiple **insureds**, the Declarations will identify in the Schedule of Insureds those **insureds** which have separate limits of liability.  Non-physician employees and physician **insureds'** professional associations and professional corporations who are **insureds** pursuant to Section IV. The Insured, will not be individually identified on the Declarations, but will share the limit of the **insured**.  If more than one **insured** is responsible for the actions of the employee, the employee and the responsible **insureds** will share only one Limit of Liability as set forth in the Declarations and in Section VII. Limits of Liability of this policy.  **Locum tenens** who are insured pursuant to Section IV. The Insured, will not be individually identified on the Declarations, but will share the limit of the **insured** for whom they are substituting.

**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS



## Section VIII. Deductible

If a deductible is indicated on the Declarations the following conditions are applicable:

**A.**  The deductible is a part of and not in addition to the Limits of Liability.

**B.**  The deductible is applicable to each and every **claim**. The deductible is applicable to both **claim expenses** and **damages**; and

**C.**  The deductible must be paid within ten (10) days of a written demand made by **us**. Failure to pay a deductible will nullify and terminate coverage for the reported **claim** and **we** may cancel the policy for non-payment of the deductible. If **you** fail to pay a deductible within ten (10) days **we** have no duty to defend **you** or any obligation to pay **damages** or **claim expenses**.  Upon policy termination any monies returnable to **you** will first be applied to any unpaid deductible. All deductibles must be paid in full before an Extended Reporting Period (ERP) Endorsement is issued.

## Section IX. Conditions

**A.**  Notice of **Claim** or **Suit**. As a condition precedent to coverage under this policy, **you** must give notice of any **claim** for an **injury** first made against **you** during the **policy period** immediately, but in no event any later than thirty (30) days after **you** first become aware of such **claim** or the end of the **policy period**, whichever is sooner.  The notice shall contain information sufficient to identify the **insured** as to the time, place and circumstances of the alleged **injury**. The name and address of the person claiming an **injury** and of any witness to the **injury** also shall be included in the notice.  If a **suit** is brought against **you**, **you** must immediately forward to **us** every demand notice, summons, complaint or other process alleging **injury** caused by **you** or **your** representative.

**B.**  Electronic **Claim** Reporting.  **You** may report **claims** to **us** electronically using the email address on page 1 of this policy.

**C.**  **Claims** or **Incidents** disclosed on a renewal **application**. Disclosing a **claim** or an **incident** on a renewal application or Claim Information Supplement does not qualify as notice of a **claim** being made and reported to **us**.  **You** must follow the **claim** reporting instructions indicated on page 1 of this policy.

**D.**  Assistance and Cooperation of the **Insured**. **You** shall cooperate with **us**.  Cooperation by **you** includes acceptance of correspondence from **us** by the US Mail or any other public or private means of delivery.  Upon **our** request, **you** shall agree to an examination by **us** under oath, attend hearings and trials and assist in making settlements.  If requested, **you** shall also secure and give evidence, including medical records and other documentation, report facts, obtain the attendance of witnesses and otherwise assist in the conduct of **suits**.  Also, upon request, **you** will help enforce any right of contribution, indemnity or apportionment that **you** might have so that **we** might exercise those rights in **your** name.  **You** shall do nothing to prejudice **our** defense of any **suit**.  **You** shall not enter into any oral or written contracts or agreements that in any way impair or waive **our** rights of defense.

**E.**  Action Against **Us**. No legal action may be brought against **us** until there has been full compliance with all the terms of this policy by **you**.  In addition, no legal action may be brought against **us** until the amount of **your** obligation to pay is finally determined either by judgment after trial or by written agreement between the claimant and **us** or **you** with **our** approval.

No other person or organization has any right under this policy to make **us** a party to any action to decide **your** liability.

**F.**  Other Insurance. If **you** have other insurance that is applicable to any **claim** covered under this policy, then this policy shall cover such **claim** subject to its limitations, conditions, provisions and other terms, only in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or

**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS



otherwise, and whether such other insurance obligates **us** thereto with a duty to defend, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this policy.

**G.** Subrogation. If any payment is made under this policy, **we** shall be subrogated to all **your** rights of recovery against any person or organization. **You** shall execute and deliver instruments and papers and do whatever necessary to secure such rights. **You** shall do nothing to prejudice those rights.

**H.** Changes. Notice to any person or knowledge possessed by any person shall not cause a wavier or change in any part of this policy or stop **us** from asserting any right under the terms of this policy. The terms of this policy may only be waived or changed by **endorsement**.

**I.** Cancellation and non-renewal. **You** may cancel this policy by returning it to **us**. **You** may also cancel by giving **us** advance written notice of when the cancellation is to take effect. **We** may cancel or not renew this policy by mailing notice to **you** at **your** last known address. Notice to **you** must be sent at least thirty (30) days before the cancellation or non-renewal date. If **you** fail to pay any premium when due, **we** may cancel this policy by mailing notice to **you** at **your** last known address at least ten (10) days in advance. The reason for any cancellation or non-renewal will be stated on the notice. Proof of mailing is proof of notice for purposes of this provision. The effective date and hour of cancellation stated on the notice or the time of surrender of the policy shall become the end of the **policy period**.

If **you** cancel the policy, the return premium will be computed on the basis of 90% of the pro-rata premium. If **we** cancel the policy, the return premium will be computed pro-rata.

**We** have no duty to solicit **your** renewal. If for any reason **you** do not apply for renewal of this policy the policy will end at its natural expiration date. This natural expiration will be considered **your** non-renewal of the policy and requires no notice from **us**. If **you** fail to pay the renewal premium in full on or before the renewal inception date **we** will not renew the policy and no further notice is required.

**J.** Assignment. **Your** interest in this policy is not assignable. If **you** die or become incompetent, this insurance shall terminate for such person but shall cover **your** legal representative as an **insured** with respect to liability previously incurred and covered by this insurance.

**K.** Bankruptcy or Insolvency. **Your** bankruptcy or insolvency shall not relieve **you** or **us** of any of **our** obligations hereunder. **Your** bankruptcy or insolvency shall not increase any amounts of money payable hereunder.

**L.** Examination of **Your** Books and Records. **We** may examine and audit **your** books and records as they relate to this policy during the **policy period** and up to three years following termination or expiration of the policy.

**M.** Terms Conform to Statute or Regulation. Any term of this policy that is in conflict with a statute or regulation of the state where the policy is issued is amended to conform to such statute or regulation.

**N.** Changes to **Your** Operations. This insurance is issued based on **your** written representation of **your** operations and services. **You** must notify **us** immediately, in writing, if there are any changes from those operations **you** previously described in **your application**, including changes in services, premises, locations, procedures or administrative responsibilities or changes in the status of **your** license(s) or certificate(s) to operate. Coverage for **claims** which result from **professional services** happening on or after the date of any of these changes is contingent upon this notification.

**O.** Entire Agreement. It is agreed that this policy, together with the Declarations, **endorsements** and the **application** as of the Inception Date of this Policy, constitute the entire agreement existing between the **us** and all **insureds**.

## Section X. Extended Reporting Period

**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS



If this policy is cancelled or non-renewed any **named insured** for whom separate Limits of Liability are indicated on the Schedule of Insureds shown on the Declarations may purchase an Extended Reporting Period Endorsement (hereinafter, "ERP Endorsement") for an additional premium. For the purposes of this section, the date of cancellation or non-renewal of this policy is referred to as the termination date.   **We** may decline to offer the ERP Endorsement if the cancellation or non-renewal occurs for any of the following reasons:

**A.**  Flat cancellation, in which **we** cancel the policy effective at policy inception;

**B.**  Midterm cancellation for non-payment of premium;

**C.**  **Your** failure to comply with policy provisions;

**D.**  Non-payment of a deductible;

**E.**  Failure to cooperate with **us;** or

**F.**  Fraud, **concealment** or material misrepresentation of facts in an **application**.

The ERP Endorsement will provide coverage for any **claim** first made during the extended reporting period, provided that the **claim** arose from an **incident** that first occurred on or after the applicable **retroactive date** and prior to the termination date.  If the ERP Endorsement is not purchased, there will be no coverage after the termination date.

ERP coverage shall terminate exactly one year (365 days) after the termination date unless a longer duration is specified by **endorsement** or on the Declarations**.**

The right to purchase such ERP Endorsement coverage must be exercised by written notice to **us** not later than thirty (30) days from the effective date of termination of this policy. Such written notice must include payment of the premium for the applicable ERP Endorsement coverage, as well as payment of all other premiums due to **us**. If such written notice is not so given to **us**, **you** shall not be entitled to exercise such right at a later date.

**We** will compute the additional premium for the ERP Endorsement coverage in accordance with **our** rules in effect on the termination date.  Subject to the requirements set forth in this policy, the ERP Endorsement coverage will be effective as of the termination date and will continue for a specified period thereafter. In purchasing the ERP Endorsement coverage, if **your** payment is dishonored, the ERP Endorsement coverage shall be void.

The entire additional premium for the ERP Endorsement coverage shall be deemed fully earned at the inception of the Extended Reporting Period.

Unless indicated differently in the ERP Endorsement, the Limits of Liability for the ERP Endorsement will be equal to the Per Claim Limit of Liability in effect on the termination date as set forth on the Declarations for this Policy. The Limits of Liability available under the ERP Endorsement is part of and not in addition to the Limits of Liability available under the last policy or renewal issued to the **named insured**. **Claims** made during the expiring **policy period** may reduce the Limit of Liability available under the ERP Endorsement.  The ERP Endorsement does not extend the **policy period** or change the scope of coverage provided under this policy nor does it increase or reinstate the Limits of Liability.  It only extends the period of time for reporting **claims** to **us** during the Extended Reporting Period. The ERP Endorsement is subject to all policy provisions in effect at the time of the termination of the **insured's** coverage.

## Section XI. Representations

**You** represent and acknowledge that the statements and information contained in the **application** for this policy are true and accurate; are the basis of this policy; are to be considered as incorporated into and constituting a part of this policy; and shall be deemed material to the acceptance of this risk or the hazard assumed by **us** under this policy.  This policy is issued in reliance upon the truth and accuracy of such representations.

**PROFESSIONAL LIABILITY INSURANCE POLICY** 
FOR PHYSICIANS AND SURGEONS

In the event the **application** contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or the hazard assumed by **us** under this policy, then this policy shall be void ab initio.

## Section XII. Assignment, Alteration and Headings

No change in, modification of, or assignment of interest under this policy shall be effective unless made by a written **endorsement** to this policy, which is signed by **our** authorized representative.

The titles and headings to the various clauses, sections, subsections, paragraphs, subparagraphs and **endorsements** of this policy are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such clauses, sections, subsections, paragraphs, subparagraphs or **endorsements**.

**Aspen Specialty Insurance Company**



IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Secretary and countersigned where required by law on the Declarations page by its duly Authorized Representative.

_____
                    Secretary

_____
                    President

Aspen Specialty Insurance Company
(Herein called the Company)

# GENERAL SERVICE OF SUIT NOTICE

In the event of failure of the Company to pay any amount claimed to be due under the terms of this policy, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of appeal.

It is further agreed that service of process in such suit may be made upon:

Aspen Specialty Insurance Management, Inc
c/o General Counsel
400 Capital Blvd., Suite 200
Rocky Hill, CT 06067-3576
(877) 245-3510

Questions can be directed to: Compliance.us@aspenspecialty.com

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, Secretary of State, or other officer specified for that purpose in the statute, as its true and lawful attorney upon whom service may be made of any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

This notice does not change any other provision of the policy.

 © Aspen Insurance U.S. Services Inc., 2021
All rights reserved

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OFAC ENDORSEMENT

In consideration of the premium charged, it is agreed that any payment under this Policy shall only be made in full compliance with all U.S.A economic or trade sanctions or other laws or regulations, including sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

Aspen Specialty Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WASHINGTON AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

1. **Section IX. Conditions**, subsection **I.** is deleted in its entirety and replaced by the following:

   **I. Cancellation and Non-renewal**

   1. The first **named insured** shown in the Declarations may cancel this policy by notifying **us** or **our** producer in one of the following ways.

      a. Written notice by mail, fax or e-mail;

      b. Surrender of the Policy or binder; or

      c. Verbal notice.

      Upon receipt of such notice, **we** will cancel this policy or binder issued as evidence of coverage, effective on the later of the following:

      a. The date on which notice is received or the policy or binder is surrendered; or

      b. The date of cancellation requested by the first **named insured**.

   2. **We** may cancel this policy by mailing or delivering to the first **named insured** and the first **named insured's** agent or broker of record, written notice stating when cancellation shall become effective and the reason for cancellation, at least:

      a. Ten (10) before the effective date of cancellation, if **we** cancel for nonpayment of premium; or

      b. Ninety (90) before the effective date of cancellation, if **we** cancel for any other reason.

   3. **We** will also mail or deliver to any mortgageholder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to **us**, written notice of cancellation, prior to the effective date of cancellation.

   4. If this policy is cancelled, **we** will send the first **named insured** any premium refund due. If  **we** cancel, the refund will be pro rata. If the first **named insured** cancels, the refund will be at least ninety percent (90%) of the pro rata refund. The cancellation will be effective even if **we** have not made or offered a refund.

   5. **We** may elect not to renew this policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to the first **named insured** and the agent or broker, at the last mailing addresses known to **us**. **We** will also mail to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at the last mailing address known to **us**, written notice of nonrenewal. **We** will mail or deliver these notices at least forty-five (45) days before the:

      a. Expiration of the policy; or

      b. Anniversary date of this policy if this policy has been written for a term of more than one year.

      Otherwise, **we** will renew this policy unless:

**(1)** The first **named insured** fails to pay the renewal premium after **we** have expressed a willingness to renew, including a statement of the renewal premium, to the first **named insured** and the first **named insured's** insurance agent or broker, at least twenty (20) days before the expiration date;

**(2)** Other coverage acceptable to the **named insured** has been procured prior to the expiration date of the policy; or

**(3)** The policy clearly states that it is not renewable and is for a specific line, sub-classification or type of coverage that is not offered on a renewable basis.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Washington.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

Aspen Specialty Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## NOTICE OF INCIDENT

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

I.   **Definitions,** item **D.** is deleted in its entirety and replaced with the following:

**Claim** means a demand for money or services received by **you** alleging an **injury** caused by an **incident** to which this insurance applies. **Claim** also means an **incident** that **you** report to **us,** which **you** reasonably believe may result in a demand for money or services. **Claim** does not include a demand for non-monetary or injunctive relief or any criminal proceeding. **Claims** can only arise from **professional services** within **your** profession as described on the Declarations.

II.  **Coverage Agreement,** item **d**. is deleted in its entirety.

III. The following is added to **Conditions:**

Notice of **incident**. If during the **policy period you** become aware of an **incident** which reasonably has the potential to result in a demand for money or services for which coverage may otherwise be afforded under this policy, **you** must give **us** written notice as soon as possible upon **your** first awareness of such **incident**, but within no more than thirty (30) days of that awareness or the end of the **policy period**, whichever is sooner. The notice **you** provide **us** shall describe the act, error or omission, and state the name of the patient or any other person involved, including any other persons for whom **you** may be responsible, together with the date(s) of the **incident**. Any **claim** that may be subsequently made against **you** arising from or based upon the **incident** described in the notice will be deemed to have first been reported during the **policy period** or the extended reporting period, if applicable.

### ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

2016 © Aspen Insurance U.S. Services Inc. All rights reserved.

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SUPPLEMENTARY PAYMENTS

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

In addition to the limit of **our** liability shown on the Declarations, **we** also will pay:

**A.** All expenses incurred by **us** when defending any **claim** or **suit** covered by this policy, even if the policy indicates that **claim expenses** are included in the limits of liability;

**B.** All court costs taxed against **you** in any **claim** or **suit** defended by **us**;

**C.** Any interest incurred on that portion of a judgment covered under this policy and within the applicable Limits of Liability;

**D.** Premiums on appeal bonds and premiums on bonds to release attachments in any **suit** subject to defense under this policy. The bonds must be for an amount not more than the limit of **our** liability, however, **we** have no obligation to furnish or obtain these bonds; and

**E.** **We** will pay up to $1,000 a day for **your** loss of earnings when, with **our** consent, **you** suspend **your** professional physician practice to attend depositions, hearings or trials. This is subject to a maximum of $10,000 per **claim**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**LIMITED CONSENT TO SETTLE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

**Section III. Defense and Settlement Clause** is deleted in its entirety and replaced with the following:

**We** have the right and duty to defend any **claim** or **suit** brought seeking **damages** against the **insured** for an **injury** caused by an **incident** covered by this policy. **We** have the right to appoint counsel and **we** may investigate any **claim** made or **suit** brought:

**a.** With the written consent of the **named insured**, **we** may settle any **claim** or **suit** against **you** as **we** believe may be proper, provided that this **Section III. a.** shall only apply to **you** if you are a physician. If we recommend a settlement to you that is acceptable to the claimant and you do not agree to the settlement, our liability is limited to the total of the amount of **damages** for which the **claim** could have been settled plus the amount of **claim expenses** incurred up to the time we made the settlement recommendation.

**b.** For all **insureds** other than physicians, **we** may settle any **claim** or **suit** at **our** discretion.

**c.** When required by law **we** will report **claim** settlements and judgements to the National Practitioners Data Bank or to other professional or state agencies.

**We** shall have no further defense or supplemental payment obligations under this policy after the applicable limits of liability, as stated in the Declarations, have been exhausted by the payment of judgments, settlements or **claim** expenses. **Your** consent shall not be required to make a settlement or payment after a judgment has been entered against **you**. In the event that **we** are unable to locate **you**, **we** shall have the right to settle a **claim** or **suit** against **you**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

Aspen Specialty Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXTENDED REPORTING PERIOD OPTIONAL PROVISIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

**Section X. Extended Reporting Period** is deleted in its entirety and replaced with the following:

If this policy is cancelled or non-renewed any **named insured** for whom separate Limits of Liability are indicated on the Schedule of Insureds shown on the Declarations may purchase an Extended Reporting Period Endorsement (hereinafter, "ERP Endorsement"), as described below, for an additional premium. For the purposes of this section, the date of cancellation or non-renewal of this policy is referred to as the termination date. **We** may decline to offer the ERP Endorsement if the cancellation or non-renewal occurs for any of the following reasons:

    **A.**  Flat cancellation, in which **we** cancel the policy effective at policy inception;

    **B.**  Midterm cancellation for non-payment of premium;

    **C.**  **Your** failure to comply with policy provisions;

    **D.**  Non-payment of a deductible;

    **E.**  Failure to cooperate with **us;** or

    **F.**  Fraud, **concealment** or material misrepresentation of facts in an **application.**

The ERP Endorsement will provide coverage for any **claim** first made during the extended reporting period; provided that the **claim** arose from an **incident** that first occurred on or after the applicable **retroactive date** and prior to the termination date. If the ERP Endorsement is not purchased, there will be no coverage after the termination date.

The ERP Endorsement coverage is available for the following duration(s):

    **A.**  12 Months
    **B.**  36 Months
    **C.**  60 Months

The right to purchase such ERP Endorsement coverage must be exercised by written notice to **us** not later than thirty (30) days from the effective date of termination of this policy. Such written notice must include payment of the premium for the applicable ERP Endorsement coverage, as well as payment of all other premiums due to **us**. If such written notice is not so given to **us**, **you** shall not be entitled to exercise such right at a later date.

**We** will compute the additional premium for the ERP Endorsement coverage in accordance with **our** rules in effect on the termination date. Subject to the requirements set forth in this policy, the ERP Endorsement coverage will be effective as of the termination date. In purchasing the ERP Endorsement coverage, if **your** payment is dishonored, the ERP Endorsement coverage shall be void.

The entire additional premium for the ERP Endorsement coverage shall be deemed fully earned at the inception of the Extended Reporting Period.

Unless indicated differently in the ERP Endorsement, the Limits of Liability for the ERP Endorsement will be equal to the Per Claim Limit of Liability in effect on the termination date as set forth on the Declarations for this Policy. The Limits of Liability available under the ERP Endorsement are part of and not in addition to the Limits of Liability available under the

 2016 © Aspen Insurance U.S. Services Inc. All rights reserved.

last policy or renewal issued to the **named insured. Claims** made during the expiring **policy period** may reduce the Limits of Liability available under the ERP Endorsement. The ERP Endorsement does not extend the **policy period** or change the scope of coverage provided under this policy; nor does it increase or reinstate the Limits of Liability. It only extends the period of time for reporting **claims** to **us** during the extended reporting period. The ERP Endorsement is subject to all policy provisions in effect at the time of the termination of the **insured's** coverage.

**We** will provide the ERP Endorsement coverage free of charge to **you** or **your** estate if any one of the following occur:

A. **You** die. In the event of **your** death, and within ninety (90) days after such death, written notification must be provided to **us** that the ERP Endorsement coverage set forth under this **Section X.**, is desired; provided that such written notification must:

   1. Include proof of such death in order for the ERP Endorsement to be issued; and

   2. Be provided by any **insured** or **your** estate.

B. **You** become totally and permanently disabled and are unable to continue **your** duties as a licensed professional in **your** specialty; provided that, within ninety (90) days after such disability **we** receive written notification by **you** that the ERP Endorsement coverage set forth under this **Section X.**, is desired.

   Such written notification must include written documentation from a health care provider confirming **your** disability.

C. **You** retire from practice, are at least fifty-five (55) years of age, and have five (5) years of continuous claims-made coverage with **us.**

   1. Within ninety (90) days after such retirement **we** receive written notification by **you** that the ERP Endorsement coverage set forth under this **Section X.**, is desired; and

   2. Retirement means the complete and permanent withdrawal from the practice of medicine. If **you** receive ERP Endorsement coverage free of charge for retirement and later resume the practice of medicine, **you** must notify **us** of **your** intention to resume the practice of medicine, and the ERP Endorsement coverage will be canceled as of the date **you** resume the practice of medicine.

   Retirement does not include **your** retiring from the practice of medicine due to:

   i. **Your** license being involuntary taken away or revoked;

   ii. Revocation of **your** license;

   iii. Denied renewal of **your** license;

   iv. Disciplinary relinquishment of **your** license;

   v. Suspension of **your** license; or

   vi. **Your** license being placed on voluntarily inactive status.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

Aspen Specialty Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADMINISTRATIVE PROCEEDING REIMBURSEMENT ENDORSEMENT

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

### ADMINISTRATIVE DEFENSE COSTS LIMIT OF LIABILITY

Defense Costs Limits of Liability: $10,000 Per **Claim**; $30,000 Policy Aggregate.

**I.** In the event that an **insured** physician covered under this policy is the subject of:

    **a.** An investigation by a state medical board, state board of medical examiners,

    **b.** Civil proceedings Instituted against **you** by a federal or state regulatory entity alleging violation of HIPAA privacy regulations;

    **c.** A formal allegation of wrongful employment practices (EPLI); or

    **d.** Proceedings Instituted by a state Department of Health Services or Federal Department of Health and Human Services alleging Medicare/Medicaid fraud and abuse by **your** performance of medical services in excess of or in violation of Medicare or Medicaid guidelines;

Up to the limits of liability indicated above **we** shall reimburse the **named insured** who is the subject of that investigation, allegation or proceeding for all administrative defense costs incurred in the defense of that **named insured** in such investigation; provided that:

**A.** Such administrative defense costs shall be subject to the ADMINISTRATIVE DEFENSE COSTS LIMIT OF LIABILITY set forth in the Schedule above;

**B.** Reimbursement of any administrative defense costs shall only be made to the **named insured** who is the subject of the investigation, proceeding or allegation;

**C.** **We** will not reimburse any expenses associated with the defense of any other **insured**, person, or entity;

**D.** Any payment made by **us** will not reduce the policy's overall Limits of Liability;

**E.** Written notice of the investigation, proceeding or allegation must be given to **us** by the **named insured** who is the subject of the investigation as soon as practical, but no later than 10 days from the **named insured's** first receipt of notice of the investigation or at the end of the **policy period**, whichever is sooner;

**F.** Renewal of this policy does not increase the limits of liability available for an investigation, allegation or proceeding reported during a prior policy period;

**G.** Multiple allegations, investigations or proceedings arising from the same or interrelated acts or omissions shall be treated as a single investigation;

**H.** The Policy Aggregate indicated above is the most **we** will reimburse for all **claims** covered by this **endorsement**;

**I.** **We** have no obligation to select an attorney;

**J.** This coverage terminates on the policy expiration date indicated on the Declarations or upon earlier termination of the policy for any reason;

**K.** The coverage provided by this **endorsement** is not subject to a deductible;

**L.** This endorsement provides reimbursement only for administrative defense costs. Administrative defense costs means attorney's fees incurred by **you** resulting from a proceeding, allegation or investigation covered by the **endorsement;**

**M.** **You** agree to keep **us** fully informed contemporaneously concerning all significant developments in the investigation or hearing; and

**N.** All invoices and receipts related to a covered investigation, proceeding or allegation must be submitted to **us** within one year (365 days) of the conclusion of a proceeding, allegation or investigation covered by this **endorsement** or at the end of the **policy period**, whichever is sooner.

**II.** Exclusions. Despite any other provisions of the policy the coverage provided by this **endorsement** does not apply to any **claim** arising out of, based on or attributable to, in whole or in part, or in any way involving any of the following:

**A.** **Claims** made due to **damages** arising from **professional services;**

**B.** Personal **Injury or** property damage including death, disease or sickness but this exclusion does not apply to emotional distress, humiliation, mental anguish or loss of reputation that arises from an allegation of wrongful employment practice;

**C.** Any action initiated by an **insured** under this policy, however this exclusion does not apply to allegations of wrongful employment practices initiated by **your employees;**

**D.** Any matter arising from **your** initial application for licensure, membership in a professional society or specialty certification;

**E.** Medical, psychiatric or psychological treatment or costs arising from education programs;

**F.** Any cost related to implementation of compliance programs required by a licensing board or other governmental body;

**G.** Reimbursement for recovery of lost wages, fees or other income;

**H.** The cost of providing reasonable accommodations as required by the Americans With Disabilities Act and its amendments or any similar state, local or federal law;

**I.** Non-monetary relief in any form, including **your** costs arising from compliance with injunctive relief of any kind imposed by judgement or settlement; or

**J.** Any violation of law including but not limited to:

  **1.** The Employee Retirement Income Security Act (ERISA);

  **2.** The Consolidated Omnibus Reconciliation Act of 1985 (COBRA);

  **3.** The Occupational Safety and Health Act of 1970 (OSHA);

  **4.** All laws governing workers' compensation, unemployment insurance, social security or disability benefits;

  **5.** Any local, state or federal law regulating employees' rights regarding unions, strikes, boycotts, picketing, lockouts or collective activities; and

  **6.** Any violation or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act) or any other federal, state or local law governing wages, working hours and payroll practices.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## LIMITED ADDITIONAL INSURED ENDORSEMENT
### (SCHEDULED ENTITY VICARIOUS LIABILITY)

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

For the purposes of this **endorsement** only:

1. The following is added to the Definition of **insured**:

   Each of the following is an additional **insured**:

   The entity(ies) or person(s) set forth in the Additional Insured Schedule below as additional **insured(s)**, but only with respect to the vicarious liability arising from **incidents** caused by the **named insured** on behalf of the below-scheduled additional **insured(s)**.

   However, coverage does not apply to **incidents** which occurred before the **retroactive date** shown in the Declarations.

2. The following is added to the Conditions section:

   If a **claim** or suit arises from an **incident** caused by the **named insured** on behalf of the below-scheduled additional **insured(s)**, but the **named insured** is not held liable or is dismissed from the **claim** or suit, or when the per Claim limit or Policy Aggregate Limit has been exhausted, then no coverage is afforded to the below-scheduled additional **insured(s)**. If the below-scheduled additional **insured(s)** chooses to defend itself if it is sued, **we** have no obligation to defend such **suit** or pay **damages**.

3. The following is added to the Limits of Liability section:

   The Limits of Liability for an additional **insured** are sharing and non-stacking. Endorsement of the below-scheduled additional **insured(s)** on any other primary professional liability policy issued by **us** will not increase the limits of liability shared by the additional **insured** for a **claim** under this policy. This policy as endorsed will not afford (a) coverage to any other **named insured** or additional **insured** under any other primary professional liability policy issued by **us**, or (b) coverage to the below-scheduled additional **insured(s)** under any other primary professional liability policy issued by **us**.

### ADDITIONAL INSURED SCHEDULE

| Name and Address | Effective Date | Retroactive Date |
|---|---|---|
| Kitsap OB Gyn, PLLC<br>9750 Levin Road NW<br>Silverdale, WA 98383 | 07/01/2022 | 07/01/2018 |

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

**PROFESSIONAL LIABILITY INSURANCE FOR
PHYSICIANS AND SURGEONS**



**ASPEN
INSURANCE**

**RENEWAL POLICY APPLICATION**

**CLAIMS-MADE DISCLOSURE NOTICE: THIS IS AN APPLICATION FOR RENEWAL OF CLAIMS-MADE AND REPORTED INSURANCE PROVIDED THROUGH ASPEN SPECIALTY INSURANCE COMPANY (THE "COMPANY").**

You agree that any coverage issued will be contingent upon the truth of the information provided in this renewal application as well as any previous application(s) made to the Company. If a renewal policy is issued, this application, as well as previous applications, will become a part of the policy, as if physically attached thereto.

Please fully complete this application as an incomplete application cannot be evaluated. Answer ALL questions completely, leaving no blanks. If any questions, or part thereof, do not apply, print "N/A" in the appropriate space. Any spaces left blank will be interpreted to not apply. Provide any supporting information on a separate sheet and reference the applicable question number. This application must be completed, dated and signed by the applicant or an authorized representative of the applicant.

The information requested in this application is for underwriting purposes only and does not constitute notice to the Company under any policy of a claim or potential claim. All such notices must be submitted to the Company pursuant to the terms of the policy, if and when issued.

| GENERAL INFORMATION | Expiring Policy Number: | MM008LW19 |
|---|---|---|

1.  Full Name of Individual Applicant: Jennifer C Quimby

    Professional Designation: ☑ MD  ☐ DO  ☐ DPM  ☐ ND  ☐ Other, Specify:_____

2.  Last four digits of your SSN: ███████          3. Date of Birth: ███████

4.  **Principal Practice Location,** Percentage of practice at <u>this</u> location: _____40_____%

    Address:  9750 Levin Rd NW
    (Full Street Address)

    | Silverdale | WA | 98383 | Kitsap |
    |---|---|---|---|
    | (City) | (State) | (Zip Code) | (County) |

    Office Telephone:  (360) 307-7202          Office Fax:  (360) 698-6600

    Web Site:  www.kisapobgyn.com          E-Mail Address: jenquimby@msn.com

    **Mailing Address** *(if different than **Principal Practice** address above)*

    Address: _____
    (Full Street Address)

    | | | | |
    |---|---|---|---|
    | (City) | (State) | (Zip Code) | (County) |

    Other Telephone: _____

5.  In addition to the principal practice location listed above, do you practice/provide professional services at any additional location(s) or address(es)?          ☑ Yes  ☐ No  If yes, please specify below:

| Other Practice Locations, Address | | | % of Practice |
|---|---|---|---|
| St. Michaels Medical Ctr. 1800 Myhre Rd. | Silverdale | WA 98383 | 45 |
| Kitsap OB Gyn 20700 Bond Rd. | Poulsbo | WA 98370 | 10 |
| Pacific Surgery Ctr 20669 Bond Rd. | Poulsbo | WA 98370 | 5 |

Doc ID: 62c1b02a55f1e82d90274243d5c73a840d875f58

## PRACTICE & SPECIALTY INFORMATION

6.  Medical Specialty: __Obstetrics & Gynecology_____ % of practice: __100_____

7.  Sub Specialty: _____ % of practice: _____

8.  Do you limit your practice to your specialty and/or your subspecialty?    ☑ Yes  ☐ No

9.  Average number of patient encounters per week (or for Radiologists or Pathologists, average # weekly images/specimens/'reads') by you and by all healthcare extenders you employ and/or supervise: __70_____

10. Average weekly practice hours?    __40_____

11. Since your last application to us, has your practice specialty, average patient encounters or weekly practice hours changed?    ☐ Yes  ☑ No
    If yes, please explain in detail what has changed: _____

12. Since your last application to us, have you added any Physician(s), Surgeon(s), Ancillary Personnel or Extender(s) such as but not limited to Physician Assistants, Nurse Practitioners, etc., to your practice?    ☑ Yes  ☐ No
    If yes, please explain in detail:    __Added an ARNP/CNM to our group practice_____

13. Since your last application to us, have you added or discontinued any Entities, DBA name(s) or alias?    ☐ Yes  ☑ No
    If yes, please explain in detail what has changed, include attachments if necessary: _____
    _____

14. Please ☑ to indicate your **Practice Category**:

| | |
|---|---|
| ☐ No Surgery | No surgery/surgical procedures, however, this category allows the suturing of minor lacerations; the incision of sebaceous cysts and boils; incision and removal of foreign body(ies) from superficial or subcutaneous tissue; needle aspiration of cysts limited to subcutaneous tissue; the localized treatment of 2nd and 3rd degree burns; umbilical and urethral catheterization. |
| ☐ Minor Surgery | The following procedures as performed by all general practitioners or specialists except those performing major surgery or anesthesiology.  However, this category allows **no procedures performed on a patient while under general anesthesia**. |
| | Endoscopic procedures including endoscopic retrograde cholangiopancreatography; colonoscopy; sigmoidoscopy; pneumatic or mechanical esophageal dilation (not with bougie or olives); arteriography; angiography; arterial, cardiac or diagnostic catheterization – if by internists, only to those who have completed appropriate cardio-vascular subspecialty training; radiopaque dye injections into blood vessels, lymphatic system , sinus tracts or fistulae; needle biopsy-including lung, prostate, breast, superficial and subcutaneous tissue. |
| ☑ Major Surgery | This category involves operations in or upon any body cavity including, but not limited to, the cranium, thorax, abdomen or pelvis, or any other operation that presents a distinct hazard to life because of the condition of the patient, the length or circumstances of the operation(s).  This includes discograms, lymphangiography, myelography, phlebography, pneumoencephalography, radiation therapy(ies), the removal of tumors (except skin tumors), liver/kidney/bone marrow biopsy, reduction of open bone fractures, amputations, abortion, removal of any organ or gland, plastic surgery, tonsillectomies, adenoidectomies, cesarean sections **and any other operation performed under general anesthesia.** |

Doc ID: 62c1b02a55f1e82d90274243d5c73a840d875f58

15. Since your last application to us, have you added or discontinued any specific procedure(s), service or contractual obligation(s) to your practice?   ☐ Yes  ☑ No
    If yes, please explain in detail: _____

## EDUCATION, TRAINING & CERTIFICATION INFORMATION

16. Are you certified by the American Board of Medical Specialties?   ☑ Yes  ☐ No
    If yes, specify the Board Name:  American College of Obstetrics & Gynecology

17. How many hours of Continuing Medical Education/CME have you taken in the past 12-months?   40

## LICENSING INFORMATION

18. Please list all states where you hold a valid Medical license:

| State | License Number | Effective Date | Expiration Date | Currently Active |
|-------|----------------|----------------|-----------------|------------------|
| WA | MD 00040752 | 2/ 6/2002 | 5/29/2022 | ☑ Yes  ☐ No |
|  |  |  |  | ☐ Yes  ☐ No |
|  |  |  |  | ☐ Yes  ☐ No |

19. Federal DEA License #:  BQ6729810

20. Since your last application to us, have you expanded into or discontinued your practice in any state(s)?
    ☐ Yes  ☑ No

## HOSPITAL PRIVILEGE INFORMATION

21. Since your last application to us, has there been any changes as respects any hospital(s) and/or surgery-center(s) at which you maintain privileges or on staff?   ☐ Yes  ☑ No
    If yes, please complete the following:

| Hospital/ ASC Name | City | State | Type of privileges | New or Discontinued |
|--------------------|------|-------|--------------------|--------------------|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

## UNDERWRITING INFORMATION

**Since your last application to us:** *(explain any "Yes" response on a separate sheet)*

22. Have there been any judgements, settlements or dismissals of any previously reported claims, regardless of insurance carrier, self-insurance or any other risk transfer arrangement?   ☑ Yes  ☐ No
    If **"Yes,"** please complete a *Claim Information Supplement* for each

23. Have you had or been involved in any claim or suit for alleged medical professional liability malpractice?   ☑ Yes  ☐ No
    If **"Yes,"** please complete a *Claim Information Supplement* for each

Doc ID: 62c1b02a55f1e82d90274243d5c73a840d875f58

24. Have you had any claims, suits or losses that have not been reported to and accepted by any prior insurance carrier or any other source from which coverage and/or payment could be made? ☐ Yes ☑ No

25. Have you become aware of any complication, incident or adverse outcome resulting in injury or death that might reasonably result in a claim or suit against you?  This includes, but is not limited to: ☐ Yes ☑ No
    a. amputation
    b. death
    c. loss of major organ function
    d. permanent neurological injury

26. Have you or anyone in your practice received any request from a current or former patient, a patient's family or a patient's legal representative for medical records which might reasonably result in a claim or suit against you? ☐ Yes ☑ No

27. Has any current or former patient, patient's family or patient's legal representative threatened litigation against you or asked you for either payment or a waiver of professional fees after having expressed dissatisfaction with the services you provided? ☐ Yes ☑ No

28. Has your license to practice medicine been denied, refused, suspended, limited, placed on probation, restricted, revoked or surrendered, voluntarily or otherwise, in any state? ☐ Yes ☑ No

29. Has your license/permit to prescribe or dispense drugs been denied, refused, suspended, limited, placed on probation, restricted, revoked or surrendered, voluntarily or otherwise, in any state? ☐ Yes ☑ No

30.  Has any professional society or association refused, suspended or revoked your membership? ☐ Yes ☑ No

31. Have you been investigated, requested to resign from, or been involved in an official or un-official proceeding brought by or on behalf of a hospital, managed care organization or other similar healthcare organization in which your privileges have been denied, revoked, limited, suspended, restricted or non-renewed, whether voluntarily or involuntarily? ☐ Yes ☑ No

32. Have you been or are you now being treated for, evaluated for, hospitalized for or suffered from alcohol or other chemical/substance abuse or dependency? ☐ Yes ☑ No
    If **"Yes",** please complete the Aspen **Substance Abuse/Impairment Supplemental Application**

33. Have you incurred or become aware of any illness, or physical, emotional or mental health condition or circumstance that, despite reasonable accommodation(s), impairs, limits, restricts or could impair, limit, or restrict your ability to practice medicine? ☐ Yes ☑ No

34. Have you been convicted, had charges brought against you, or are you currently under investigation of any act committed in violation of any law or ordinance other than a traffic offense? ☐ Yes ☑ No

35. Have you become aware of any information relating to service(s) on any Board(s) which might reasonably result in a claim or suit against you? ☐ Yes ☑ No

36. Have you been notified to appear before or respond to, or been investigated by any licensing or regulatory agency, board or body regarding a complaint of any nature, including but not limited to unethical or unprofessional conduct? ☐ Yes ☑ No

Doc ID: 62c1b02a55f1e82d90274243d5c73a840d875f58

**FRAUD WARNING**

**NOTICE TO APPLICANTS OF ALL STATES EXCEPT COLORADO, DISTRICT OF COLUMBIA, KANSAS, KENTUCKY, LOUISIANA, MAINE, NEW JERSEY, NEW MEXICO,  NEW YORK, OHIO, OKLAHOMA, OREGON, PENNSYLVANIA, PUERTO RICO, TENNESSEE, VERMONT, VIRGINIA, WASHINGTON**: Any person who knowingly, and with the intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any material false information or conceals for the purposes of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties and denial of insurance benefits. **NOTICE TO COLORADO APPLICANTS:** IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY.   PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES.   ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES. **NOTICE TO DISTRICT OF COLUMBIA APPLICANTS:** WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. **NOTICE TO NOTICE TO KANSAS APPLICANTS:** an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. **NOTICE TO KENTUCKY APPLICANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. **NOTICE TO LOUISIANA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. **NOTICE TO MAINE AND WASHINGTON APPLICANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits. **NOTICE TO MARYLAND APPLICANTS:** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. **NOTICE TO MINNESOTA APPLICANTS:** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime. **NOTICE TO NEW JERSEY APPLICANTS:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. **NOTICE TO NEW MEXICO APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties. **NOTICE TO NEW YORK APPLICANTS:** Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and is subject to a civil penalty not to exceed $5,000.00 and the stated value of the claim for each such violation. **NOTICE TO OHIO APPLICANTS:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. **NOTICE TO OKLAHOMA APPLICANTS:** Warning: Any person who knowingly, and with intent to injure, defraud or deceive any insurer or makes a claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. **NOTICE TO OREGON APPLICANTS:** Any person who knowingly and with intent to defraud or solicit another to defraud an insurer: (1) by submitting an application, or (2) by filing a claim containing a false statement as to any material fact, may be violating state law.   **NOTICE TO PENNSYLVANIA APPLICANTS:** Any person who knowingly, and with intent to defraud any insurance company

or other person, files an application for insurance or statement of claim containing any material false information or conceals for the purposes of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties. **NOTICE TO PUERTO RICO APPLICANTS:** The Entity understands that according to the Insurance Code of Puerto Rico (Article 27.320): "Any person who knowingly and with the intention to defraud that present false information in an insurance request or, that present, make or help to make a fraudulent claim for the payment of a loss or another benefit, it will present more than a claim by a same damage or loss, will incur in a serious crime and could be convicted and sanctioned, by each violation with a pain of no smaller fine of five thousand ($5,000) dollars, nor greater of ten thousand ($10,000) dollars or imprisonment by a fixed term of three (3) years, or, both pains. If there are aggravating circumstances, the pain fixes established could be increased until a maximum of five (5) years; to mediate extenuating circumstances, it could be reduced until a minimum of two (2). **NOTICE TO TENNESSEE AND VIRGINIA APPLICANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. **NOTICE TO VERMONT APPLICANTS:** Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

## DECLARATION AND CERTIFICATION

**BY SIGNING THIS APPLICATION, THE APPLICANT WARRANTS TO THE COMPANY THAT ALL STATEMENTS MADE IN THIS APPLICATION ABOUT THE APPLICANT AND ITS OPERATIONS ARE TRUE AND COMPLETE, AND THAT NO MATERIAL FACTS HAVE BEEN MISSTATED IN THIS APPLICATION OR CONCEALED. THE APPLICANT HEREBY AUTHORIZES THE RELEASE OF CLAIMS INFORMATION FROM ANY PRIOR INSURERS TO THE COMPANY. COMPLETION OF THIS FORM DOES NOT BIND COVERAGE. THE APPLICANT'S ACCEPTANCE OF THE COMPANY'S QUOTATION IS REQUIRED BEFORE THE APPLICANT MAY BE BOUND AND A POLICY ISSUED.**

**THE APPLICANT AGREES THAT IF AFTER THE DATE OF THIS APPLICATION, ANY INCIDENT, EVENT OR OTHER CIRCUMSTANCE SHOULD RENDER ANY OF THE INFORMATION CONTAINED IN THIS APPLICATION OR ANY OTHER DOCUMENTS SUBMITTED IN CONNECTION WITH THE UNDERWRITING OF THIS APPLICATION INACCURATE OR INCOMPLETE, THEN THE APPLICANT SHALL NOTIFY THE COMPANY OF SUCH INCIDENT, EVENT OR CIRCUMSTANCE AND SHALL PROVIDE THE COMPANY WITH INFORMATION THAT WOULD COMPLETE, UPDATE OR CORRECT SUCH INFORMATION. ANY OUTSTANDING QUOTATIONS OR BINDERS MAY BE MODIFIED OR WITHDRAWN AT THE SOLE DISCRETION OF THE COMPANY.**

04 / 25 / 2022
Date (Mo./Day/Yr.)

Applicant Signature

Jennifer C Quimby
Print or Type Name

Physician
Title

# EXHIBIT C

# WASHINGTON SURPLUS LINES NOTICE

This contract is registered and delivered as a surplus lines coverage under the insurance code of the state of Washington, Title 48 RCW.  It is not protected by any Washington state guaranty association law.

# PROFESSIONAL LIABILITY INSURANCE POLICY
PHYSICIANS AND SURGEONS DECLARATIONS



**POLICY NUMBER: MM008LW23**
**Renewal of:** MM008LW22

## This is a Claims-Made and Reported Policy

| COMPANY | PRODUCER |
|---|---|
| Aspen Specialty Insurance Company<br>Newport Office Center III<br>499 Washington Boulevard, 8th Floor<br>Jersey City, NJ 07310<br>(877) 245-3510 | Amwins Insurance Brokerage, LLC<br>601 Union Street<br>Suite 1630<br>Seattle, WA 98101 |

### INSURED INFORMATION

| Named Insured | Jennifer C Quimby, MD | | |
|---|---|---|---|
| **Mailing Address** | 9750 Levin Road NW<br>Silverdale, WA 98383 | | |
| **Medical Specialty** | Obstetrics/Gynecology - Major Surgery | **Code:** | 80153 |

### POLICY PERIOD

| Effective Date: | 07/01/2023 | **Expiration Date:** | 07/01/2024 |
|---|---|---|---|

*EFFECTIVE AT 12:01 A.M. TIME AT THE ADDRESS OF THE **NAMED INSURED** SHOWN ABOVE*

| Retroactive Date: | 07/01/2018 |
|---|---|

*THIS POLICY WILL NOT PROVIDE COVERAGE FOR ANY **CLAIM** ARISING OUT OF ANY **PROFESSIONAL SERVICES** PROVIDED BEFORE THE **RETROACTIVE DATE**.*

### LIMITS OF LIABILITY

*The Limits of Liability are shared by all **insureds**.*

| Per Claim | $1,000,000 |
|---|---|
| **Annual Aggregate** | $3,000,000 |
| | |
| **Deductible**<br>*Applies to each and every **claim*** | $15,000 |

### EXTENDED REPORTING PERIOD

| 12 Months | 150% of full annual premium |
|---|---|
| 36 Months | 200% of full annual premium |
| 60 Months | 250% of full annual premium |
| DDR | Prem waiver in cases of death, disability and retirement (age 55 with 5 years vested) |

### PREMIUM

| Policy Premium | |
|---|---|

25% minimum earned premium; no flat cancellation.

### SCHEDULE OF NAMED INSUREDS

| Named Insured | Medical Specialty | Code | Eff Date | Retro Date |
|---|---|---|---|---|
| Jennifer C Quimby, MD | Obstetrics/Gynecology - Major Surgery | 80153 | 07/01/2023 | 07/01/2018 |

| FORMS & ENDORSEMENTS |
| FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY:  See Schedule of Forms and Endorsements |

This Declarations page, together with the Application for this policy, the attached policy form and all Endorsements thereto, shall constitute the contract between **us** and the **insured**.  The policy is valid only if signed below by **our** duly authorized representative.

In witness whereof, **we** caused this policy to be signed below by **our** duly authorized representative.


ISSUE DATE:  06/20/2023

By: _____
                              (Authorized Representative)

# SCHEDULE OF FORMS AND ENDORSEMENTS

| **FORM NUMBER** | **FORM NAME** |
|---|---|
| SNWA 0112 | Washington Surplus Lines Notice |
| ASPML001 1016 | Declarations Page |
| ASPML005 0223 | Professional Liability Insurance Policy for Physicians and Surgeons |
| ASPCO098 0213 | Signature Page |
| ASPCO002 0821 | General Service Of Suit Notice |
| ASPCO021 0616 | OFAC ENDORSEMENT |
| ASPML052 1116 | Washington Amendatory Endorsement |
| ASPML006 1016 | Notice of Incident |
| ASPML008 1016 | Supplementary Payments |
| ASPML012 1016 | Limited Consent to Settle Endorsement |
| ASPML014 1016 | Extended Reporting Period Optional Provisions Endorsement |
| ASPML016 1016 | Administrative Proceeding Reimbursement Endorsement |
| ASPML032 1016 | Limited Additional Insured Endorsement (Scheduled Entity Vicarious Liability) |
| ASPML103 0123 | Protected Health Information Endorsement |



## PROFESSIONAL LIABILITY INSURANCE POLICY
FOR PHYSICIANS AND SURGEONS

**ASPEN SPECIALTY INSURANCE COMPANY**
**499 WASHINGTON BOULEVARD, 8TH FLOOR**
**JERSEY CITY, NJ 07310**
(A stock insurance company)

IMPORTANT NOTICE: This is a Claims Made and Reported as well as a non-assessable policy.  Please read it carefully. The coverage provided by this policy is limited to liability for **claims** first made against **you** during the **policy period** for **professional services** rendered entirely on or after the **retroactive date** stated on the Declarations; provided that such **claims** are first reported in writing by **you** to **us** during the **policy period**, unless an Extended Reporting Period Endorsement is purchased, which provides an additional period in which to report covered **claims**.

### IN THE EVENT OF A CLAIM:

Please report **claims** immediately to **your** agent or broker or directly to **our** claims adjustors:

Email: medicalesclaims@aspen-insurance.com

Fax:  646-390-1821

**You** must give notice of any **claim** first made against **you** during the **policy period** immediately, but in no event any later than thirty (30) days after **you** first become aware of such **claim** or the end of the **policy period**, whichever is sooner. Failure to report **claims** promptly may result in a denial of coverage.

### THIS POLICY IS NOT EFFECTIVE UNLESS A DECLARATIONS IS ATTACHED

### Section I. Definitions

Throughout this policy **you** and **your** mean any **insured** under this policy.  **We**, **our** and **us** means Aspen Specialty Insurance Company.

Other words and phrases with special meanings are defined below.  They are bold faced when used in this policy (which includes any **endorsements**).

**A.  Abuse** means assault, battery, molestation of any kind, whether physical, mental, or emotional.

**B.  Application** means all materials and information, including all signed **applications** and any materials attached thereto or incorporated therein, submitted by or on behalf of the **insureds** in connection with the underwriting of this policy or any policy of which this policy is a direct or indirect renewal or replacement.  All such **applications**, attachments and materials are deemed attached to and incorporated into this policy.

**C.  Attempted concealment** means an act or instance of making an effort to accomplish **Concealment**, with or without success.

**D.  Claim** means a written demand for money or services received by **you** alleging an **injury** caused by an **incident** to which this insurance applies. **Claim** does not include a demand for non-monetary or injunctive relief or any criminal proceeding. **Claims** can only arise from **professional services** within **your** profession as described on the Declarations.

**E.  Claim expenses** means all expenses, costs and attorneys' fees incurred by **us** in the investigation, discovery, adjustment defense, arbitration, settlement or appeal of any **claim** covered by this policy.  **Claim expenses** include:

   **1.**  All court costs taxed against **you** in any **claim** or **suit** defended by **us**;



## PROFESSIONAL LIABILITY INSURANCE POLICY
FOR PHYSICIANS AND SURGEONS

---

2. Any interest incurred on that portion of a judgment covered under this policy and within the applicable Limits of Liability; and

3. Premiums on appeal bonds and premiums on bonds to release attachments in any **suit** subject to defense under this policy. The bonds must be for an amount not more than the limit of **our** liability. However, **we** have no obligation to furnish or obtain these bonds.

F. **Concealment** means withholding from **us** or the patient, material facts or information that, in good faith, ought to be disclosed or will increase **our** risk.

G. **Damage(s)** means the monetary portion of any judgment, award or settlement, which **you** are legally obligated to pay, but does not include:

1. Any damages that are a multiple of compensatory damages, fines, penalties or sanctions;

2. Judgments or awards considered uninsurable by law;

3. Any form of equitable or non-monetary relief or fees, costs, expenses paid to or incurred or charged by an **insured**;

4. Payment for **professional services**;

5. **Your** salaries and expenses or those of **your** employees or **ostensible employees**; or

6. Bail bonds.

H. **Endorsement(s)** means documents attached to this policy which contain information not included in this policy or information which changes this policy. **Endorsements** become a part of the policy upon issuance. **Endorsements** may contain state specific requirements regarding coverage under this policy.

I. **Fiduciary duty** means the duty that arises when the business transacted, money or property handled, is not **your** own or for **your** benefit, but for the benefit of another person, to whom **you** stand in a relationship implying and necessitating confidence, trust and good faith, whether or not that duty arises by matter of law, contract or otherwise. This includes duties which may arise as a fiduciary under the Employee Retirement Income Security Act of 1974 or any of its amendments.

J. **Incident** means any act, error, or omission, or misstatement or misleading statement by **you** in the rendering of or failure to render **professional services**. All such acts, errors, or omissions causally related to the rendering of or failure to render **professional services** shall be considered one **incident**. An **incident** shall be deemed to have occurred at the time of the earliest act, error, or omission comprising that **incident**. An **incident** shall not be deemed a **claim** unless **you** receive a written demand for money or services or a Notice of Incident Endorsement is attached to this policy.

K. **Injury** means bodily injury, sickness, disease or death sustained by any one person.

L. **Insured** means a person or entity qualified under Section IV**.** The Insured

M. **Locum tenens** means a health care provider temporarily serving in the place of an **insured**, provided that such **locum tenens** does not provide **professional services** at the same time as the **insured** being replaced. **Locum tenens** providers must be trained and practicing in the same specialty as the **insureds** for whom they are substituting.

N. **Named insured** means a physician or entity so designated in the Declarations Page of this policy.



**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS

---

**O.  Ostensible employee** means a person other than a physician who provides healthcare services on behalf of the **insured's** medical practice, including but not limited to independent contractors, students and volunteers.

**P.  Policy period** means the period of time shown on the Declarations or its earlier termination date, if any.

**Q.  Professional services** means healthcare services that **you** provide in the context of a doctor-patient relationship including diagnoses, medical opinions, consultation and medical care.

**R.  Retroactive date** means the date on which **your** coverage begins; **you** are covered only for **professional services** that **you** provide entirely on or after this date.

**S.  Sexual misconduct** means sexual impropriety, sexual intimacy, sexual assault, sexual **abuse**, sexual molestation, sexual harassment, or sexual acts including licentious, immoral or amoral behavior, whether committed with the belief, erroneous or otherwise, that the other party had consented and had the legal and mental capacity to consent to such sexual acts.

**T.  Suit** means a civil proceeding that seeks **damages** which, if awarded, would be covered by this policy. **Suit** includes: an arbitration proceeding, any alternative dispute resolution proceeding, or a pre-suit, screening panel, or similar proceeding mandated by law.

## Section II. Coverage Agreement

In consideration of the payment of the premium and Deductible, and in reliance upon the statements in the application, which is made a part hereof and deemed attached hereto, and subject to the Declarations and all terms of this policy, we agree as follows:

Within the Limits of Liability shown on the Declarations and in excess of the deductible w**e** will pay on **your** behalf all sums **you** become legally obligated to pay as **damages** as a result of a **claim** or **suit** first made against **you** or against any physician or person for whom **you** are legally responsible and reported to **us** during the **policy period** because of an **injury** caused by an **incident**; provided that:

**a.**  Any **incident** must occur on or after the **retroactive date** and before the end of the **policy period**;

**b.**  Prior to the inception of this policy, no **insured** had a reasonable basis to believe: (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**;

**c.**  **You** report the **claim** immediately but in no event later than thirty (30) after **you** first become aware of such **claim** or the end of the **policy period** whichever is sooner; and

**d.**  An **insured** receives a written demand for money or services.

## Section III. Defense and Settlement Clause

**We** have the right and duty to defend any **claim** or **suit** brought seeking **damages** against the **insured** for an **injury** caused by an **incident** covered by this policy.  **We** have the right to appoint counsel and **we** may investigate any **claim** made or **suit** brought:  **We** have the right to settle any **claim or suit** at **our** discretion. When required by law **we** will report **claim** settlements and judgements to the National Practitioners Data Bank or to other professional or governmental agencies.

**We** shall have no further defense under this policy after the applicable Limits of Liability, as stated on the Declarations, have been exhausted by the payment of judgments, settlements or **claim expenses**.  **Claim expenses** are part of and not in addition to the Limits of Liability.

**≈ Aspen**

**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS

## Section IV. The Insured

The **insureds** under this policy are:

**A.**  The **named insured**;

**B.**  In the event of the **named insured's** death, total and permanent disability or bankruptcy the **named insured's** heirs, executors, administrators, assigns or legal representatives;

**C.**  A person or entity identified in the Schedule of Insureds shown on the Declarations;

**D.**  A person or entity added by applicable **endorsement**;

**E.**  A single physician **insured's** wholly owned professional association (PA) or professional corporation (PC);

**F.**  Any associate, officer, director or proprietary member of an entity designated as an **insured** on the Declarations or an **endorsement** attached to this Policy but only with respect to liability for **professional services** performed by others in the practice of medicine. However, only one Limit of Liability for the insured entity, as set forth in the Declarations and in Section VII. Limits of Liability of this policy, shall be applicable, and there shall not be separate Limits of Liability regardless of the number of such **insureds** under this policy;

**G.**  Any other of **your** employees or **ostensible employees** not specifically included on the Declarations, but only while such other employee or **ostensible employee** is acting within the scope of his or her employment duties, under the direction and supervision of **you**, provided that coverage afforded for such other employees shall not apply to physicians, unless specifically listed on the Declarations for this policy, or by **endorsement** to this policy; and

**H.**  **Locum tenens** temporarily serving in the place of an **insured**, but only:

    **1.**  After **we** have received and approved all requested information about the **locum tenens** physician and affirmed coverage in writing; and

    **2.**  If such **locum tenens** is licensed to perform **professional services** in the jurisdiction in which **professional services** are being performed,

provided that **locum tenens** coverage under this policy for any one **insured** shall not exceed thirty (30) days per **policy period**.

## Section V. Territory

The coverage territory is worldwide however, regardless of **your** location **we** will neither defend nor pay **damages** for **suits** filed outside of The United States of America, its territories and possessions, Puerto Rico or Canada.

## Section VI. Exclusions

Despite any other provision of this policy, this policy does not apply to any **claim** arising out of, based upon or attributable to, in whole or in part, or in any way involving, any of the following:

**A.**  An act or omission violating any federal or state statute, or any county or municipal ordinance governing the commission of a crime and any dishonest, fraudulent, malicious, knowing, wrongful, or intentional acts, errors or omissions committed by **you** or at **your** direction;

**B.**  The providing of **professional services** when or where



## PROFESSIONAL LIABILITY INSURANCE POLICY
FOR PHYSICIANS AND SURGEONS

1. **You** are not properly licensed to practice;

2. **Your** applicable license has been suspended, revoked or surrendered; or

3. **You** are practicing in a manner which constitutes a violation of any restriction imposed upon **your** license;

C. Prescribing or dispensing controlled substances while **your** license or registration to prescribe or dispense these substances is not in effect;

D. The providing of any services which are outside the scope of **your** specialty classification as identified on the Declarations, or as stated in any **application** for this insurance, and as further defined by any applicable statute or regulation;

E. Any **claim** that in any way involves:

1. Any fact, circumstance or situation which has been the subject of any notice given under any policy of which this policy is a direct or indirect renewal or replacement;

2. Any **incident** which occurred while **you** were insured under an occurrence policy;

3. Any **incident** which, prior to the inception of this policy, any **insured** had a reasonable basis to believe: (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**;

F. Any **claim** or **suit** brought by a patient where, prior to the inception of this policy, a patient or a legal representative of a patient requested the patient's medical records from **you** or **your** medical practice;

G. Any vicarious liability arising from the provision of or failure to provide **professional services** by any health care provider or other person or entity which is not under **your** direct supervision, or is not an employee or **ostensible employee** of **yours**;

H. Libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry or eviction, violation of rights of occupancy, false arrest, false imprisonment, malicious prosecution, malicious use of or abuse of process, assault, battery, or any resulting loss of consortium, disability, shock, humiliation, embarrassment, mental injury or anguish, emotional distress or **injury** to personal or business reputation or character;

I. Any **abuse** or **sexual misconduct**, regardless of whether or not such **abuse** or **sexual misconduct** was committed in conjunction with or under the guise of **professional services**;

J. The provision of **professional services** while **you**, or any other **insured** for whose acts or omissions **you** are legally responsible, is under the influence of alcohol, drugs, or other intoxicants;

K. Any liability arising out of any employment dispute;  Personal injury, sickness, disease or death of any employee or **ostensible employee** of **yours** if the personal injury, sickness, disease or death arises from the course of the employee or **ostensible employee's** employment by **you**;

L. Any obligation for which **you** or **your** insurer, self-insured fund or plan, may be liable under any worker's compensation, occupational disease, unemployment compensation, disability benefits, or other similar plan;

M. Any liability for the acts of another assumed by **you** under any contract or agreement.  However, this exclusion does not apply to **your** alleged negligence arising out of providing or failing to provide **professional services** under contract with any:



**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS

1. Health Maintenance Organization (HMO);

2. Preferred Provider Organization (PPO);

3. Independent Practice Association (IPA);

4. Accountable Care Organization (ACO); or

5. Other similar organization.

**N.** Any liability in the event **you**, or someone **you** instruct or supervise, fraudulently alters, defaces or falsifies any record whether intentionally or unintentionally.   This includes **concealment** or **attempted concealment** of any act or omission of **yours** relating to a **claim** for **damages** under this policy;

**O.** Any liability resulting from medical **injury** to **you**, **your** employees or the spouse, child, parent, brother or sister of **you** or **your** employees; provided that this exclusion shall not apply to **professional services** provided to **your** patient who is also an employee, or employee's spouse, child, parent, brother or sister;

**P.** Any **claim** under an Unfair Trade Practices Act, workers compensation statute or any other similar statutes or any **claim** made under Title 18 of the United States Code, sections 1962 to 1964, otherwise called the RICO laws;

**Q.** Any liability for fines, penalties imposed by law, or for matters or amounts uninsurable under the law pursuant to which this policy is construed, unless the law of the state in which **you** are licensed to practice prohibits such an exclusion;

**R.** Any liability arising out of the discharge, dispersal, seepage, migration, release or escape of vapors, soot, acids, alkalis, toxic chemicals, liquids or gases, waste or hazardous materials or other irritants, contaminants, or pollutants;

**S.** Any liability arising out of the hazardous properties of nuclear material or in connection with any nuclear facility however caused;

**T.** 1. **Your** breach of **fiduciary duty**;

2. **Your** actual gaining of personal profit, or advantage to which **you** are not legally entitled;

3. Remuneration paid to **you** if such payment is held by the courts to be in violation of the law;

4. **Your** alleged or actual involvement in any:

   a. Anti-trust law violation; or

   b. Agreement or conspiracy to restrain trade;

5. The failure to collect contributions owed to any employee benefit plan or the failure to return any contributions if such amounts are, or could be, chargeable to the employee benefit plan; or

6. Benefits payable or paid to a participant or beneficiary of an employee benefit plan;

**U.** Whether directly or indirectly, improperly authored, published, promulgated or released medical research data, studies or results or other text or other media provided by or on **your** behalf;

**V.** Any liability arising from the design, manufacture, use, distribution, promotion, or sale of any non-FDA approved medication, device or equipment, or protocols or any liability resulting from experimental or investigative procedures or practice modalities;



**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS

**W.** Any duties as a medical director for any facility or medical institution or practice, other than **your** own practice, unless specifically agreed to by **us**;

**X.** Any duties or medical practice at a government owned facility, including correctional facilities, unless specifically agreed to by **us**;

**Y.** Any **claim** arising from a guarantee of cure or results of **professional services** provided by **you**.

## Section VII. Limits of Liability

**A.** **Our** Limits of Liability for **damages** and **claim expenses** for each **claim** first made against **you** during the **policy period** for which this coverage applies shall not exceed the amount stated as the Per Claim Limits of Liability in the Declarations for each **named insured**, regardless of the number of: (a) claimants or persons who sustain **damages**; (b) demands made (including **suits** brought); (c) policies issued by **us**; or (d) number of policy years during which treatment was rendered.

**B.** **Our** total liability for all **damages** for all **claims** first made against **you** during a **policy period** for which this coverage applies shall not exceed the amount stated as the applicable Aggregate Limits of Liability in the Declarations, regardless of the number of: (a) **claims**; (b) **insureds**; (c) claimants or persons who sustain **damages**; (d) policies issued by **us**; or (e) number of policy years during which treatment was rendered.

**C.** If both mother and child (including multiple births) make **claims** against **you** alleging two or more causes of action or related **professional services,** both mother and child shall be considered one patient for the purposes of determining the Per Claim Limits of Liability applicable when such **claims** are made against **you.**

**D.** If **you** are afforded coverage for a **claim** under another policy **we** have issued, then in no event will **we** pay **damages** or **claim expenses** in an amount greater than the highest Limits of Liability available under any one policy **we** issued and under which **you** are entitled to coverage.

The Per Claim Limits of Liability shown on the Declarations is the most **we** will pay for any one **claim** for all **damages** and **claim expenses**, including those sustained by other persons. **Claim expenses** reduce the Limits of Liability unless a Supplementary Payments Endorsement is attached to the policy. **Damages** sustained by other persons include, but are not limited to, **damages** for loss of services, loss of consortium, wrongful death and emotional distress. The Limits of Liability applicable to any **claim** is the limit in effect on either the date that a **claim** is made.

Unless otherwise provided for in this policy, if there are multiple **insureds**, the Declarations will identify in the Schedule of Insureds those **insureds** which have separate limits of liability. Non-physician employees and physician **insureds'** professional associations and professional corporations who are **insureds** pursuant to Section IV. The Insured, will not be individually identified on the Declarations, but will share the limit of the **insured**. If more than one **insured** is responsible for the actions of the employee, the employee and the responsible **insureds** will share only one Limit of Liability as set forth in the Declarations and in Section VII. Limits of Liability of this policy. **Locum tenens** who are insured pursuant to Section IV. The Insured, will not be individually identified on the Declarations, but will share the limit of the **insured** for whom they are substituting.

## Section VIII. Deductible

If a deductible is indicated on the Declarations the following conditions are applicable:

**A.** The deductible is a part of and not in addition to the Limits of Liability.



## PROFESSIONAL LIABILITY INSURANCE POLICY
FOR PHYSICIANS AND SURGEONS

**B.** The deductible is applicable to each and every **claim**. The deductible is applicable to both **claim expenses** and **damages**; and

**C.** The deductible must be paid within ten (10) days of a written demand made by **us**. Failure to pay a deductible will nullify and terminate coverage for the reported **claim** and **we** may cancel the policy for non-payment of the deductible. If **you** fail to pay a deductible within ten (10) days **we** have no duty to defend **you** or any obligation to pay **damages** or **claim expenses**. Upon policy termination any monies returnable to **you** will first be applied to any unpaid deductible. All deductibles must be paid in full before an Extended Reporting Period (ERP) Endorsement is issued.

## Section IX. Conditions

**A.** Notice of **Claim** or **Suit**. As a condition precedent to coverage under this policy, **you** must give notice of any **claim** for an **injury** first made against **you** during the **policy period** immediately, but in no event any later than thirty (30) days after **you** first become aware of such **claim** or the end of the **policy period**, whichever is sooner. The notice shall contain information sufficient to identify the **insured** as to the time, place and circumstances of the alleged **injury**. The name and address of the person claiming an **injury** and of any witness to the **injury** also shall be included in the notice. If a **suit** is brought against **you**, **you** must immediately forward to **us** every demand notice, summons, complaint or other process alleging **injury** caused by **you** or **your** representative.

**B.** Electronic **Claim** Reporting. **You** may report **claims** to **us** electronically using the email address on page 1 of this policy.

**C.** **Claims** or **Incidents** disclosed on a renewal **application**. Disclosing a **claim** or an **incident** on a renewal application or Claim Information Supplement does not qualify as notice of a **claim** being made and reported to **us**. **You** must follow the **claim** reporting instructions indicated on page 1 of this policy.

**D.** Assistance and Cooperation of the **Insured**. **You** shall cooperate with **us**. Cooperation by **you** includes acceptance of correspondence from **us** by the US Mail or any other public or private means of delivery. Upon **our** request, **you** shall agree to an examination by **us** under oath, attend hearings and trials and assist in making settlements. If requested, **you** shall also secure and give evidence, including medical records and other documentation, report facts, obtain the attendance of witnesses and otherwise assist in the conduct of **suits**. Also, upon request, **you** will help enforce any right of contribution, indemnity or apportionment that **you** might have so that **we** might exercise those rights in **your** name. **You** shall do nothing to prejudice **our** defense of any **suit**. **You** shall not enter into any oral or written contracts or agreements that in any way impair or waive **our** rights of defense.

**E.** Action Against **Us**. No legal action may be brought against **us** until there has been full compliance with all the terms of this policy by **you**. In addition, no legal action may be brought against **us** until the amount of **your** obligation to pay is finally determined either by judgment after trial or by written agreement between the claimant and **us** or **you** with **our** approval.

No other person or organization has any right under this policy to make **us** a party to any action to decide **your** liability.

**F.** Other Insurance. If **you** have other insurance that is applicable to any **claim** covered under this policy, then this policy shall cover such **claim** subject to its limitations, conditions, provisions and other terms, only in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, and whether such other insurance obligates **us** thereto with a duty to defend, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this policy.

**G.** Subrogation. If any payment is made under this policy, **we** shall be subrogated to all **your** rights of recovery against any person or organization. **You** shall execute and deliver instruments and papers and do whatever necessary to secure such rights. **You** shall do nothing to prejudice those rights.



**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS

---

**H.** Changes. Notice to any person or knowledge possessed by any person shall not cause a wavier or change in any part of this policy or stop **us** from asserting any right under the terms of this policy.  The terms of this policy may only be waived or changed by **endorsement**.

**I.** Cancellation and non-renewal. **You** may cancel this policy by returning it to **us**.  **You** may also cancel by giving **us** advance written notice of when the cancellation is to take effect.  **We** may cancel or not renew this policy by mailing notice to **you** at **your** last known address.  Notice to **you** must be sent at least thirty (30) days before the cancellation or non-renewal date.  If **you** fail to pay any premium when due, **we** may cancel this policy by mailing notice to **you** at **your** last known address at least ten (10) days in advance.  The reason for any cancellation or non-renewal will be stated on the notice.  Proof of mailing is proof of notice for purposes of this provision.  The effective date and hour of cancellation stated on the notice or the time of surrender of the policy shall become the end of the **policy period**.

If **you** cancel the policy, the return premium will be computed on the basis of 90% of the pro-rata premium.  If **we** cancel the policy, the return premium will be computed pro-rata.

**We** have no duty to solicit **your** renewal.  If for any reason **you** do not apply for renewal of this policy the policy will end at its natural expiration date.  This natural expiration will be considered **your** non-renewal of the policy and requires no notice from **us.** If **you** fail to pay the renewal premium in full on or before the renewal inception date **we** will not renew the policy and no further notice is required.

**J.** Assignment. **Your** interest in this policy is not assignable.  If **you** die or become incompetent, this insurance shall terminate for such person but shall cover **your** legal representative as an **insured** with respect to liability previously incurred and covered by this insurance.

**K.** Bankruptcy or Insolvency. **Your** bankruptcy or insolvency shall not relieve **you** or **us** of any of **our** obligations hereunder.  **Your** bankruptcy or insolvency shall not increase any amounts of money payable hereunder.

**L.** Examination of **Your** Books and Records. **We** may examine and audit **your** books and records as they relate to this policy during the **policy period** and up to three years following termination or expiration of the policy.

**M.** Terms Conform to Statute or Regulation. Any term of this policy that is in conflict with a statute or regulation of the state where the policy is issued is amended to conform to such statute or regulation.

**N.** Changes to **Your** Operations. This insurance is issued based on **your** written representation of **your** operations and services.  **You** must notify **us** immediately, in writing, if there are any changes from those operations **you** previously described in **your application**, including changes in services, premises, locations, procedures or administrative responsibilities or changes in the status of **your** license(s) or certificate(s) to operate.  Coverage for **claims** which result from **professional services** happening on or after the date of any of these changes is contingent upon this notification.

**O.** Entire Agreement. It is agreed that this policy, together with the Declarations, **endorsements** and the **application** as of the Inception Date of this Policy, constitute the entire agreement existing between the **us** and all **insureds**.

## Section X. Extended Reporting Period

If this policy is cancelled or non-renewed any **named insured** for whom separate Limits of Liability are indicated on the Schedule of Insureds shown on the Declarations may purchase an Extended Reporting Period Endorsement (hereinafter, "ERP Endorsement") for an additional premium. For the purposes of this section, the date of cancellation or non-renewal of this policy is referred to as the termination date.   **We** may decline to offer the ERP Endorsement if the cancellation or non-renewal occurs for any of the following reasons:

**A.** Flat cancellation, in which **we** cancel the policy effective at policy inception;



**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS

**B.**  Midterm cancellation for non-payment of premium;

**C.**  **Your** failure to comply with policy provisions;

**D.**  Non-payment of a deductible;

**E.**  Failure to cooperate with **us;** or

**F.**  Fraud, **concealment** or material misrepresentation of facts in an **application**.

The ERP Endorsement will provide coverage for any **claim** first made during the extended reporting period, provided that the **claim** arose from an **incident** that first occurred on or after the applicable **retroactive date** and prior to the termination date.  If the ERP Endorsement is not purchased, there will be no coverage after the termination date.

ERP coverage shall terminate exactly one year (365 days) after the termination date unless a longer duration is specified by **endorsement** or on the Declarations**.**

The right to purchase such ERP Endorsement coverage must be exercised by written notice to **us** not later than thirty (30) days from the effective date of termination of this policy. Such written notice must include payment of the premium for the applicable ERP Endorsement coverage, as well as payment of all other premiums due to **us**. If such written notice is not so given to **us**, **you** shall not be entitled to exercise such right at a later date.

**We** will compute the additional premium for the ERP Endorsement coverage in accordance with **our** rules in effect on the termination date.  Subject to the requirements set forth in this policy, the ERP Endorsement coverage will be effective as of the termination date and will continue for a specified period thereafter. In purchasing the ERP Endorsement coverage, if **your** payment is dishonored, the ERP Endorsement coverage shall be void.

The entire additional premium for the ERP Endorsement coverage shall be deemed fully earned at the inception of the Extended Reporting Period.

Unless indicated differently in the ERP Endorsement, the Limits of Liability for the ERP Endorsement will be equal to the Per Claim Limit of Liability in effect on the termination date as set forth on the Declarations for this Policy. The Limits of Liability available under the ERP Endorsement is part of and not in addition to the Limits of Liability available under the last policy or renewal issued to the **named insured. Claims** made during the expiring **policy period** may reduce the Limit of Liability available under the ERP Endorsement.  The ERP Endorsement does not extend the **policy period** or change the scope of coverage provided under this policy nor does it increase or reinstate the Limits of Liability.  It only extends the period of time for reporting **claims** to **us** during the Extended Reporting Period. The ERP Endorsement is subject to all policy provisions in effect at the time of the termination of the **insured's** coverage.

## Section XI. Representations

**You** represent and acknowledge that the statements and information contained in the **application** for this policy are true and accurate; are the basis of this policy; are to be considered as incorporated into and constituting a part of this policy; and shall be deemed material to the acceptance of this risk or the hazard assumed by **us** under this policy.  This policy is issued in reliance upon the truth and accuracy of such representations.

In the event the **application** contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or the hazard assumed by **us** under this policy, then this policy shall be void ab initio.

## Section XII. Assignment, Alteration and Headings



**PROFESSIONAL LIABILITY INSURANCE POLICY**
FOR PHYSICIANS AND SURGEONS

No change in, modification of, or assignment of interest under this policy shall be effective unless made by a written **endorsement** to this policy, which is signed by **our** authorized representative.

The titles and headings to the various clauses, sections, subsections, paragraphs, subparagraphs and **endorsements** of this policy are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such clauses, sections, subsections, paragraphs, subparagraphs or **endorsements**.

**Aspen Specialty Insurance Company**



IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Secretary and countersigned where required by law on the Declarations page by its duly Authorized Representative.

_____
Secretary

_____
President

Aspen Specialty Insurance Company
(Herein called the Company)

# GENERAL SERVICE OF SUIT NOTICE

In the event of failure of the Company to pay any amount claimed to be due under the terms of this policy, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of appeal.

It is further agreed that service of process in such suit may be made upon:

Aspen Specialty Insurance Management, Inc
c/o General Counsel
400 Capital Blvd., Suite 200
Rocky Hill, CT 06067-3576
(877) 245-3510

Questions can be directed to: Compliance.us@aspenspecialty.com

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, Secretary of State, or other officer specified for that purpose in the statute, as its true and lawful attorney upon whom service may be made of any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

This notice does not change any other provision of the policy.

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OFAC ENDORSEMENT

In consideration of the premium charged, it is agreed that any payment under this Policy shall only be made in full compliance with all U.S.A economic or trade sanctions or other laws or regulations, including sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

Aspen Specialty Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WASHINGTON AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

1. **Section IX. Conditions**, subsection **I.** is deleted in its entirety and replaced by the following:

   **I.   Cancellation and Non-renewal**

   1. The first **named insured** shown in the Declarations may cancel this policy by notifying **us** or **our** producer in one of the following ways.

      a.   Written notice by mail, fax or e-mail;

      b.   Surrender of the Policy or binder; or

      c.   Verbal notice.

      Upon receipt of such notice, **we** will cancel this policy or binder issued as evidence of coverage, effective on the later of the following:

      a.   The date on which notice is received or the policy or binder is surrendered; or

      b.   The date of cancellation requested by the first **named insured**.

   2. **We** may cancel this policy by mailing or delivering to the first **named insured** and the first **named insured's** agent or broker of record, written notice stating when cancellation shall become effective and the reason for cancellation, at least:

      a.   Ten (10) before the effective date of cancellation, if **we** cancel for nonpayment of premium; or

      b.   Ninety (90) before the effective date of cancellation, if **we** cancel for any other reason.

   3. **We** will also mail or deliver to any mortgageholder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to **us**, written notice of cancellation, prior to the effective date of cancellation.

   4. If this policy is cancelled, **we** will send the first **named insured** any premium refund due. If  **we** cancel, the refund will be pro rata. If the first **named insured** cancels, the refund will be at least ninety percent (90%) of the pro rata refund. The cancellation will be effective even if **we** have not made or offered a refund.

   5. **We** may elect not to renew this policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to the first **named insured** and the agent or broker, at the last mailing addresses known to **us**. **We** will also mail to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at the last mailing address known to **us**, written notice of nonrenewal. **We** will mail or deliver these notices at least forty-five (45) days before the:

      a.   Expiration of the policy; or

      b.   Anniversary date of this policy if this policy has been written for a term of more than one year.

      Otherwise, **we** will renew this policy unless:

**(1)** The first **named insured** fails to pay the renewal premium after **we** have expressed a willingness to renew, including a statement of the renewal premium, to the first **named insured** and the first **named insured's** insurance agent or broker, at least twenty (20) days before the expiration date;

**(2)** Other coverage acceptable to the **named insured** has been procured prior to the expiration date of the policy; or

**(3)** The policy clearly states that it is not renewable and is for a specific line, sub-classification or type of coverage that is not offered on a renewable basis.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Washington.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

Aspen Specialty Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## NOTICE OF INCIDENT

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

I.   **Definitions,** item **D.** is deleted in its entirety and replaced with the following:

**Claim** means a demand for money or services received by **you** alleging an **injury** caused by an **incident** to which this insurance applies. **Claim** also means an **incident** that **you** report to **us,** which **you** reasonably believe may result in a demand for money or services. **Claim** does not include a demand for non-monetary or injunctive relief or any criminal proceeding. **Claims** can only arise from **professional services** within **your** profession as described on the Declarations.

II.  **Coverage Agreement,** item **d**. is deleted in its entirety.

III. The following is added to **Conditions:**

Notice of **incident**. If during the **policy period you** become aware of an **incident** which reasonably has the potential to result in a demand for money or services for which coverage may otherwise be afforded under this policy, **you** must give **us** written notice as soon as possible upon **your** first awareness of such **incident**, but within no more than thirty (30) days of that awareness or the end of the **policy period**, whichever is sooner. The notice **you** provide **us** shall describe the act, error or omission, and state the name of the patient or any other person involved, including any other persons for whom **you** may be responsible, together with the date(s) of the **incident**. Any **claim** that may be subsequently made against **you** arising from or based upon the **incident** described in the notice will be deemed to have first been reported during the **policy period** or the extended reporting period, if applicable.

### ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SUPPLEMENTARY PAYMENTS**

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

In addition to the limit of **our** liability shown on the Declarations, **we** also will pay:

**A.** All expenses incurred by **us** when defending any **claim** or **suit** covered by this policy, even if the policy indicates that **claim expenses** are included in the limits of liability;

**B.** All court costs taxed against **you** in any **claim** or **suit** defended by **us**;

**C.** Any interest incurred on that portion of a judgment covered under this policy and within the applicable Limits of Liability;

**D.** Premiums on appeal bonds and premiums on bonds to release attachments in any **suit** subject to defense under this policy. The bonds must be for an amount not more than the limit of **our** liability, however, **we** have no obligation to furnish or obtain these bonds; and

**E.** **We** will pay up to $1,000 a day for **your** loss of earnings when, with **our** consent, **you** suspend **your** professional physician practice to attend depositions, hearings or trials. This is subject to a maximum of $10,000 per **claim**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

Aspen Specialty Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## LIMITED CONSENT TO SETTLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

    Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

**Section III. Defense and Settlement Clause** is deleted in its entirety and replaced with the following:

**We** have the right and duty to defend any **claim** or **suit** brought seeking **damages** against the **insured** for an **injury** caused by an **incident** covered by this policy. **We** have the right to appoint counsel and **we** may investigate any **claim** made or **suit** brought:

    **a.** With the written consent of the **named insured**, **we** may settle any **claim** or **suit** against **you** as **we** believe may be proper, provided that this **Section III. a.** shall only apply to **you** if you are a physician. If we recommend a settlement to you that is acceptable to the claimant and you do not agree to the settlement, our liability is limited to the total of the amount of **damages** for which the **claim** could have been settled plus the amount of **claim expenses** incurred up to the time we made the settlement recommendation.

    **b.** For all **insureds** other than physicians, **we** may settle any **claim** or **suit** at **our** discretion.

    **c.** When required by law **we** will report **claim** settlements and judgements to the National Practitioners Data Bank or to other professional or state agencies.

**We** shall have no further defense or supplemental payment obligations under this policy after the applicable limits of liability, as stated in the Declarations, have been exhausted by the payment of judgments, settlements or **claim** expenses. **Your** consent shall not be required to make a settlement or payment after a judgment has been entered against **you**. In the event that **we** are unable to locate **you**, **we** shall have the right to settle a **claim** or **suit** against **you**.

### ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

 2016 © Aspen Insurance U.S. Services Inc. All rights reserved.

Aspen Specialty Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXTENDED REPORTING PERIOD OPTIONAL PROVISIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

**Section X. Extended Reporting Period** is deleted in its entirety and replaced with the following:

If this policy is cancelled or non-renewed any **named insured** for whom separate Limits of Liability are indicated on the Schedule of Insureds shown on the Declarations may purchase an Extended Reporting Period Endorsement (hereinafter, "ERP Endorsement"), as described below, for an additional premium. For the purposes of this section, the date of cancellation or non-renewal of this policy is referred to as the termination date. **We** may decline to offer the ERP Endorsement if the cancellation or non-renewal occurs for any of the following reasons:

**A.**  Flat cancellation, in which **we** cancel the policy effective at policy inception;

**B.**  Midterm cancellation for non-payment of premium;

**C.**  **Your** failure to comply with policy provisions;

**D.**  Non-payment of a deductible;

**E.**  Failure to cooperate with **us;** or

**F.**  Fraud, **concealment** or material misrepresentation of facts in an **application.**

The ERP Endorsement will provide coverage for any **claim** first made during the extended reporting period; provided that the **claim** arose from an **incident** that first occurred on or after the applicable **retroactive date** and prior to the termination date. If the ERP Endorsement is not purchased, there will be no coverage after the termination date.

The ERP Endorsement coverage is available for the following duration(s):

**A.**  12 Months
**B.**  36 Months
**C.**  60 Months

The right to purchase such ERP Endorsement coverage must be exercised by written notice to **us** not later than thirty (30) days from the effective date of termination of this policy. Such written notice must include payment of the premium for the applicable ERP Endorsement coverage, as well as payment of all other premiums due to **us**. If such written notice is not so given to **us**, **you** shall not be entitled to exercise such right at a later date.

**We** will compute the additional premium for the ERP Endorsement coverage in accordance with **our** rules in effect on the termination date. Subject to the requirements set forth in this policy, the ERP Endorsement coverage will be effective as of the termination date. In purchasing the ERP Endorsement coverage, if **your** payment is dishonored, the ERP Endorsement coverage shall be void.

The entire additional premium for the ERP Endorsement coverage shall be deemed fully earned at the inception of the Extended Reporting Period.

Unless indicated differently in the ERP Endorsement, the Limits of Liability for the ERP Endorsement will be equal to the Per Claim Limit of Liability in effect on the termination date as set forth on the Declarations for this Policy. The Limits of Liability available under the ERP Endorsement are part of and not in addition to the Limits of Liability available under the

last policy or renewal issued to the **named insured. Claims** made during the expiring **policy period** may reduce the Limits of Liability available under the ERP Endorsement. The ERP Endorsement does not extend the **policy period** or change the scope of coverage provided under this policy; nor does it increase or reinstate the Limits of Liability. It only extends the period of time for reporting **claims** to **us** during the extended reporting period. The ERP Endorsement is subject to all policy provisions in effect at the time of the termination of the **insured's** coverage.

**We** will provide the ERP Endorsement coverage free of charge to **you** or **your** estate if any one of the following occur:

A. **You** die. In the event of **your** death, and within ninety (90) days after such death, written notification must be provided to **us** that the ERP Endorsement coverage set forth under this **Section X.**, is desired; provided that such written notification must:

   1. Include proof of such death in order for the ERP Endorsement to be issued; and

   2. Be provided by any **insured** or **your** estate.

B. **You** become totally and permanently disabled and are unable to continue **your** duties as a licensed professional in **your** specialty; provided that, within ninety (90) days after such disability **we** receive written notification by **you** that the ERP Endorsement coverage set forth under this **Section X.**, is desired.

   Such written notification must include written documentation from a health care provider confirming **your** disability.

C. **You** retire from practice, are at least fifty-five (55) years of age, and have five (5) years of continuous claims-made coverage with **us.**

   1. Within ninety (90) days after such retirement **we** receive written notification by **you** that the ERP Endorsement coverage set forth under this **Section X.**, is desired; and

   2. Retirement means the complete and permanent withdrawal from the practice of medicine. If **you** receive ERP Endorsement coverage free of charge for retirement and later resume the practice of medicine, **you** must notify **us** of **your** intention to resume the practice of medicine, and the ERP Endorsement coverage will be canceled as of the date **you** resume the practice of medicine.

   Retirement does not include **your** retiring from the practice of medicine due to:

      i. **Your** license being involuntary taken away or revoked;

      ii. Revocation of **your** license;

      iii. Denied renewal of **your** license;

      iv. Disciplinary relinquishment of **your** license;

      v. Suspension of **your** license; or

      vi. **Your** license being placed on voluntarily inactive status.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

Aspen Specialty Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADMINISTRATIVE PROCEEDING REIMBURSEMENT ENDORSEMENT

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

### ADMINISTRATIVE DEFENSE COSTS LIMIT OF LIABILITY

Defense Costs Limits of Liability: $10,000 Per **Claim**; $30,000 Policy Aggregate.

**I.**   In the event that an **insured** physician covered under this policy is the subject of:

   **a.**   An investigation by a state medical board, state board of medical examiners,

   **b.**   Civil proceedings Instituted against **you** by a federal or state regulatory entity alleging violation of HIPAA privacy regulations;

   **c.**   A formal allegation of wrongful employment practices (EPLI); or

   **d.**   Proceedings Instituted by a state Department of Health Services or Federal Department of Health and Human Services alleging Medicare/Medicaid fraud and abuse by **your** performance of medical services in excess of or in violation of Medicare or Medicaid guidelines;

Up to the limits of liability indicated above **we** shall reimburse the **named insured** who is the subject of that investigation, allegation or proceeding for all administrative defense costs incurred in the defense of that **named insured** in such investigation; provided that:

**A.**   Such administrative defense costs shall be subject to the ADMINISTRATIVE DEFENSE COSTS LIMIT OF LIABILITY set forth in the Schedule above;

**B.**   Reimbursement of any administrative defense costs shall only be made to the **named insured** who is the subject of the investigation, proceeding or allegation;

**C.**   **We** will not reimburse any expenses associated with the defense of any other **insured**, person, or entity;

**D.**   Any payment made by **us** will not reduce the policy's overall Limits of Liability;

**E.**   Written notice of the investigation, proceeding or allegation must be given to **us** by the **named insured** who is the subject of the investigation as soon as practical, but no later than 10 days from the **named insured's** first receipt of notice of the investigation or at the end of the **policy period**, whichever is sooner;

**F.**   Renewal of this policy does not increase the limits of liability available for an investigation, allegation or proceeding reported during a prior policy period;

**G.**   Multiple allegations, investigations or proceedings arising from the same or interrelated acts or omissions shall be treated as a single investigation;

**H.**   The Policy Aggregate indicated above is the most **we** will reimburse for all **claims** covered by this **endorsement**;

**I.**   **We** have no obligation to select an attorney;

**J.** This coverage terminates on the policy expiration date indicated on the Declarations or upon earlier termination of the policy for any reason;

**K.** The coverage provided by this **endorsement** is not subject to a deductible;

**L.** This endorsement provides reimbursement only for administrative defense costs. Administrative defense costs means attorney's fees incurred by **you** resulting from a proceeding, allegation or investigation covered by the **endorsement;**

**M.** **You** agree to keep **us** fully informed contemporaneously concerning all significant developments in the investigation or hearing; and

**N.** All invoices and receipts related to a covered investigation, proceeding or allegation must be submitted to **us** within one year (365 days) of the conclusion of a proceeding, allegation or investigation covered by this **endorsement** or at the end of the **policy period**, whichever is sooner.

II. Exclusions. Despite any other provisions of the policy the coverage provided by this **endorsement** does not apply to any **claim** arising out of, based on or attributable to, in whole or in part, or in any way involving any of the following:

**A.** **Claims** made due to **damages** arising from **professional services;**

**B.** Personal **Injury or** property damage including death, disease or sickness but this exclusion does not apply to emotional distress, humiliation, mental anguish or loss of reputation that arises from an allegation of wrongful employment practice;

**C.** Any action initiated by an **insured** under this policy, however this exclusion does not apply to allegations of wrongful employment practices initiated by **your employees;**

**D.** Any matter arising from **your** initial application for licensure, membership in a professional society or specialty certification;

**E.** Medical, psychiatric or psychological treatment or costs arising from education programs;

**F.** Any cost related to implementation of compliance programs required by a licensing board or other governmental body;

**G.** Reimbursement for recovery of lost wages, fees or other income;

**H.** The cost of providing reasonable accommodations as required by the Americans With Disabilities Act and its amendments or any similar state, local or federal law;

**I.** Non-monetary relief in any form, including **your** costs arising from compliance with injunctive relief of any kind imposed by judgement or settlement; or

**J.** Any violation of law including but not limited to:

    **1.** The Employee Retirement Income Security Act (ERISA);

    **2.** The Consolidated Omnibus Reconciliation Act of 1985 (COBRA);

    **3.** The Occupational Safety and Health Act of 1970 (OSHA);

    **4.** All laws governing workers' compensation, unemployment insurance, social security or disability benefits;

    **5.** Any local, state or federal law regulating employees' rights regarding unions, strikes, boycotts, picketing, lockouts or collective activities; and

    **6.** Any violation or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act) or any other federal, state or local law governing wages, working hours and payroll practices.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

Aspen Specialty Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## LIMITED ADDITIONAL INSURED ENDORSEMENT
### (SCHEDULED ENTITY VICARIOUS LIABILITY)

This endorsement modifies insurance provided under the following:

Professional Liability Insurance Policy for Physicians and Surgeons

In consideration of the premium charged, it is agreed that:

For the purposes of this **endorsement** only:

1. The following is added to the Definition of **insured**:

   Each of the following is an additional **insured**:

   The entity(ies) or person(s) set forth in the Additional Insured Schedule below as additional **insured(s)**, but only with respect to the vicarious liability arising from **incidents** caused by the **named insured** on behalf of the below-scheduled additional **insured(s)**.

   However, coverage does not apply to **incidents** which occurred before the **retroactive date** shown in the Declarations.

2. The following is added to the Conditions section:

   If a **claim** or suit arises from an **incident** caused by the **named insured** on behalf of the below-scheduled additional **insured(s)**, but the **named insured** is not held liable or is dismissed from the **claim** or suit, or when the per Claim limit or Policy Aggregate Limit has been exhausted, then no coverage is afforded to the below-scheduled additional **insured(s)**. If the below-scheduled additional **insured(s)** chooses to defend itself if it is sued, **we** have no obligation to defend such **suit** or pay **damages**.

3. The following is added to the Limits of Liability section:

   The Limits of Liability for an additional **insured** are sharing and non-stacking. Endorsement of the below-scheduled additional **insured(s)** on any other primary professional liability policy issued by **us** will not increase the limits of liability shared by the additional **insured** for a **claim** under this policy. This policy as endorsed will not afford (a) coverage to any other **named insured** or additional **insured** under any other primary professional liability policy issued by **us**, or (b) coverage to the below-scheduled additional **insured(s)** under any other primary professional liability policy issued by **us**.

### ADDITIONAL INSURED SCHEDULE

| Name and Address | Effective Date | Retroactive Date |
|---|---|---|
| Kitsap OB Gyn, PLLC<br>9750 Levin Road NW<br>Silverdale, WA 98383 | 07/01/2023 | 07/01/2018 |

### ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Aspen Specialty Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PROTECTED HEALTH INFORMATION ENDORSEMENT

This **endorsement** modifies insurance provided under the following:

**PROFESSIONAL LIABILITY INSURANCE POLICY FOR PHYSICANS AND SURGEONS**

**PROFESSIONAL LIABILITY INSURANCE POLICY FOR PHYSICANS AND SURGEONS – EXPANDED FORM**

**PROFESSIONAL LIABILITY INSURANCE POLICY FOR PHYSICIAN EXTENDERS AND ALLIED HEALTHCARE PROFESSIONALS**

In consideration of the premium charged, it is agreed that:

**I.** As used in this **endorsement**, the following terms are defined as follows:

**Individual** means the person who is the subject of **protected health information**.

**Individually identifiable health information** means information that is a subset of health information, including demographic information collected from an individual; and

**A.** Is created or received by **you**;

**B.** Relates to the past, present or future physical or mental health condition of an individual; the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual, and

   **1.** That identifies the individual; or

   **2.** With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

**Privacy rule** means those requirements set forth in 45 CFR 160 and 164 pertaining to the protection of **protected health information**.

**Protected health information** means **individually identifiable health information**:

**A.** Transmitted by electronic media;

**B.** Maintained in any medium described in the definition of electronic media at 45 CFR 162.103; or

**C.** Transmitted or maintained in any other form or medium.

**Required by law** shall have the meaning set out in 45 CFR 164.501 and shall include a mandate contained in law that compels **us** to make a use or disclosure of **protected health information** and that is enforceable in a court of law including a civil or an authorized investigative demand.

**II.** Subject to Paragraph **III.** below, it is agreed that **we** may use or disclose **protected health information**:

**A.** As **required by law**;

**B.** In performing **our** obligations under this policy, including but not limited to the proper defense, investigation and settlement of **claims**; and

**C.** To report violations of law to appropriate Federal and State authorities, consistent with § 164.502(j)(1).

**III.** In order to fulfill **our** obligations to **you** with respect to **protected health information**, **we** will:

1.  Use appropriate safeguards to maintain the security of and prevent use or disclosure of the **protected health information** other than as provided for by this **endorsement**;

2.  Promptly report to **you** any use or disclosure of the **protected health information** in violation of the requirements of this **endorsement** of which **we** become aware;

3.  Mitigate, to the extent practicable, any harmful effect that is known to **us** of a use or disclosure of **protected health information** by **us** in violation of the requirements of this **endorsement**;

4.  Obtain reasonable assurances from persons or entities to whom **protected health information** is disclosed that it will remain confidential and used or further disclosed only as **required by law** or for the purpose for which it was disclosed to the person or entity, and that the person or entity will notify **us** of any instances of which it is aware in which the confidentiality of the information has been breached;

5.  Make available to the Secretary of the United States Department of Health and Human Services, or its designee, internal practices, books, and records, including policies and procedures and **protected health information**, relating to the use and disclosure of **protected health information**, for purposes of said Secretary determining **Your** compliance with the **privacy rule**, subject to all applicable legal privileges;

6.  Make available to **you**, at **our** offices during normal business hours, **our** internal practices, books, and records, including policies and procedures and **protected health information**, relating to the use and disclosure of **protected health information** for purposes of **your** determining its compliance with the **privacy rule**, provided **you** provide at least seven (7) days prior written request for such review; and

7.  Within forty five (45) days after request by **you**, **we** will provide to **you** documentation of any disclosures of **protected health information** by **us**, and information related to such disclosures, as is required for **you** to respond to a request by an **individual** for an accounting of disclosures of **protected health information** in accordance with 45 CFR § 164.528.

IV. **You** agree that **you** shall notify **us** of any:

1.  Limitations in **your** notice of privacy practices in accordance with 45 CFR § 164.520, to the extent that such limitation may affect **our** use or disclosure of **protected health information**.

2.  Changes in, or revocation of, permission by **individual** to use or disclose **protected health information**, to the extent that such changes may affect **our** use or disclosure of **protected health information**.

3.  Restriction to the use or disclosure of **protected health information** that **you** have agreed to in accordance with 45 CFR § 164.522, to the extent that such restriction may affect **our** use or disclosure of **protected health information**.

V.  **You** shall not request **us** to use or disclose **protected health information** in any manner that would not be permissible under the **privacy rule** if done by **you**.

VI. Except as provided in Section **II.** of this **endorsement**, upon termination of all of **our** obligations under this policy, **we** shall return or destroy all **protected health information** received from **you** or created or received by **us** on **your** behalf. This provision shall apply to **protected health information** that is in the possession of **our** subcontractors or agents. **We** shall retain no copies of the **protected health information**.

VII. In the event that **we** determine that returning or destroying the **protected health information** is infeasible, **we** shall provide to **you** notification of the conditions that make return or destruction infeasible. Upon such notification, **we** shall extend the protections of this **endorsement** to such **protected health information** and limit further uses and disclosures of such **protected health information** to those purposes that make the return or destruction infeasible.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

PROFESSIONAL LIABILITY INSURANCE FOR
PHYSICIANS AND SURGEONS

**ASPEN INSURANCE**

| RENEWAL | **POLICY APPLICATION**

**CLAIMS-MADE DISCLOSURE NOTICE: THIS IS AN APPLICATION FOR RENEWAL OF CLAIMS-MADE AND REPORTED INSURANCE PROVIDED THROUGH ASPEN SPECIALTY INSURANCE COMPANY (THE "COMPANY").**

You agree that any coverage issued will be contingent upon the truth of the information provided in this renewal application as well as any previous application(s) made to the Company. If a renewal policy is issued, this application, as well as previous applications, will become a part of the policy, as if physically attached thereto.

Please fully complete this application as an incomplete application cannot be evaluated. Answer ALL questions completely, leaving no blanks. If any questions, or part thereof, do not apply, print "N/A" in the appropriate space. Any spaces left blank will be interpreted to not apply. Provide any supporting information on a separate sheet and reference the applicable question number. This application must be completed, dated and signed by the applicant or an authorized representative of the applicant.

The information requested in this application is for underwriting purposes only and does not constitute notice to the Company under any policy of a claim or potential claim. All such notices must be submitted to the Company pursuant to the terms of the policy, if and when issued.

| **GENERAL INFORMATION** | **Expiring Policy Number:** | MM008LW19 |

1. Full Name of Individual Applicant: Jennifer C Quimby

   Professional Designation: [✓] MD  [ ] DO  [ ] DPM  [ ] ND  [ ] Other, Specify:_____

2. Last four digits of your SSN: ██████  _____   3. Date of Birth: ██████_____

4. **Principal Practice Location,** Percentage of practice at this location:  _____40_____ %

   Address:  9750 Levin Rd NW
   <span style="font-size:smaller">(Full Street Address)</span>

   Silverdale                 WA              98383              Kitsap
   <span style="font-size:smaller">(City)                 (State)           (Zip Code)           (County)</span>

   Office Telephone: (360) 307-7202          Office Fax: (360) 698-6600

   Web Site: www.kitsapobgyn.com          E-Mail Address: jenquimby@msn.com

   **Mailing Address** *(if different than **Principal Practice** address above)*

   Address: _____
   <span style="font-size:smaller">(Full Street Address)</span>

   _____
   <span style="font-size:smaller">(City)                 (State)           (Zip Code)           (County)</span>

   Other Telephone: _____

5. In addition to the principal practice location listed above, do you practice/provide professional services at any additional location(s) or address(es)?          [✓] Yes  [ ] No   If yes, please specify below:

| Other Practice Locations, Address | | | % of Practice |
|---|---|---|---|
| St. Michaels Medical Ctr. 1800 Myhre Rd. | Silverdale | WA 98383 | 45 |
| Kitsap OB Gyn 20700 Bond Rd. | Poulsbo | WA 98370 | 10 |
| Pacific Surgery Ctr 20669 Bond Rd. | Poulsbo | WA 98370 | 5 |

Doc ID: 961bcee4e92877b6987ca0df1db54467d25af780

## PRACTICE & SPECIALTY INFORMATION

6.  Medical Specialty: ___Obstetrics & Gynecology_____ % of practice: __100_____

7.  Sub Specialty: _____ % of practice: _____

8.  Do you limit your practice to your specialty and/or your subspecialty?    ☑ Yes  ☐ No

9.  Average number of patient encounters per week (or for Radiologists or Pathologists, average # weekly images/specimens/'reads') by you and by all healthcare extenders you employ and/or supervise: _70_____

10. Average weekly practice hours?  ___40_____

11. Since your last application to us, has your practice specialty, average patient encounters or weekly practice hours changed?    ☐ Yes  ☑ No

    If yes, please explain in detail what has changed: _____

12. Since your last application to us, have you added any Physician(s), Surgeon(s), Ancillary Personnel or Extender(s) such as but not limited to Physician Assistants, Nurse Practitioners, etc., to your practice?    ☑ Yes  ☐ No

    If yes, please explain in detail: __In the process of adding an ARNP/CNM to our group practice__

13. Since your last application to us, have you added or discontinued any Entities, DBA name(s) or alias?    ☐ Yes  ☑ No

    If yes, please explain in detail what has changed, include attachments if necessary: _____

    _____

14. Please ☑ to indicate your **Practice Category**:

| | | |
|---|---|---|
| ☐ | No Surgery | No surgery/surgical procedures, however, this category allows the suturing of minor lacerations; the incision of sebaceous cysts and boils; incision and removal of foreign body(ies) from superficial or subcutaneous tissue; needle aspiration of cysts limited to subcutaneous tissue; the localized treatment of 2nd and 3rd degree burns; umbilical and urethral catheterization. |
| ☐ | Minor Surgery | The following procedures as performed by all general practitioners or specialists except those performing major surgery or anesthesiology.  However, this category allows **no procedures performed on a patient while under general anesthesia**. |
| | | Endoscopic procedures including endoscopic retrograde cholangiopancreatography; colonoscopy; sigmoidoscopy; pneumatic or mechanical esophageal dilation (not with bougie or olives); arteriography; angiography; arterial, cardiac or diagnostic catheterization – if by internists, only to those who have completed appropriate cardio-vascular subspecialty training; radiopaque dye injections into blood vessels, lymphatic system , sinus tracts or fistulae; needle biopsy-including lung, prostate, breast, superficial and subcutaneous tissue. |
| ☑ | Major Surgery | This category involves operations in or upon any body cavity including, but not limited to, the cranium, thorax, abdomen or pelvis, or any other operation that presents a distinct hazard to life because of the condition of the patient, the length or circumstances of the operation(s).  This includes discograms, lymphangiography, myelography, phlebography, pneumoencephalography, radiation therapy(ies), the removal of tumors (except skin tumors), liver/kidney/bone marrow biopsy, reduction of open bone fractures, amputations, abortion, removal of any organ or gland, plastic surgery, tonsillectomies, adenoidectomies, cesarean sections **and any other operation performed under general anesthesia.** |

Doc ID: 961bcee4e92877b6987ca0df1db54467d25af780

15. Since your last application to us, have you added or discontinued any specific procedure(s), service or contractual obligation(s) to your practice? ☐ Yes ☒ No
If yes, please explain in detail: _____

## EDUCATION, TRAINING & CERTIFICATION INFORMATION

16. Are you certified by the American Board of Medical Specialties? ☒ Yes ☐ No
If yes, specify the Board Name: _American College of Obstetrics & Gynecology_

17. How many hours of Continuing Medical Education/CME have you taken in the past 12-months? 40

## LICENSING INFORMATION

18. Please list all states where you hold a valid Medical license:

| State | License Number | Effective Date | Expiration Date | Currently Active |
|-------|----------------|----------------|-----------------|------------------|
| WA | MD 00040752 | 2/ 6/2002 | 5/29/2026 | ☒ Yes ☐ No |
| | | | | ☐ Yes ☐ No |
| | | | | ☐ Yes ☐ No |

19. Federal DEA License #: BQ6729810 _____

20. Since your last application to us, have you expanded into or discontinued your practice in any state(s)?
☐ Yes ☒ No

## HOSPITAL PRIVILEGE INFORMATION

21. Since your last application to us, has there been any changes as respects any hospital(s) and/or surgery-center(s) at which you maintain privileges or on staff? ☐ Yes ☒ No
If yes, please complete the following:

| Hospital/ ASC Name | City | State | Type of privileges | New or Discontinued |
|--------------------|------|-------|--------------------|---------------------|
| | | | | |
| | | | | |
| | | | | |

## UNDERWRITING INFORMATION

**Since your last application to us:** *(explain any "Yes" response on a separate sheet)*

22. Have there been any judgements, settlements or dismissals of any previously reported claims, regardless of insurance carrier, self-insurance or any other risk transfer arrangement? ☐ Yes ☒ No
If **"Yes"**, please complete a *Claim Information Supplement* for each

23. Have you had or been involved in any claim or suit for alleged medical professional liability malpractice? ☒ Yes ☐ No
If **"Yes"**, please complete a *Claim Information Supplement* for each

Doc ID: 961bcee4e92877b6987ca0df1db54467d25af780

24. Have you had any claims, suits or losses that have not been reported to and accepted by any prior insurance carrier or any other source from which coverage and/or payment could be made? ☐ Yes ☑ No

25. Have you become aware of any complication, incident or adverse outcome resulting in injury or death that might reasonably result in a claim or suit against you? This includes, but is not limited to: ☐ Yes ☑ No
    a. amputation
    b. death
    c. loss of major organ function
    d. permanent neurological injury

26. Have you or anyone in your practice received any request from a current or former patient, a patient's family or a patient's legal representative for medical records which might reasonably result in a claim or suit against you? ☐ Yes ☑ No

27. Has any current or former patient, patient's family or patient's legal representative threatened litigation against you or asked you for either payment or a waiver of professional fees after having expressed dissatisfaction with the services you provided? ☐ Yes ☑ No

28. Has your license to practice medicine been denied, refused, suspended, limited, placed on probation, restricted, revoked or surrendered, voluntarily or otherwise, in any state? ☐ Yes ☑ No

29. Has your license/permit to prescribe or dispense drugs been denied, refused, suspended, limited, placed on probation, restricted, revoked or surrendered, voluntarily or otherwise, in any state? ☐ Yes ☑ No

30. Has any professional society or association refused, suspended or revoked your membership? ☐ Yes ☑ No

31. Have you been investigated, requested to resign from, or been involved in an official or un-official proceeding brought by or on behalf of a hospital, managed care organization or other similar healthcare organization in which your privileges have been denied, revoked, limited, suspended, restricted or non-renewed, whether voluntarily or involuntarily? ☐ Yes ☑ No

32. Have you been or are you now being treated for, evaluated for, hospitalized for or suffered from alcohol or other chemical/substance abuse or dependency? ☐ Yes ☑ No
    If **"Yes"**, please complete the Aspen **Substance Abuse/Impairment Supplemental Application**

33. Have you incurred or become aware of any illness, or physical, emotional or mental health condition or circumstance that, despite reasonable accommodation(s), impairs, limits, restricts or could impair, limit, or restrict your ability to practice medicine? ☐ Yes ☑ No

34. Have you been convicted, had charges brought against you, or are you currently under investigation of any act committed in violation of any law or ordinance other than a traffic offense? ☐ Yes ☑ No

35. Have you become aware of any information relating to service(s) on any Board(s) which might reasonably result in a claim or suit against you? ☐ Yes ☑ No

36. Have you been notified to appear before or respond to, or been investigated by any licensing or regulatory agency, board or body regarding a complaint of any nature, including but not limited to unethical or unprofessional conduct? ☐ Yes ☑ No

Doc ID: 961bcee4e92877b6987ca0df1db54467d25af780

**FRAUD WARNING**

**NOTICE TO APPLICANTS OF ALL STATES EXCEPT COLORADO, DISTRICT OF COLUMBIA, KANSAS, KENTUCKY, LOUISIANA, MAINE, NEW JERSEY, NEW MEXICO,  NEW YORK, OHIO, OKLAHOMA, OREGON, PENNSYLVANIA, PUERTO RICO, TENNESSEE, VERMONT, VIRGINIA, WASHINGTON**: Any person who knowingly, and with the intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any material false information or conceals for the purposes of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties and denial of insurance benefits. **NOTICE TO COLORADO APPLICANTS:** IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY.   PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES.   ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES. **NOTICE TO DISTRICT OF COLUMBIA APPLICANTS:** WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. **NOTICE TO NOTICE TO KANSAS APPLICANTS:** an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. **NOTICE TO KENTUCKY APPLICANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. **NOTICE TO LOUISIANA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. **NOTICE TO MAINE AND WASHINGTON APPLICANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits. **NOTICE TO MARYLAND APPLICANTS:** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. **NOTICE TO MINNESOTA APPLICANTS:** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime. **NOTICE TO NEW JERSEY APPLICANTS:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. **NOTICE TO NEW MEXICO APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties. **NOTICE TO NEW YORK APPLICANTS:** Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and is subject to a civil penalty not to exceed $5,000.00 and the stated value of the claim for each such violation. **NOTICE TO OHIO APPLICANTS:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. **NOTICE TO OKLAHOMA APPLICANTS:** Warning: Any person who knowingly, and with intent to injure, defraud or deceive any insurer or makes a claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. **NOTICE TO OREGON APPLICANTS:** Any person who knowingly and with intent to defraud or solicit another to defraud an insurer: (1) by submitting an application, or (2) by filing a claim containing a false statement as to any material fact, may be violating state law.   **NOTICE TO PENNSYLVANIA APPLICANTS:** Any person who knowingly, and with intent to defraud any insurance company

or other person, files an application for insurance or statement of claim containing any material false information or conceals for the purposes of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties. **NOTICE TO PUERTO RICO APPLICANTS:** The Entity understands that according to the Insurance Code of Puerto Rico (Article 27.320): "Any person who knowingly and with the intention to defraud that present false information in an insurance request or, that present, make or help to make a fraudulent claim for the payment of a loss or another benefit, it will present more than a claim by a same damage or loss, will incur in a serious crime and could be convicted and sanctioned, by each violation with a pain of no smaller fine of five thousand ($5,000) dollars, nor greater of ten thousand ($10,000) dollars or imprisonment by a fixed term of three (3) years, or, both pains. If there are aggravating circumstances, the pain fixes established could be increased until a maximum of five (5) years; to mediate extenuating circumstances, it could be reduced until a minimum of two (2). **NOTICE TO TENNESSEE AND VIRGINIA APPLICANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. **NOTICE TO VERMONT APPLICANTS:** Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

## DECLARATION AND CERTIFICATION

**BY SIGNING THIS APPLICATION, THE APPLICANT WARRANTS TO THE COMPANY THAT ALL STATEMENTS MADE IN THIS APPLICATION ABOUT THE APPLICANT AND ITS OPERATIONS ARE TRUE AND COMPLETE, AND THAT NO MATERIAL FACTS HAVE BEEN MISSTATED IN THIS APPLICATION OR CONCEALED. THE APPLICANT HEREBY AUTHORIZES THE RELEASE OF CLAIMS INFORMATION FROM ANY PRIOR INSURERS TO THE COMPANY. COMPLETION OF THIS FORM DOES NOT BIND COVERAGE. THE APPLICANT'S ACCEPTANCE OF THE COMPANY'S QUOTATION IS REQUIRED BEFORE THE APPLICANT MAY BE BOUND AND A POLICY ISSUED.**

**THE APPLICANT AGREES THAT IF AFTER THE DATE OF THIS APPLICATION, ANY INCIDENT, EVENT OR OTHER CIRCUMSTANCE SHOULD RENDER ANY OF THE INFORMATION CONTAINED IN THIS APPLICATION OR ANY OTHER DOCUMENTS SUBMITTED IN CONNECTION WITH THE UNDERWRITING OF THIS APPLICATION INACCURATE OR INCOMPLETE, THEN THE APPLICANT SHALL NOTIFY THE COMPANY OF SUCH INCIDENT, EVENT OR CIRCUMSTANCE AND SHALL PROVIDE THE COMPANY WITH INFORMATION THAT WOULD COMPLETE, UPDATE OR CORRECT SUCH INFORMATION. ANY OUTSTANDING QUOTATIONS OR BINDERS MAY BE MODIFIED OR WITHDRAWN AT THE SOLE DISCRETION OF THE COMPANY.**

04 / 24 / 2023
_____
Date (Mo./Day/Yr.)

_____
Applicant Signature

Jennifer C Quimby
_____
Print or Type Name

Physician
_____
Title

Doc ID: 961bcee4e92877b6987ca0df1db54467d25af780

# EXHIBIT D



March 25, 2025

VIA U.S. MAIL AND EMAIL (jenquimby@msn.com)

**Kevin A. Michael**
Direct Phone   206-373-7244
Direct Fax       866-433-3992
kmichael@cozen.com

**Mistee Verhulp**
Direct Phone   206-373-7255
Direct Fax       206-455-8246
mverhulp@cozen.com

Jennifer C. Quimby, M.D.
9750 Levin Road NW
Silverdale, WA 98383

| Re: | Named Insured | : | Jennifer Quimby, M.D. |
|-----|---------------|---|-----------------------|
| | Plaintiffs | : | Angelica Deaton and Paul Thorpe |
| | Case No. | : | King County Superior Court No. 25-2-03297-3 SEA |
| | Aspen Policy No. | : | MM008LW23 |
| | Aspen Claim No. | : | MM2370247786 |
| | Date of Loss | : | 10/6/22 |
| | Date Reported | : | 5/22/24 |
| | Cozen Matter No. | : | 00610169 |

Dear Dr. Quimby:

Cozen O'Connor represents the interests of Aspen Specialty Insurance Company ("Aspen"), which issued certain "Professional Liability Insurance for Physicians and Surgeons" policies to Jennifer C. Quimby, M.D.  Subject to all of their terms, conditions, limitations, and exclusions, those policies provide certain professional liability coverages, on a claims-made basis, for the periods of July 1, 2022 to July 1, 2023 and July 1, 2023 to July 1, 2024 (the "Policies").

As you will recall, on June 25, 2024, Aspen provided you with a Reservation of Rights letter, which was based on a pre-suit demand made by Angelica Deaton and Paul Thorpe ("Plaintiffs") regarding allegations that you committed medical negligence in connection with recommending a chemical abortion of Ms. Deaton's baby.

At the time of Aspen's June 25th letter, Plaintiffs had not filed an actual lawsuit against you. On February 4, 2025, Plaintiffs filed suit in King County Superior Court under Case No. 25-2-03297-3 SEA (the "Lawsuit").  Accordingly, Aspen takes this opportunity to update its reservation of rights to address the actual allegations contained in the Lawsuit.  This letter should be read in conjunction with, and supplemental to, Aspen's June 25, 2024 letter.

As set forth herein, Aspen will continue to provide a defense to you, as well as Jennifer C. Quimby, M.D., Inc., P.S.  That defense is subject to this reservation of rights, including Aspen's right to file a declaratory judgment action seeking a legal determination of its rights and obligations under the Policies.

Jennifer C. Quimby, M.D.
March 25, 2025
Page 2

_____

As you know, the Policies contain a $15,000 per claim deductible. Those sums incurred by your counsel in defending this matter prior to the Lawsuit being filed have already eroded some or all of that deductible. Upon satisfaction of that deductible, Aspen will fund your defense of the Lawsuit.

In the event that you possess additional information that you believe may impact Aspen's understanding of this matter and/or otherwise believe that Aspen is mistaken in any way, we ask that you please contact the undersigned. Aspen is happy to analyze any additional information you may possess.

## I.    <u>BACKGROUND FACTS</u>

The following represents Aspen's understanding of the facts surrounding this matter, which facts are largely drawn from the Complaint.

## A.    <u>The Incident</u>.

We understand that you are a licensed OBGYN and operate Jennifer C. Quimby, M.D., Inc., P.S. We further understand that during the relevant timeframe, you operated part of your practice in affiliation with Kitsap OBGYN and/or were an owner of Kitsap OBGYN.

The Plaintiffs are Angelica Deaton and her husband, Paul Thorpe. We understand that in September 2022, Ms. Deaton had a positive pregnancy test. Complaint at ¶4.3. On October 5, 2022, Ms. Deaton contacted Kitsap OBGYN reporting pain. ¶4.4. She was seen in the office on October 6, 2022. ¶4.5. Ms. Deaton was sent for an ultrasound by radiologist Dr. Jeremy Paige wherein Dr. Paige purportedly advised of an ectopic pregnancy. ¶4.7. Dr. Quimby met with Ms. Deaton shortly thereafter and Dr. Quimby offered Ms. Deaton a chemical abortion or a surgical option. ¶4.12. Ms. Deaton chose the chemical abortion option and a shot of Methotrexate was administered. ¶4.14-15.

It is alleged that Ms. Deaton's HCG levels continued to rise over the following days, which is consistent with pregnancy. ¶4.17-20. She returned to Kitsap OBGYN on October 13, 2022 and received a second injection of Methotrexate. ¶4.21-22. On October 19, 2022, Ms. Deaton had a second ultrasound with Dr. Paige, who allegedly indicated that Ms. Deaton "had two pregnancies, one in her uterus and one in her right ovary." ¶4.24.

According to the Complaint, on October 19, 2022, "following the ultrasound . . . Ms. Deaton called Kitsap OBGYN twice expressing her concerns that she was 'worried she just terminated a viable pregnancy as the gestational sac moved/was possibly twins.'" ¶4.28. It is further alleged that "Ms. Deaton was reportedly 'very tearful as she [felt] misinformed about treatment for ectopic'" and she was afraid "that I just killed my baby." ¶4.28-29. Later in the day on October 19, 2022, Dr. Quimby's notes indicate that she "expressed my apologies for not being aware of a possible heterotopic pregnancy…" ¶4.30. On October 21, 2022, Dr. Quimby performed a laparoscopic abortion on Ms. Deaton. ¶4.31.

Jennifer C. Quimby, M.D.
March 25, 2025
Page 3

_____

The Complaint further alleges "two days later, on the afternoon of Sunday, October 23, 2022, Dr. Quimby called Angelica Deaton.  Dr. Quimby apologized and said that Ms. Deaton did not have an ectopic pregnancy, but just a normal intrauterine pregnancy." ¶4.33.

We understand that Ms. Deaton was last seen by Dr. Quimby/Kitsap OBGYN on November 4, 2022.

Although not raised in the Complaint, Aspen notes that Ms. Deaton requested her medical records from Kitsap OBGYN on December 15, 2022, which documents were included with Plaintiffs' pre-suit demand.

**B.**    **Renewal Application for 2023-24 Policy.**

The 2022-23 Policy incepted on July 1, 2022.  As noted above, the incident occurred in October 2022 (*i.e.,* during the 2022-23 Policy period).  On April 24, 2023, you signed a Renewal Application for the 2023-24 Policy.  In that Renewal Application, you were asked:

> 25.  Have you become aware of any complication, incident, or adverse outcome resulting in injury or death that might reasonably result in a claim or suit against you?

Despite the recent adverse outcome with Ms. Deaton, you checked "No."

In addition, the Renewal Application asked:

> 26.  Have you or anyone in your practice received a request from a current or former patient, patient's family or a patient's legal representative for medical records which might reasonably result in a claim or suit against you?

Again, despite the Plaintiffs' request in December 2022, you checked "No."

The Renewal Application states "You agree that any coverage issued will be contingent upon the truth of the information provided in this renewal application, as well any previous application(s) made to the Company.  If a renewal policy is issued, this application, as well as previous applications, will become part of the policy, as if physically attached thereto."

The Renewal Application also contains the following "Declaration and Certification":

> **BY SIGNING THIS APPLICATION, THE APPLICANT WARRANTS TO THE COMPANY THAT ALL STATEMENTS MADE IN THIS APPLICATION ABOUT THE APPLICANT AND ITS OPERATIONS ARE TRUE AND COMPLETE, AND THAT NO MATERIAL FACTS HAVE BEEN MISSTATED IN THIS APPLICATION OR CONCEALED….**
>
> **THE APPLICANT AGREES THAT IF AFTER THE DATE OF THIS APPLICATION, ANY INCIDENT, EVENT OR OTHER CIRCUMSTANCE**

Jennifer C. Quimby, M.D.
March 25, 2025
Page 4

_____

**SHOULD RENDER ANY OF THE INFORMATION CONTAINED IN THIS APPLICATION OR ANY OTHER DOCUMENT SUBMITTED IN CONNECTION WITH THE UNDERWRITING OF THIS APPLICATION INACCURATE OR INCOMPLETE, THEN THE APPLICANT SHALL NOTIFY THE COMPANY OF SUCH INCIDENT, EVENT OR CIRCUMSTNACE AND SHALL PROVIDE THE COMPANY WITH INFORMATION THAT WOULD COMPLETE, UPDATE OR CORRECT SUCH INFORMATION….**

C.      <u>Prior Similar Claim.</u>

We understand that you had another incident in August 2017 whereby you administered Methotrexate to abort a pregnancy due to an ultrasound finding a misshapen egg sac and a concern that it could become an ectopic pregnancy. The ultrasound finding was ultimately incorrect and the pregnancy had been viable. The baby was born with significant defects. We understand that this other matter was settled in late 2021. This prior incident is specifically alleged in Paragraph 4.35 of the Complaint.

D.      <u>The Demand Letter.</u>

On May 20, 2024, counsel for Ms. Deaton/Mr. Thorpe sent a pre-suit demand letter to you, Kitsap OBGYN, Dr. Paige, and RAYUS Radiology. That letter set forth the basis for Plaintiffs' allegations of medical negligence and offered to settle for $5,000,000.

Given that the 2023-24 Policy contains a $1 million limit, Aspen was unable to satisfy the $5 million demand. Moreover, Aspen did not have enough information to evaluate your liability, if any, as well as Plaintiffs' alleged damages. As such, Aspen sent a letter to Plaintiffs' counsel advising of the policy limit, that it could not satisfy the $5 million demand, and that Aspen had retained defense counsel to represent your interests. As you know, that defense is ongoing.

## II.      THE POLICY

Aspen Specialty Insurance Company issued "Professional Liability Insurance for Physicians and Surgeons" Policy No. MM008LW22 to named insured Jennifer C. Quimby, MD, effective July 1, 2022 to July 1, 2023 (the "2022-23 Policy"). The 2022-23 Policy was renewed for the July 1, 2023 to July 1, 2024 policy period under Policy No. MM008LW23 (the "2023-24 Policy") (collectively, the "Policies"). Subject to all of their terms, conditions, limitations, and exclusions, the Policies provide Dr. Quimby with certain liability insurance coverages on a claims-made basis. The Policies contain limits of $1,000,000 per claim. Defense costs are in addition to the limit of liability. The Policy has a $15,000 deductible per claim. The Policy contains a retroactive date of July 1, 2018.

While it is important to review and familiarize yourself with all the terms and conditions of the Policies, we have quoted certain pertinent portions of the Policies below. This is not intended to replace your own review of the Policies. To the extent there is any inconsistency between what is quoted below and the Policies, the language in the Policies controls.

Jennifer C. Quimby, M.D.
March 25, 2025
Page 5

_____

The Policies contain the following "Coverage Agreement":

### Section II.  Coverage Agreement

In consideration of the payment of the premium and Deductible, and in reliance upon the statements in the application, which is made a part hereof and deemed attached hereto, and subject to the Declarations and all terms of this policy, we agree as follows:

Within the Limits of Liability shown on the Declarations and in excess of the deductible we will pay on **your** behalf all sums **you** become legally obligated to pay as **damages** as a result of a **claim** or **suit** first made against **you**…and reported to **us** during the **policy period** because of an **injury** caused by an **incident** provided that:

    **a.**   Any **incident** must occur on or after the **retroactive date** and before the end of the **policy period**;

    **b.**   Prior to the inception of this policy, no **insured** had a reasonable basis to believe: (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**;

***

(Emphasis added).  The Policies contain the following provision related to the defense and settlement of claims:

### Section III.  Defense and Settlement Clause

**We** have the right and duty to defend any **claim** or **suit** brought seeking **damages** against the **insured** for an **injury** caused by an **incident** covered by this policy.  **We** have the right to appoint counsel and **we** may investigate any claim made or suit brought:

    **a.**   With the written consent of the **named insured**, **we** may settle any **claim** or **suit** against you as **we** believe as may be proper…

Per the Supplementary Payments Endorsement, claim expenses (defense costs) are outside of the limits of liability and, therefore, payment of claim expenses do not erode the $1,000,000 limit of liability.

The Policies contain the following relevant definitions:

    **B.**   **Application** means all materials and information, including all signed **applications** and any materials attached thereto or incorporated therein, submitted by or on behalf of the **insureds** in connection with the underwriting of this policy or any policy of which this policy is a direct or indirect renewal or replacement. All such **applications**, attachments and materials are deemed attached to and incorporated into this policy.

    **C.**   **Attempted Concealment** means an act or instance of making an effort to accomplish **Concealment**, with or without success.

Jennifer C. Quimby, M.D.
March 25, 2025
Page 6

_____

    **D.**    **Claim** means a demand for money or services received by **you** alleging an **injury** caused by an **incident** to which this insurance applies…[1]

***

    **F.**    **Concealment** means withholding from **us** or the patient, material facts or information that, in good faith, ought to be disclosed or will increase **our** risk.

***

    **J.**    **Incident** means any act, error, or omission, or misstatement or misleading statement by **you** in the rendering of or failure to render **professional services**. All such acts, errors, or omissions causally related to the rendering of or failure to render **professional services** shall be considered one **incident**. An **incident** shall be deemed to have occurred at the time of the earliest act, error, or omission comprising that **incident**. An **incident** shall not be deemed a **claim** unless **you** receive a written demand for money or services or a Notice of Incident Endorsement is attached to this policy.

The Policies contain the following potentially relevant exclusions:

<strong>Section VI.  Exclusions</strong>

<u>Despite any other provision of this policy, this policy does not apply to any **claim** arising out of, based upon or attributable to, in whole or in part, or in any way involving, any of the following</u>:

***

E.    <u>Any **claim** that in any way involves</u>:

    **1.**    Any fact, circumstance or situation which has been the subject of any notice given under any policy of which this policy is a direct or indirect renewal or replacement;

    **2.**    Any **incident** which occurred while **you** were insured under an occurrence policy;

    **3.**    <u>Any **incident** which, prior to the inception of this policy, any **insured** had a reasonable basis to believe (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**</u>;

F.    <u>Any **claim** or **suit** brought by a patient where, prior to the inception of this policy, a patient or a legal representative of a patient requested the patient's medical records</u> from you <u>or your medical practice</u>.

_____

[1] *See* Form No. ASPML006 1016.

Jennifer C. Quimby, M.D.
March 25, 2025
Page 7

_____

> G.    Any vicarious liability arising from the provision of or failure to provide **professional services** by any health care provider or other person or entity which is not under **your** direct supervision, or is not an employee or **ostensible employee** of **yours**.

(Emphasis added).  The Policies contain the following provision:

### Section XI.  Representations

> **You** represent and acknowledge that the statements and information contained in the **application** for this policy are true and accurate; are the basis of this policy; are to be considered as incorporated into and constituting a part of this policy; and shall be deemed material to the acceptance of this risk or the hazard assumed by **us** under this policy.  This policy is issued in reliance upon the truth and accuracy of such representations.

> In the event the **application** contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or the hazard assumed by **us** under this policy, then this policy shall be void ab initio.

***

(Emphasis added).  The Policies also contain the following condition[2]:

> Notice of **incident**.  If during the **policy period you** become aware of an **incident** which reasonably has the potential to result in a demand for money or services for which coverage may otherwise be afforded under this policy, **you** must give **us** written notice as soon as possible upon **your** first awareness of such **incident**, but within no more than thirty (30) days of that awareness or the end of the **policy period**, whichever is sooner.  The notice **you** provide **us** shall describe the act, error or omission, and state the name of the patient or any other person involved, including any other persons for whom **you** may be responsible, together with the date(s) of the **incident**.  Any **claim** that may be subsequently made against **you** arising from or based upon the **incident** described in the notice will be deemed to have first been reported during the **policy period** or the extended reporting period, if applicable.

## III.    RESERVATION OF RIGHTS

### A.    Insured Status.

The named insured on the Policies is "Jennifer C. Quimby, MD."  The Policies further define "insured" to include "a single physician insured's wholly owned professional association (PA) or professional corporation (PC)."  The Complaint names as a defendant in the Lawsuit "Jennifer C. Quimby, M.D., Inc., P.S."  Based on Aspen's understanding, "Jennifer C. Quimby, M.D., Inc., P.S." is your wholly owned professional corporation.  Accordingly, Aspen will provide a defense to the corporate entity as well.  However, it reserves the right to withdraw that defense if it later learns that "Jennifer C. Quimby, M.D., Inc., P.S." does not, in fact, qualify as an "insured."

_____

[2] *See* Form No. ASPML006 1016.

Jennifer C. Quimby, M.D.
March 25, 2025
Page 8

_____

**B.    <u>Prior Knowledge of a Potential Claim</u>.**

The incident that underlies the Lawsuit occurred on October 6, 2022.  You did not report that incident to Aspen at that time, nor did you disclose the incident/potential claim on your Renewal Application.

The Policies' definition of "incident" notes that "an incident shall be deemed to have occurred at the time of the earliest act, error, or omission comprising that incident."  Here, the earliest act, error, or omission occurred on October 6, 2022.

The Coverage Agreement then states:

> Within the Limits of Liability shown on the Declarations and in excess of the deductible we will pay on **your** behalf all sums **you** become legally obligated to pay as **damages** as a result of a **claim** or **suit** first made against **you**…and reported to **us** during the **policy period** because of an **injury** caused by an **incident** <u>provided that</u>:
>
> a.  Any **incident** must occur on or after the **retroactive date** and before the end of the **policy period**;
>
> **b.**  <u>Prior to the inception of this policy, no **insured** had a reasonable basis to believe: (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**</u>;

(Emphasis added).  To the extent that you should have reasonably anticipated the Deaton claim in October 2022, but did not report the incident to Aspen or identify it on your Renewal Application, Aspen reserves its right to limit or deny coverage.

In addition, the Policies preclude coverage for:

> E.    <u>Any **claim** that in any way involves</u>:
>
> \*\*\*
>
> **3.**    <u>Any **incident** which, prior to the inception of this policy, any **insured** had a reasonable basis to believe (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**</u>;

(Emphasis added).  Again, it appears that you should have had a reasonable basis to believe that a professional duty had been breached and that the incident might reasonably give rise to a claim.

In addition, the Policies expressly preclude coverage for:

> <u>Any **claim** or **suit** brought by a patient where, prior to the inception of this policy, a patient or a legal representative of a patient requested the patient's medical records from you or your medical practice</u>.

Jennifer C. Quimby, M.D.
March 25, 2025
Page 9
_____

On December 15, 2022, Ms. Deaton requested a copy of her medical records from Kitsap OBGYN. Those documents were ultimately included in the demand package her counsel sent to you and Kitsap OBGYB on May 24, 2024.  Aspen reserves its right to limit or deny coverage based on the application of this exclusion.

The Policies contain the following provision:

### Section XI.  Representations

**You** represent and acknowledge that the statements and information contained in the **application** for this policy are true and accurate; are the basis of this policy; are to be considered as incorporated into and constituting a part of this policy; and shall be deemed material to the acceptance of this risk or the hazard assumed by **us** under this policy.  This policy is issued in reliance upon the truth and accuracy of such representations.

In the event the **application** contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or the hazard assumed by **us** under this policy, then this policy shall be void ab initio.

(Emphasis added).  In the Renewal Application, you were asked:

25.  Have you become aware of any complication, incident, or adverse outcome resulting in injury or death that might reasonably result in a claim or suit against you?

Despite the recent adverse outcome with Ms. Deaton, you checked "No."  In addition, the Renewal Application asked:

26.  Have you or anyone in your practice received a request from a current or former patient, patient's family or a patient's legal representative for medical records which might reasonably result in a claim or suit against you?

Again, despite the Plaintiffs' request in December 2022, you checked "No."

Aspen reserves the right to cancel the 2023-24 Policy *ab initio* based on material misrepresentations and/or omissions in the Renewal Application, which misrepresentations/ omissions materially affected Aspen's willingness to acceptance of this risk.

Aspen further notes that the Policies provide a mechanism for reporting potential claims:

Notice of **incident**.  If during the **policy period** **you** become aware of an **incident** which reasonably has the potential to result in a demand for money or services for which coverage may otherwise be afforded under this policy, **you** must give **us** written notice as soon as possible upon **your** first awareness of such **incident**, but within no more than thirty (30) days of that awareness or the end of the **policy period**, whichever is sooner.  The notice **you** provide **us** shall describe the act, error or omission, and state the name of the patient or any other person involved, including any other persons for whom **you** may be

Jennifer C. Quimby, M.D.
March 25, 2025
Page 10

_____

> responsible, together with the date(s) of the **incident**. Any **claim** that may be subsequently made against **you** arising from or based upon the **incident** described in the notice will be deemed to have first been reported during the **policy period** or the extended reporting period, if applicable.

(Emphasis added). Under this provision, Aspen reserves its right to assert that you were required to provide notice of the incident to Aspen during the 2022-23 Policy period, and your failure to do so invalidated coverage.

**C.    Additional Reservations.**

The Policies preclude coverage for:

> Any vicarious liability arising from the provision of or failure to provide **professional services** by any health care provider or other person or entity which is not under **your** direct supervision, or is not an employee or **ostensible employee** of **yours**.

The Complaint identifies numerous individuals who allegedly took part in the care of Ms. Deaton. Aspen does not presently know the exact roles and employment status of all such individuals. As such, to the extent you face vicarious liability for medical care by anyone not under your direct supervision or who was not an employee or ostensible employee of yours, Aspen reserves the right to limit coverage.

## IV.    CONCLUSION

For the reasons set forth above, Aspen will provide you with a defense, subject to a reservation of rights. Aspen bases its position on the information provided to it, the Complaint, and the applicable Policy language, conditions, terms, and exclusions. In citing certain provisions of the Policies, Aspen is not waiving its rights to other coverage defenses.

**Aspen's right to later deny coverage in this matter is not limited to the reasons set forth above, but shall include any additional ground(s) for non-coverage or Policy breach that may subsequently be revealed. Aspen reserves all of its rights under the law and under the Policies. By reserving its right to subsequently deny coverage under the Policies, Aspen does not intend to waive any of its rights, including the right to deny coverage, to commence a declaratory judgment action, or to condition its defense or indemnity obligation on a later judicial determination of its respective obligations.**

*If you have questions or concerns about the actions of your insurance company or agent, or would like information on your rights to file an appeal, contact the Washington State Office of the Insurance Commissioner's Consumer Protection Hotline at 1-800-562-6900 or visit www.insurance.wa.gov. The Insurance Commissioner protects and educates insurance consumers, advances the public interest, and provides fair and efficient regulation of the insurance industry.*

Jennifer C. Quimby, M.D.
March 25, 2025
Page 11

If you disagree with any facts reported or coverage positions stated in this letter, please let us know immediately.  In addition, if you have any questions or would like to discuss this matter further, please feel free to contact us.

Sincerely,

COZEN O'CONNOR

Kevin A. Michael
Mistee Verhulp

KAM/MV:lny

76100808\1 0504701/00610169